# EXHIBIT A

Lincoln Financial Group®

DUPLICATE

# The Lincoln National Life Insurance Company

(the "Company")

**A Stock Company**

| | |
|---|---|
| **Home Office Location:** | **Fort Wayne, Indiana** |
| **Service Office Mailing Address:** | The Lincoln National Life Insurance Company<br>100 North Greene Street<br>P.O. Box 21008<br>Greensboro, NC 27420-1008 |

The Lincoln National Life Insurance Company agrees to: (a) pay the Death Benefit Proceeds to the Beneficiary after receipt of Due Proof of Death that the Insured's death occurred while this Policy is In Force; and (b) to provide the other rights and benefits according to the terms of this Policy.

**Read this Policy Carefully**

This is a legal contract between you and us. The application for coverage is accepted and this Policy is issued and accepted subject to the terms set forth on the following pages, which are made a part of this Policy. In consideration of the application and the payment of premiums as provided, this Policy is executed by us as of the Policy Date at the Service Office Mailing Address listed above. Pay particular attention to the Policy Specifications as they are specific to you and may contain important terms and conditions.

**Right to Examine this Policy**

You may return this Policy for any reason to the insurance agent through whom it was purchased, to any other insurance agent of the Company, or to us at the Service Office Mailing Address listed above within 20 days after its receipt. If returned, this Policy will be considered void from the Policy Date and we will refund, as of the date the returned Policy is received by us, the total premiums paid for this Policy including any fees or charges.

Ellen Cooper
President

Nancy A. Smith
Secretary

Insured: GHASEM MIRZADEH

Policy Number: IUL1062973

**INDIVIDUAL FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY WITH OPTIONAL INDEXED FEATURES**

Death Benefit Proceeds are payable upon the death of the Insured while this Policy is In Force; the Death Benefit Proceeds may be increased or decreased. The Cash Surrender Value is payable upon surrender of this Policy. Flexible premiums are payable to the earlier of the Maturity Date or the Insured's death. Benefits, values, periods of coverage, and premiums are based on Non-Guaranteed Elements and Indexed Account Non-Guaranteed Elements and may vary according to the terms of this Policy. Policy Values may increase or decrease as determined by declared interest rates, Index Credits based on growth rates of an external Index (or Indexes), and Cost of Insurance Rates. This Policy does not participate in any stock, bond or equity investments. Planned Premium payments and additional Riders and/or benefits are shown in the Policy Specifications. This Policy is non-participating; it is not eligible for dividends.

**For information or assistance regarding this Policy call: 800-487-1485**



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

# Table of Contents


**Provision** **Page**

**Summary of Policy Features** ... 2a

**Policy Specifications** ... 3
Summarizes benefits that you purchased including any related costs

**Riders and Benefits Charges** ... 3a

**Table of Surrender Charges** ... 3b
Surrender Charge as of Beginning of Policy Year

**Table of Expense Charges and Fees** ... 3c
Guaranteed Maximum Premium Load; Cost of Insurance; Guaranteed Maximum Monthly Administrative Fee; Guaranteed Maximum Policy Value Charge

**Table of Guaranteed Maximum Cost of Insurance Rates** ... 3d

**Corridor Percentages Table** ... 3e
Death Benefit Qualification Test

**No-Lapse Minimum Premium, Holding Account Specifications, Dollar Cost Averaging Account Specifications** ... 3f

**Indexed Account Specifications** ... 3g

**Definitions** ... 5

**The Contract** ... 8
Entire Contract; Changes to Contract Terms; Non-participating; Misstatement of Age or Sex; Incontestability

**Ownership** ... 8
Rights of Owner; Transfer of Ownership; Assignment; Some Important Things You Should Do

**Beneficiary** ... 9
Beneficiary; Change of Beneficiary

**Insurance Coverage and Death Benefit Provisions** ... 9
Dates of Coverage; Termination of Coverage; Death Benefit Proceeds; Death Benefit Options; Notice of Claim; Income Tax on Death Benefits; Suicide; Method of Payment; Interest on Death Benefit; Continuation of Coverage After the Maturity Date

**Changes in Insurance Coverage** ... 11
Increases in Specified Amount; Decreases in Specified Amount; Death Benefit Option Changes; Premium Class Changes; Rider and/or Benefit Additions; Policy Split Prohibition

**Premium Provisions** ... 12
Payment of Premiums; Planned Premiums; Additional Premiums; No-Lapse Minimum Premium; Catch Up Provision; Premium Refund; Premium Allocation Instructions; Account Allocation Instructions; Maturing Segment Allocation; Allocation Dates

**Grace Period, Continuation of Insurance and Reinstatement Provisions** ... 13
Grace Period; Continuation of Insurance; Reinstatement

**Indexed Account Provisions** ... 14
Indexed Account(s) and Changes to Indexed Account(s); Discontinuation Of or Substantial Change to an Index; Segment; Segment Date; Withdrawals from the Indexed Account(s)

**Holding Account Provisions** ... 15

**Dollar Cost Averaging Account Provisions** ... 15

**Policy Values Provisions** ... 15
Policy Value; Impact of Premium Payments and Loan Repayments on the Collateral Account Value and Fixed Loan Principal; Net Premium; Fixed Account Interest Rate; Holding Account Interest Rate; Dollar Cost Averaging Account Interest Rate; Collateral Account Credited Interest Rate; Account Value Enhancement; Account Value Enhancement Rate; Monthly Deduction; Policy Value Charge; Cost of Insurance; Cost of Insurance Rates; Basis of Values; Changes to Non-Guaranteed Elements (NGEs)

# Table of Contents

**Provision** **Page***

**Surrender Provisions** ........ 18
Surrender; Surrender Charges; Surrender Charge for Full Surrender; Index Growth Cap Trigger for Waiver of Surrender Charges; Charge for Decrease in Specified Amount; Partial Surrender (Withdrawal); Effect of Partial Surrenders on Policy Value and Specified Amount

**Loan Provisions** ........ 20
Loans; Amount Available; Participating Loan; Fixed Loan; Participating Loan Interest Rate Charged; Fixed Loan Interest Rate Charged; Loan Repayments; Debt; Converting from One Loan Option to the Other; Participating Loan to Fixed Loan Conversion; Fixed Loan to Participating Loan Conversion

**General Provisions** ........ 21
Payment of Proceeds; Deferment of Payments; Annual Report; Illustration of Benefits and Values; Modified Endowment; Compliance with the Internal Revenue Code

**Effect of Policy on Rider Provisions** ........ 22

**Effect of Riders on Policy Provisions** ........ 23

**Settlement Options** ........ 23

*Page 4 left blank intentionally.

Amendments, Endorsements, or Riders, if any, and a copy of the application follow Page 24.

# Summary of Policy Features

This summary is an overview of the important features and operations of your Policy. It is meant to give you a basic understanding of your Policy. Specific details regarding these features are only provided in the policy provisions and cannot be fully described in a summary. **This summary is not a substitute for reading the entire Policy carefully.**

**Individual Flexible Premium Adjustable Life Insurance** This title is our generic name for universal life insurance. "Flexible premium" means that you may pay premiums subject to this Policy's "Premium Provisions" section, at any time prior to the Maturity Date. It is important to pay sufficient premium in order to keep your Policy In Force. "Adjustable life insurance" means that after the first Policy Year, you can change the death benefit to meet your changing needs, subject to this Policy's "Changes in Insurance Coverage" section.

This Policy allows you to allocate premium payments to a Fixed Account and to one or more Indexed Accounts as described in the "Indexed Account Provisions" and Policy Specifications. These optional Indexed Account(s) use the gains and losses of an outside financial Index to calculate the annual crediting rate, subject to certain factors shown in the Policy Specifications, including a guaranteed minimum rate. Any Index Credits are applied to an Indexed Account Segment's Average Monthly Segment Balance on its Segment Maturity Date. This Policy provides for a Holding Account and an optional Dollar Cost Averaging Account.

The payment upon a full surrender prior to a Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to any open Segment(s). The payment of a partial surrender prior to a Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in Segment value. Also, a Fixed Loan or Participating Loan to Fixed Loan conversion prior to a Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in Segment value.

**Coverage Duration** The duration of coverage will vary based upon changes in the amount, timing and frequency of your premium payments, changes to the coverage under your Policy and any Riders attached to your Policy, and the other items described in the following sections.

The length of time your Policy remains In Force will vary in accordance with the following items, which may include, but are not limited to:

- The frequency, timing, and amount of any premium payment(s).
- Policy changes such as loans, partial surrenders, Death Benefit Option changes, increases or decreases in Specified Amount, and the addition or removal of Riders.
- If the "No-Lapse Minimum Premium" provision is In Force and the No-Lapse Minimum Monthly Premium Test is met.
- Interest Credited to your Policy Value.
- Index Credits.
- Monthly Deductions.
- Riders attached to your Policy, if any.

**Policy Value** The Policy Value is where your premiums are applied and where we assess our charges for providing coverage. We subtract a Premium Load charge from each premium you pay, and then apply the balance to the Policy Value according to your premium allocation instructions. The Policy Value is the total sum of the Fixed Account, Holding Account, Dollar Cost Averaging Account, Indexed Account, and Collateral Account.

On a monthly basis, we deduct a charge called the Policy Value Charge, Cost of Insurance charge (see "Cost of Insurance" provision), charges for any additional benefits and/or Riders, and Monthly Administrative Fees. The sum of these charges is known as the "Monthly Deduction" is subtracted from the Fixed Account first as explained in the "Monthly Deduction" provision. If the value in the Fixed Account cannot cover the cost of the entire charge, we will deduct the charge in successive order from any value in the Holding Account, Dollar Cost Averaging Account, in successive order from the most recently opened Indexed Account Segment(s), and Collateral Account until the entire charge has been paid. We then credit interest to any amount remaining in the Fixed Account, Holding Account, Dollar Cost Averaging Account, and Collateral Account. Any Index Credits are applied to an Indexed Account Segment's Average Monthly Segment Balance on its Segment Maturity Date. Indexed Account charges, if any, will be deducted as explained in each Indexed Account's Policy Specifications.

Subject to the guaranteed maximums and guaranteed minimums shown in the Policy, we can change these charges and/or rates used to calculate the components of the Monthly Deduction in accordance with this Policy. We can also change the interest rates credited to this Policy and Account Value Enhancement Rates at any time in accordance with this Policy.

Simply put, additions consisting of Net Premium payments and interest additions increase the Policy Value. Deductions, including charges described above, decrease the Policy Value. If additions exceed deductions, your Policy Value increases; if deductions exceed additions, your Policy Value decreases. If the Cash Surrender Value becomes so small that we cannot subtract an entire Monthly Deduction, your Policy may terminate; see, however, the "Grace Period" provision, the "No-Lapse Minimum Premium" provision, and any Riders attached to your Policy.

**Interest Credited to the Fixed Account, Holding Account, and Dollar Cost Averaging Account, Account Value Enhancement, and Index Credits to the Indexed Account(s)**
While we guarantee a minimum interest rate credited to the Fixed Account, Holding Account, and Dollar Cost Averaging Account, do not assume that interest rates will remain constant for any extended period of time. We may change the interest rates credited to the Fixed Account, Holding Account, and Dollar Cost Averaging Account and Account Value Enhancement Rates at any time in accordance with this Policy subject to the guaranteed minimum rates shown in the Policy Specifications.

Index Credits on the Indexed Account(s) are linked to an outside financial Index and are applied to an Indexed Account Segment's Average Monthly Segment Balance on its Segment Maturity Date.

**No-Lapse Minimum Premium** Your Policy provides for a "No-Lapse Minimum Premium" provision at no extra charge, which can ensure that your Policy will remain In Force during the Coverage Period shown in the Policy Specifications even if the Cash Surrender Value is insufficient to cover the cost of a Monthly Deduction.

This Policy will not enter the grace period during the Coverage Period if the "No-Lapse Minimum Premium" provision is In Force and the No-Lapse Minimum Monthly Premium Test is met as described in the Policy Specifications.

**If this Policy terminates due to Lapse, the "No-Lapse Minimum Premium" provision will terminate and cannot be reinstated.**

**Monitoring Your Policy's Performance** We will send you an Annual Report of your Policy to help you monitor Policy Values. Please review your Annual Report carefully and compare it to your objectives when you purchased this Policy. Ask your life insurance agent to explain anything you do not understand. You may need to adjust your premiums to achieve your insurance objectives. At any time while your Policy is In Force, you may submit a Request to us for an In Force illustration that will show future death benefits and Policy Values. We encourage you to submit a Request for an In Force illustration at least once each Policy Year, subject to the terms of the "Illustration of Benefits and Values" provision of this Policy. We are also available to answer your questions and assist you in making changes to your Policy.

This Policy contains Non-Guaranteed Elements (NGEs) and Indexed Account Non-Guaranteed Elements (Indexed Account NGEs). We may make changes to each of these NGEs and Indexed Account NGEs as described in this Policy. A change to one or more of these NGEs and Indexed Account NGEs can affect your Policy's performance, including coverage duration, premiums required to keep your Policy In Force, and Cash Surrender Value.

**(This Page Left Blank Intentionally)**

# Policy Specifications

Policy Number IUL1062973

**Insured:** GHASEM MIRZADEH

**Issue Age and Sex:** 54 MALE

**Premium Class:** PREFERRED NON-TOBACCO

**Owner:** SINA CORPORATION

**Maturity Date:** MARCH 28, 2090. This date coincides with the Insured's Attained Age 121.

**Initial Specified Amount:** $5,000,000
**Minimum Specified Amount:** $100,000
**Monthly Anniversary Day:** 28

**Policy Date:** MARCH 28, 2023
**Date of Issue:** MARCH 30, 2023

**Plan of Insurance:** **INDIVIDUAL FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE WITH OPTIONAL INDEXED FEATURES**

**Death Benefit Option:** I

**NOTE: This Policy provides life insurance coverage to the death of the Insured if sufficient premiums are paid. The duration of coverage will depend on the amount, timing, and frequency of premium payments, Premium Loads, interest credited, Index Credits, if any, Policy Value Charge, Cost of Insurance, Monthly Administrative Fee, any loans or partial surrenders and the cost of additional benefits. The Planned Premium may need to be increased to keep this Policy and the coverage In Force.**

**Premium Payments:** Planned Premium: $5,725.13
Premiums payable until the Maturity Date.
Additional premium payments may vary by frequency or amount.

**Payment Mode:** MONTHLY

**Minimum Additional Premium Payment Amount:** No premium payment may be less than $200.00 Annually or $15.00 if paid by electronic funds transfer.

**Beneficiary:** As named in the application for this Policy, unless later changed.

**Guaranteed Minimum Fixed Account Interest Rate:** 0.25% annual effective rate (0.020809% monthly; 0.000684% daily) from the Policy Date to the Maturity Date.
3.00% annual effective rate (0.246627% monthly; 0.008099% daily) after the Maturity Date.

**Guaranteed Minimum Account Value Enhancement Rate Credited to Fixed Account, Holding Account, and Dollar Cost Averaging Account:** 0.25% annual effective rate (0.020800% monthly) in Policy Year(s) 1 and thereafter until the Maturity Date.

# Policy Specifications

Policy Number IUL1062973

| | |
|---|---|
| **Minimum Specified Amount Increase:** | $1,000 |
| **Maximum Attained Age for a Specified Amount Increase:** | Increases in Specified Amount not allowed after the Insured reaches Attained Age 85. |
| **Minimum Specified Amount Decrease:** | $1,000 |

## Loan Information

| | |
|---|---|
| **Minimum Loan Amount:** | $10.00 |
| **Minimum Loan Repayment Amount:** | $25.00 |

### Participating Loans

| | |
|---|---|
| **Participating Loan Interest Rate Charged:** | 5.00% annual effective rate for Policy Years 1-67;<br>3.00% annual effective rate for Policy Years 68 and thereafter. |

### Fixed Loans

| | |
|---|---|
| **Fixed Loan Interest Rate Charged:** | 4.00% annual effective rate for Policy Years 1-10;<br>3.00% annual effective rate for Policy Years 11 and thereafter. |
| **Collateral Account Credited Interest Rate:** | 3.00% annual effective rate in all Policy Years. |

## Partial Surrenders

| | |
|---|---|
| **Partial Surrender Minimum Amount:** | $500.00 |
| **Partial Surrender Maximum Amount:** | Not to exceed the Cash Surrender Value less $500.00 |
| **Partial Surrender Fee:** | Not to exceed $0.00 |

# Policy Specifications

Policy Number IUL1062973

## Riders and Benefits Charges

**Accelerated Benefits Rider (ABR650)**

**Overloan Protection Rider**

**Minimum Value Threshold:** 95.00%
**Maximum Value Threshold:** 99.00%
**Election Charge:** 3.00%

**Minimum Policy Years In Force:** 15

**Minimum Attained Age:** 75

# Policy Specifications

Policy Number IUL1062973

## Table of Surrender Charges

See Surrender Provisions for an explanation of when this table will be used.

| Policy Year | Surrender Charge as of Beginning of Policy Year |
|---|---|
| 1 | $192,550.00 |
| 2 | $186,850.00 |
| 3 | $181,200.00 |
| 4 | $175,550.00 |
| 5 | $169,900.00 |
| 6 | $134,100.00 |
| 7 | $97,150.00 |
| 8 | $62,500.00 |
| 9 | $30,100.00 |
| 10 and later | $0.00 |

# Policy Specifications

Policy Number IUL1062973

## Table of Expense Charges and Fees

The following expenses and fees are charged under this Policy:

**Guaranteed Maximum Premium Load**
We will deduct a Premium Load from each premium payment determined by a Threshold Amount shown below.

The Premium Load will be determined by comparing the amount of premiums paid over a one-year period against a Threshold Amount. In Policy Year 1, the Threshold Amount will be compared to the sum of premiums paid from Policy Month 1 through Policy Month 11. For Policy Years 2 and thereafter, the Threshold Amount will be compared to the sum of premiums paid from Policy Month 12 of the prior Policy Year through Policy Month 11 of the current Policy Year.

If a premium payment causes the sum of premiums paid in an applicable period to exceed the Threshold Amount, the amount of premium exceeding the Threshold Amount in that payment and any subsequent premiums paid in that period will be assessed the Premium Load applicable to Premiums Paid in excess of the Threshold Amount.

The Premium Load is calculated by multiplying the portion of each premium payment by the applicable percentage, which will not exceed the amounts shown below. After the Maturity Date, no further premium payments may be made.

| Premiums Paid up to and including the Threshold Amount | | Premiums Paid in excess of the Threshold Amount | |
|---|---|---|---|
| 12.00% | for Policy Year(s) 1-20; | 20.00% | for Policy Year(s) 1-20; |
| 5.00% | for Policy Year(s) 21 and thereafter. | 10.00% | for Policy Year(s) 21 and thereafter. |

Threshold Amount: $466,850.00

You will be notified of any additional Threshold Amount applicable to an increase in Specified Amount. A decrease in Specified Amount will cause a pro rata reduction in the Threshold Amount. Debt will have no effect on the Threshold Amount.

**Cost of Insurance**
See the "Cost of Insurance" provision.

**Guaranteed Maximum Monthly Administrative Fee**
The Monthly Administrative Fee equals (1) plus (2), where:
(1) is a monthly charge of $6.00 for 46 Policy Years; and
(2) is a monthly charge of $1.151 per $1,000 of Initial Specified Amount for 67 Policy Years.

The rate used to calculate the charge described in (2) above varies by the Insured's sex, Premium Class, Issue Age, and Death Benefit Option. You will be notified of any additional Monthly Administrative Fee applicable to an increase in Specified Amount. A decrease in Specified Amount will have no effect on this Monthly Administrative Fee.

**Guaranteed Maximum Policy Value Charge**
See the "Policy Value Charge" provision.

| Policy Year | Monthly Rate | Policy Year | Monthly Rate |
|---|---|---|---|
| 1 | 0.10% | 7 | 0.04% |
| 2 | 0.09% | 8 | 0.03% |
| 3 | 0.08% | 9 | 0.02% |
| 4 | 0.07% | 10 | 0.01% |
| 5 | 0.06% | 11 and later | 0.00% |
| 6 | 0.05% | | |

# Policy Specifications

Policy Number IUL1062973

## Table of Guaranteed Maximum Cost of Insurance Rates

The monthly Cost of Insurance rates per $1,000 of net amount at risk vary by the Insured's sex, Premium Class, Attained Age, and the Policy Year but will not exceed the rates shown in the table below in accordance with the Ultimate 2017 CSO Male/Female, Unismoke, age nearest birthday mortality table. If the Insured is in a rated Premium Class, the Guaranteed Maximum Cost of Insurance Rates shown in the table below will be adjusted to reflect the applicable Risk Factor and/or Flat Extra Monthly Insurance Cost, if any, shown in the Policy Specifications.

| Policy Year | Monthly Rate | Policy Year | Monthly Rate |
|---|---|---|---|
| 1 | 0.31304 | 41 | 21.89612 |
| 2 | 0.33813 | 42 | 23.37872 |
| 3 | 0.36657 | 43 | 25.34288 |
| 4 | 0.39921 | 44 | 27.50320 |
| 5 | 0.43604 | 45 | 29.93855 |
| 6 | 0.47960 | 46 | 32.62173 |
| 7 | 0.52904 | 47 | 35.52075 |
| 8 | 0.58689 | 48 | 38.34193 |
| 9 | 0.65150 | 49 | 41.25059 |
| 10 | 0.72455 | 50 | 44.19525 |
| 11 | 0.80522 | 51 | 47.11985 |
| 12 | 0.89102 | 52 | 49.95900 |
| 13 | 0.98280 | 53 | 52.64655 |
| 14 | 1.07972 | 54 | 56.64956 |
| 15 | 1.18520 | 55 | 61.08167 |
| 16 | 1.30347 | 56 | 66.01938 |
| 17 | 1.44137 | 57 | 71.55390 |
| 18 | 1.60492 | 58 | 77.81151 |
| 19 | 1.79597 | 59 | 78.42505 |
| 20 | 2.01723 | 60 | 79.03858 |
| 21 | 2.26637 | 61 | 79.65212 |
| 22 | 2.54019 | 62 | 80.26565 |
| 23 | 2.83633 | 63 | 80.87919 |
| 24 | 3.15587 | 64 | 81.49272 |
| 25 | 3.50426 | 65 | 82.10626 |
| 26 | 3.89660 | 66 | 82.71979 |
| 27 | 4.34484 | 67 | 83.33333 |
| 28 | 4.86386 | 68 and later | 0.00000 |
| 29 | 5.43719 | | |
| 30 | 6.15319 | | |
| 31 | 6.98107 | | |
| 32 | 7.94388 | | |
| 33 | 9.06066 | | |
| 34 | 10.33802 | | |
| 35 | 11.78270 | | |
| 36 | 13.34948 | | |
| 37 | 15.02480 | | |
| 38 | 16.75714 | | |
| 39 | 18.50019 | | |
| 40 | 20.24352 | | |

# Policy Specifications

Policy Number IUL1062973

## Corridor Percentages Table

### Death Benefit Qualification Test: Guideline Premium Test

See the "Death Benefit Proceeds" provision and "Income Tax on Death Benefits" provision for an explanation of how this table will be used.

| Insured's Attained Age | Corridor Percentage | Insured's Attained Age | Corridor Percentage | Insured's Attained Age | Corridor Percentage |
|---|---|---|---|---|---|
| 54 | 157% | 68 | 117% | 82 | 105% |
| 55 | 150% | 69 | 116% | 83 | 105% |
| 56 | 146% | 70 | 115% | 84 | 105% |
| 57 | 142% | 71 | 113% | 85 | 105% |
| 58 | 138% | 72 | 111% | 86 | 105% |
| 59 | 134% | 73 | 109% | 87 | 105% |
| 60 | 130% | 74 | 107% | 88 | 105% |
| 61 | 128% | 75 | 105% | 89 | 105% |
| 62 | 126% | 76 | 105% | 90 | 105% |
| 63 | 124% | 77 | 105% | 91 | 104% |
| 64 | 122% | 78 | 105% | 92 | 103% |
| 65 | 120% | 79 | 105% | 93 | 102% |
| 66 | 119% | 80 | 105% | 94 | 101% |
| 67 | 118% | 81 | 105% | 95 and later | 100% |

# Policy Specifications

Policy Number IUL1062973

## No-Lapse Minimum Premium

| | |
|---|---|
| **Coverage Period** | 10 YEARS |
| **No-Lapse Minimum Monthly Premium:** | $5,503.33 |

**No-Lapse Minimum Monthly Premium Test** – The No-Lapse Minimum Monthly Premium Test is met if (1) minus (2) minus (3) is greater than or equal to (4), where:

(1) is the total premiums paid;
(2) is the partial surrenders taken;
(3) is any Debt; and
(4) is the cumulative No-Lapse Minimum Monthly Premiums due.

## Holding Account Specifications

| | |
|---|---|
| **Guaranteed Minimum Holding Account Interest Rate:** | 0.25% annual effective rate |

## Dollar Cost Averaging Account Specifications

| | |
|---|---|
| **Available Dollar Cost Averaging Modal Premiums Frequency:** | ANNUALLY OR SEMI-ANNUALLY for Non-1035 Exchange Premiums; and<br>ANNUALLY, SEMI-ANNUALLY, QUARTERLY, OR MONTHLY for 1035 Exchange Premiums. |
| **Guaranteed Minimum Dollar Cost Averaging Account Interest Rate:** | 0.25% annual effective rate |
| **Minimum Dollar Cost Averaging Premium:** | $1,000.00 |

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

| | |
|---|---|
| **Initial Allocation Date:** | The 15th day of the calendar month following the date we process payment of the initial premium. |
| **Monthly Allocation Date:** | The 15th day of each subsequent calendar month following the Initial Allocation Date. |
| **Segment Date:** | The date a Segment is created. |
| **Segment Month:** | Beginning when a Segment is created (the Segment Date) until the Segment Maturity Date, the period of time measured from the beginning of the 15th day of each calendar month to the end of the 14th day of the subsequent calendar month. |
| **Monthly Segment Balance:** | The value of the Segment at the end of each Segment Month. It is determined by taking the value of the Segment on the Segment Date less any withdrawals from the Segment through the end of each Segment Month.<br><br>If the Segment does not have a positive value at the end of a Segment Month, a Monthly Segment Balance of zero will be used for that month. |
| **Average Monthly Segment Balance:** | The sum of all Monthly Segment Balances for the entire Segment Duration divided by 12. |
| **Segment Maturity Date:** | The date each Segment matures, which is determined from the Segment Date plus the Segment Duration. |
| **Segment Maturity Value:** | The Monthly Segment Balance on the Segment Maturity Date plus any Index Credit. See Indexed Account descriptions which follow. |

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

| | |
|---|---|
| **Name of Account:** | 1-Year Point-to-Point Fidelity AIM® Dividend Indexed Account - Fixed Bonus - Uncapped with 0.00% Floor |
| **Index:** | "Fidelity AIM® Dividend" |
| **Segment Duration:** | 1 Year |
| **Guaranteed Minimum Indexed Account Value Enhancement Rate:** | 0.25000% annual effective rate for Segments with a Segment Maturity Date occurring in Policy Year(s) 1 and thereafter. |
| **Guaranteed Minimum Index Participation Rate:** | 25.00% |
| **Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** | 0.00% |

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Indexed Account Value Enhancement Rate and Index Participation Rate.**

### Indexed Account Value Enhancement

Beginning in the Policy Year shown above, we will credit an Indexed Account Value Enhancement by applying an Indexed Account Value Enhancement Rate, of no less than the Guaranteed Minimum Indexed Account Value Enhancement Rate shown above, to the value of each Segment on the Segment Maturity Date. A higher Indexed Account Value Enhancement Rate may be applied. The Indexed Account Value Enhancement applied will equal (a x b) where:

a. is the annual Indexed Account Value Enhancement Rate in effect on the Segment Date; and
b. is the Average Monthly Segment Balance before any Index Credits are applied.

### Index Credits

Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date. The Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Index Growth Rate; and
b. is the Average Monthly Segment Balance.

### Index Growth Rate

We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1] x c; and no less than d, where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date;
c. is the Index Participation Rate in effect on the Segment Date; and
d. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

### Index Participation Rate

A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Participation Rate applicable to a Segment on the Segment Date. We guarantee that the Index Participation Rate will never be less than the Guaranteed Minimum Index Participation Rate shown above. A higher Index Participation Rate may be applied.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point Fidelity AIM® Dividend Indexed Account - Fixed Bonus - Uncapped with 0.00% Floor (Continued)

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Indexed Account Value Enhancement Rate or Index Participation Rate, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

**Index Disclaimers**
The Fidelity AIM® Dividend Index (the "Index") is a product of Fidelity Product Services LLC ("FPS") and has been licensed for use by The Lincoln National Life Insurance Company and its affiliates and reinsurers ("Lincoln"). Fidelity is a registered trademark of FMR LLC. The Index is the exclusive property of FPS and is made and compiled without regard to the needs, including, but not limited to, the suitability needs of Lincoln or any Lincoln life insurance owner. Lincoln exercises sole discretion in determining whether and how the life insurance will be linked to the value of the Index. FPS does not provide investment advice to owners of the life insurance, and in no event shall any Lincoln life insurance policy owner be deemed to be a client of FPS. Neither FPS nor any third party involved in, or related to, making or compiling the Index makes any representation regarding the Index, Index information, Index or market performance, life insurance generally or the Lincoln life insurance in particular, and Lincoln life insurance is not sold, sponsored, endorsed or promoted by FPS or any other third party involved in, or related to, making or compiling the Index (including the Index calculation agent, as applicable). FPS disclaims all warranties, express or implied, including all warranties of merchantability or fitness for a particular use; does not guarantee the adequacy, accuracy, timeliness, and/or completeness of the Index or any data or communication related thereto; and assumes no liability for errors, omissions, or interruptions of the Fidelity AIM® Dividend Index.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

| | |
|---|---|
| **Name of Account:** | 1-Year Point-to-Point Fidelity AIM® Dividend Indexed Account – Uncapped with 0.00% Floor |
| **Index:** | "Fidelity AIM® Dividend" |
| **Segment Duration:** | 1 Year |
| **Guaranteed Minimum Index Participation Rate:** | 25.00% |
| **Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** | 0.00% |

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Index Participation Rate.**

**Index Credits**
Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date. The Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Index Growth Rate; and
b. is the Average Monthly Segment Balance.

**Index Growth Rate**
We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1] x c; and no less than d, where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date;
c. is the Index Participation Rate in effect on the Segment Date; and
d. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Index Participation Rate**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Participation Rate applicable to a Segment on the Segment Date. We guarantee that the Index Participation Rate will never be less than the Guaranteed Minimum Index Participation Rate shown above. A higher Index Participation Rate may be applied.

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Index Participation Rate, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point Fidelity AIM® Dividend Indexed Account – Uncapped with 0.00% Floor (Continued)

**Index Disclaimers**

The Fidelity AIM® Dividend Index (the "Index") is a product of Fidelity Product Services LLC ("FPS") and has been licensed for use by The Lincoln National Life Insurance Company and its affiliates and reinsurers ("Lincoln"). Fidelity is a registered trademark of FMR LLC. The Index is the exclusive property of FPS and is made and compiled without regard to the needs, including, but not limited to, the suitability needs of Lincoln or any Lincoln life insurance owner. Lincoln exercises sole discretion in determining whether and how the life insurance will be linked to the value of the Index. FPS does not provide investment advice to owners of the life insurance, and in no event shall any Lincoln life insurance policy owner be deemed to be a client of FPS. Neither FPS nor any third party involved in, or related to, making or compiling the Index makes any representation regarding the Index, Index information, Index or market performance, life insurance generally or the Lincoln life insurance in particular, and Lincoln life insurance is not sold, sponsored, endorsed or promoted by FPS or any other third party involved in, or related to, making or compiling the Index (including the Index calculation agent, as applicable). FPS disclaims all warranties, express or implied, including all warranties of merchantability or fitness for a particular use; does not guarantee the adequacy, accuracy, timeliness, and/or completeness of the Index or any data or communication related thereto; and assumes no liability for errors, omissions, or interruptions of the Fidelity AIM® Dividend Index.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

| | |
|---|---|
| **Name of Account:** | 1-Year Point-to-Point Multiplier Indexed Account – Capped with 0.00% Floor |
| **Index:** | "S & P 500®" |
| **Segment Duration:** | 1 Year |
| **Guaranteed Minimum Index Credit Enhancement Factor:** | 150.00% for Segments with a Segment Maturity Date occurring in Policy Year(s) 1 and thereafter. |
| **Guaranteed Maximum Asset Charge:** | 2.00% |
| **Guaranteed Minimum Index Participation Rate:** | 100.00% |
| **Guaranteed Minimum Index Growth Cap:** | 1.00% |
| **Index Growth Cap Trigger for Waiver of Surrender Charges:** | 4.00% or Lower |
| **Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** | 0.00% |

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Index Credit Enhancement Factor, Asset Charge, Index Participation Rate, and Index Growth Cap.**

**Index Credit Enhancement**
An Index Credit Enhancement is used in calculating the final Index Credit applicable to a Segment. For Segments with a Segment Maturity Date occurring in the Policy Years shown above and an Index Growth Rate for a Maturing Segment results in an effective annual rate greater than the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment as shown above, we will apply an Index Credit Enhancement Factor of no less than the Guaranteed Minimum Index Credit Enhancement Factor shown above. A higher Index Credit Enhancement Factor may be applied.

**Asset Charge**
On the Segment Date, an Asset Charge will be deducted from the value transferred to this Indexed Account. The Asset Charge is calculated by multiplying the value transferred to this Indexed Account by a percentage, not to exceed the Guaranteed Maximum Asset Charge shown above.

**Index Credits**
Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date. The Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Index Growth Rate; and
b. is the Average Monthly Segment Balance.

The resulting Index Credit will then be multiplied by any applicable Index Credit Enhancement Factor in effect on the Segment Date.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point Multiplier Indexed Account – Capped with 0.00% Floor (Continued)

**Index Growth Rate**
We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1] x c; not to exceed d, and no less than e, where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date;
c. is the Index Participation Rate in effect on the Segment Date;
d. is the Index Growth Cap in effect on the Segment Date; and
e. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Index Participation Rate**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Participation Rate applicable to a Segment on the Segment Date. We guarantee that the Index Participation Rate will never be less than the Guaranteed Minimum Index Participation Rate shown above. A higher Index Participation Rate may be applied.

**Index Growth Cap**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Growth Cap applicable to a Segment on the Segment Date. We guarantee that the Index Growth Cap will never be less than the Guaranteed Minimum Index Growth Cap shown above. A higher Index Growth Cap may be applied.

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Asset Charge, we will use Redetermination Classes to make those changes. Such change can be made in consideration of one or more future anticipated or emerging experience factors which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

If we make a change to the Index Credit Enhancement Factor, Index Participation Rate, or Index Growth Cap, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point Multiplier Indexed Account – Capped with 0.00% Floor (Continued)

**Index Disclaimers**
The S&P 500 Index is a product of S&P Dow Jones Indices LLC, a division of S&P Global, or its affiliates ("SPDJI"), and has been licensed for use by The Lincoln National Life Insurance Company. Standard & Poor's® and S&P® are registered trademarks of Standard & Poor's Financial Services LLC, a division of S&P Global ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"). The Lincoln National Life Insurance Company's product is not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, their respective affiliates, and none of such parties make any representation regarding the advisability of investing in such product nor do they have any liability for any errors, omissions, or interruptions of the S&P 500 Index.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point S&P 500® Traditional Indexed Account – Capped with 0.25% Floor

| | |
|---|---|
| **Index:** | "S & P 500®" |
| **Segment Duration:** | 1 Year |
| **Guaranteed Minimum Index Participation Rate:** | 100.00% |
| **Guaranteed Minimum Index Growth Cap:** | 1.00% |
| **Index Growth Cap Trigger for Waiver of Surrender Charges:** | 4.00% or Lower |
| **Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** | 0.25% |

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Index Participation Rate and Index Growth Cap.**

**Index Credits**
Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date. The payment of a partial surrender prior to the Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in the value of the Segment. The payment of a full surrender prior to the Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis. Any transfer from a Segment due to a Fixed Loan, if available, and any transfer from a Segment to the Collateral Account will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in the value of the Segment. For all other situations, Index Credits for a Maturing Segment will be calculated as described below. The Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Index Growth Rate; and
b. is the Average Monthly Segment Balance.

**Index Growth Rate**
We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1] x c; not to exceed d, and no less than e, where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date;
c. is the Index Participation Rate in effect on the Segment Date;
d. is the Index Growth Cap in effect on the Segment Date; and
e. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Index Participation Rate**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Participation Rate applicable to a Segment on the Segment Date. We guarantee that the Index Participation Rate will never be less than the Guaranteed Minimum Index Participation Rate shown above. A higher Index Participation Rate may be applied.

**Index Growth Cap**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Growth Cap applicable to a Segment on the Segment Date. We guarantee that the Index Growth Cap will never be less than the Guaranteed Minimum Index Growth Cap shown above. A higher Index Growth Cap may be applied.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point S&P 500® Traditional Indexed Account – Capped with 0.25% Floor (Continued)

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Index Participation Rate or Index Growth Cap, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

**Index Disclaimers**
The S&P 500 Index is a product of S&P Dow Jones Indices LLC, a division of S&P Global, or its affiliates ("SPDJI"), and has been licensed for use by The Lincoln National Life Insurance Company. Standard & Poor's® and S&P® are registered trademarks of Standard & Poor's Financial Services LLC, a division of S&P Global ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"). The Lincoln National Life Insurance Company's product is not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, their respective affiliates, and none of such parties make any representation regarding the advisability of investing in such product nor do they have any liability for any errors, omissions, or interruptions of the S&P 500 Index.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

| | |
|---|---|
| **Name of Account:** | 1-Year Point-to-Point Fixed Bonus Indexed Account – Capped with 0.25% Floor |
| **Index:** | "S & P 500®" |
| **Segment Duration:** | 1 Year |
| **Guaranteed Minimum Indexed Account Value Enhancement Rate:** | 0.25% annual effective rate for Segments with a Segment Maturity Date occurring in Policy Year(s) 1 and thereafter. |
| **Guaranteed Minimum Index Participation Rate:** | 100.00% |
| **Guaranteed Minimum Index Growth Cap:** | 1.00% |
| **Index Growth Cap Trigger for Waiver of Surrender Charges:** | 4.00% or Lower |
| **Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** | 0.25% |

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Indexed Account Value Enhancement Rate, Index Participation Rate, and Index Growth Cap.**

**Indexed Account Value Enhancement**

Beginning in the Policy Year shown above, we will credit an Indexed Account Value Enhancement by applying an Indexed Account Value Enhancement Rate, of no less than the Guaranteed Minimum Indexed Account Value Enhancement Rate shown above, to the value of each Segment on the Segment Maturity Date. A higher Indexed Account Value Enhancement Rate may be applied. The Indexed Account Value Enhancement applied will equal (a x b) where:

a. is the annual Indexed Account Value Enhancement Rate in effect on the Segment Date; and
b. is the Average Monthly Segment Balance before any Index Credits are applied.

**Index Credits**

Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date. The payment of a partial surrender prior to the Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in the value of the Segment. The payment of a full surrender prior to the Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis. Any transfer from a Segment due to a Fixed Loan, if available, and any transfer from a Segment to the Collateral Account will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to the reduction in the value of the Segment. For all other situations, Index Credits for a Maturing Segment will be calculated as described below. The Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Index Growth Rate; and
b. is the Average Monthly Segment Balance.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point Fixed Bonus Indexed Account – Capped with 0.25% Floor (Continued)

**Index Growth Rate**
We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1] x c; not to exceed d, and no less than e, where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date;
c. is the Index Participation Rate in effect on the Segment Date;
d. is the Index Growth Cap in effect on the Segment Date; and
e. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Index Participation Rate**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Participation Rate applicable to a Segment on the Segment Date. We guarantee that the Index Participation Rate will never be less than the Guaranteed Minimum Index Participation Rate shown above. A higher Index Participation Rate may be applied.

**Index Growth Cap**
A factor used in calculating the Index Growth Rate and the Index Credit applicable to a Segment. We will declare the Index Growth Cap applicable to a Segment on the Segment Date. We guarantee that the Index Growth Cap will never be less than the Guaranteed Minimum Index Growth Cap shown above. A higher Index Growth Cap may be applied.

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Indexed Account Value Enhancement Rate, Index Participation Rate, or Index Growth Cap, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

**Index Disclaimers**
The S&P 500 Index is a product of S&P Dow Jones Indices LLC, a division of S&P Global, or its affiliates ("SPDJI"), and has been licensed for use by The Lincoln National Life Insurance Company. Standard & Poor's® and S&P® are registered trademarks of Standard & Poor's Financial Services LLC, a division of S&P Global ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"). The Lincoln National Life Insurance Company's product is not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, their respective affiliates, and none of such parties make any representation regarding the advisability of investing in such product nor do they have any liability for any errors, omissions, or interruptions of the S&P 500 Index.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point S&P 500® Performance Trigger Indexed Account with 0.00% Floor
**Index:** "S & P 500®"
**Segment Duration:** 1 Year
**Guaranteed Minimum Performance Trigger Index Credit Rate:** 1.00%
**Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment:** 0.00%

**This Indexed Account contains the following Indexed Account Non-Guaranteed Elements (Indexed Account NGEs): Performance Trigger Index Credit Rate.**

**Index Credits**
Index Credits are calculated separately for each Segment on the Segment Maturity Date. An Index Credit is not calculated or credited to a Segment before the Segment Maturity Date.

If the Index Growth Rate is greater than the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment, the Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Performance Trigger Index Credit Rate in effect on the Segment Date; and
b. is the Average Monthly Segment Balance.

If the Index Growth Rate is equal to the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment, the Index Credit on the Segment Maturity Date is equal to (a x b) where:

a. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment; and
b. is the Average Monthly Segment Balance.

**Index Growth Rate**
We will determine the Index Growth Rate used in determining the Index Credit subject to any guaranteed factors for the Indexed Account as shown above. The Index Growth Rate is equal to [(a/b) – 1]; and no less than c where:

a. is the Closing Value of the Index as of the Segment Maturity Date;
b. is the Closing Value of the Index as of the Segment Date; and
c. is the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Performance Trigger Index Credit Rate**
A factor used in calculating the Index Credit applicable to a Segment. We will declare the Performance Trigger Index Credit Rate applicable to a Segment on the Segment Date. We guarantee that the Performance Trigger Index Credit Rate will never be less than the Guaranteed Minimum Performance Trigger Index Credit Rate shown above. A higher Performance Trigger Index Credit Rate may be applied.

# Policy Specifications

Policy Number IUL1062973

## Indexed Account Specifications

**Name of Account:** 1-Year Point-to-Point S&P 500® Performance Trigger Indexed Account with 0.00% Floor (Continued)

**Changes to Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)**
Subject to the guaranteed maximums and guaranteed minimums shown in this Indexed Account's Policy Specifications, we may change (also known as redetermine) the Indexed Account NGEs that apply to this Indexed Account. We will not make any changes to these Indexed Account NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the Indexed Account NGEs although in our discretion we may choose to do so.

If we make a change to the Performance Trigger Index Credit Rate, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

**Index Disclaimers**
The S&P 500 Index is a product of S&P Dow Jones Indices LLC, a division of S&P Global, or its affiliates ("SPDJI"), and has been licensed for use by The Lincoln National Life Insurance Company. Standard & Poor's® and S&P® are registered trademarks of Standard & Poor's Financial Services LLC, a division of S&P Global ("S&P"); Dow Jones® is a registered trademark of Dow Jones Trademark Holdings LLC ("Dow Jones"). The Lincoln National Life Insurance Company's product is not sponsored, endorsed, sold or promoted by SPDJI, Dow Jones, S&P, their respective affiliates, and none of such parties make any representation regarding the advisability of investing in such product nor do they have any liability for any errors, omissions, or interruptions of the S&P 500 Index.

**(This Page Left Blank Intentionally)**

# Definitions

**1035 Exchange Premiums** All premiums paid into this Policy that are amounts received in a transaction that qualifies as an exchange under Section 1035 of the Internal Revenue Code.

**Accumulated Premium** The Accumulated Premium only applies if Death Benefit Option III is elected. The Accumulated Premium is used to determine the Death Benefit Proceeds payable under Death Benefit Option III. Accumulated Premium is determined on each Monthly Anniversary Day and equals the sum of all premiums paid less any partial surrenders; the Accumulated Premium will never be less than zero. Any premium paid that would cause the death benefit to exceed the Death Benefit Option III Limit will be applied to this Policy as Net Premium and credited to the Policy Value, but the premiums paid will only increase the death benefit up to the Death Benefit Option III Limit.

**Attained Age (Age)** The Insured's Issue Age plus the number of completed Policy Years that have elapsed since the Policy Date. The Insured's Attained Age increases by one on each Policy Anniversary. For purposes of this Policy, the Insured's Attained Age increase will always occur on the Policy Anniversary regardless of when the Insured's actual birthday occurs.

Example: If the Insured's Issue Age was 35 on a Policy Date of August 1, 2019, and the Policy has completed 5 Policy Years on August 1, 2024, the Insured would be Attained Age 40.

**Average Monthly Segment Balance** is defined in the Policy Specifications.

**Beneficiary** The person(s) or entity(ies) named in the application for this Policy, unless later changed as provided for by this Policy, to whom we will pay the Death Benefit Proceeds.

**Cash Surrender Value** Policy Value, less any Debt, and less any applicable surrender charge shown in the Table of Surrender Charges in the Policy Specifications.

**Cash Value** Policy Value less any applicable surrender charge shown in the Table of Surrender Charges in the Policy Specifications.

**Class(es)** Group(s) of policies that were considered together for the purposes of the initial determination of each NGE and each Indexed Account NGE. Classes were determined by us, and consisted of policies with similar characteristics, which may have included one or more characteristics but were not limited to: Specified Amount, Death Benefit Option, Policy Date, Policy Duration, premiums paid, source of premium, Policy ownership structure, underwriting type, sales distribution method, the Insured's Age, Sex, and Premium Class, increases in Specified Amount, issue state, policy form, and the presence and attributes of Policy features and benefits and optional Riders.

**Closing Value of an Index** The value of an Index as of the close of the New York Stock Exchange, which is usually 4:00 P.M. Eastern Time. If no closing value is published, we will use the closing value for the next day for which a closing value is published.

**Collateral Account** The portion of the Policy Value that secures the principal of any Fixed Loan taken from this Policy.

**Cost of Insurance** The monthly charge associated with the amount of death benefit provided under this Policy as defined on Page 18.

**Date of Issue** The date from which Suicide and Incontestability periods are measured. The Date of Issue is shown in the Policy Specifications.

**Death Benefit Proceeds** The amount payable upon the Insured's death as described in the "Death Benefit Proceeds" provision.

**Debt** The total amount of any outstanding loans against this Policy, including loan interest accrued but not yet charged. On any day, Debt is equal to the principal of the loan plus accrued interest on the loan.

**Dollar Cost Averaging Account** This is an optional account that may be used by you to direct Net Premiums according to your Premium Allocation instructions, from which a portion is then systematically transferred according to your Account Allocation instructions. On each Monthly Allocation Date, an amount equal to one twelfth (1/12) of the Net Premiums that have been allocated to the Dollar Cost Averaging Account within the last 12 month period, plus any interest credited to the Dollar Cost Averaging Account since the last Monthly Allocation Date, is systematically transferred to the Holding Account. The Dollar Cost Averaging Account is part of the Policy Value and is credited with interest daily as explained in the "Dollar Cost Averaging Account Provisions".

**Due Proof of Death** A certified copy of an official death certificate, a certified copy of a decree of a court of competent jurisdiction as to the finding of death, or any other proof of death.

**Evidence of Insurability** Evidence establishing the health, lifestyle, financial and other circumstances that may impact the insurability of the Insured.

**Fixed Account** An account into which value may be deposited from the Holding Account on each Monthly Allocation Date according to your Account Allocation instructions. This account is part of the Policy Value and is credited with interest daily as explained in the "Interest Rate on Fixed Account" provision. The Guaranteed Minimum Fixed Account Interest Rate is shown in the Policy Specifications. Please refer to the "Policy Value" provision.

**Guideline Premium** If the Guideline Premium Test is elected as the Death Benefit Qualification Test, the applicable premium limit used for this Policy to continue to qualify as life insurance under the Internal Revenue Code Section 7702.

**Holding Account** An account from which value is systematically transferred to the Fixed Account and/or Indexed Account(s) according to your Account Allocation instructions on each Allocation Date. This account is part of the Policy Value and is credited with interest daily as explained in the "Holding Account Provisions".

**Index** An external index used as a basis to determine the Index Credits. The Index(es) are shown in the Policy Specifications.

**Indexed Account** The portion of the Policy Value that represents the total value of all open Segments. The Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment on a Segment Maturity Date is shown in the Policy Specifications. See the "Policy Value" provision. Please see the "Surrender", "Partial Surrender", "Fixed Loan", and "Participating Loan to Fixed Loan Conversion" provisions for an explanation of how Index Credits will be determined when the value of an Index Segment has been reduced prior to the Segment Maturity Date.

**Indexed Account Non-Guaranteed Elements (Indexed Account NGEs)** Any Indexed Account element within this Policy that affects the costs or values of the Policy and which may be changed at our discretion after this Policy is issued. Indexed Account NGEs are as defined in each Indexed Account's Policy Specifications.

**In Force** Not terminated for any reason.

**In Writing** This term means a written form of communication received at our Service Office. We retain the right to agree in advance to accept communication by telephone or some other form of transmission, in a manner we prescribe, and doing so does not waive our right to require that future communications be in written form. Before we receive your communication at our Service office, we will not be responsible for any action we take or allow that conflicts with your communication. With respect to any written communication from us to you or any other person, this term means a written form of communication by ordinary mail to such person at the most recent address in our records. If agreed to in advance by you, we may also send communication to you by some other form of transmission. Any notice, election or request required or permitted under the terms of this Policy stated as "Notice", "Request" or "Election" are communications required to be In Writing as provided by this definition.

**Insured** The person whose life is insured under this Policy.

**Irrevocable Beneficiary** A Beneficiary who is named by you as irrevocable which you cannot change or remove from the Policy without their consent. Any Beneficiary that you designate as irrevocable must provide consent for you to exercise ownership rights which may adversely affect the Beneficiary's interest.

**Issue Age** The Insured's age nearest birthday on the Policy Date.

> Example: If the Policy Date is August 1, 2019, and the Insured's birthdate is August 30, 1984, the Insured's nearest birthday is August 30, 2019 and as such, the Insured's Issue Age would be age 35.

**Lapse** Terminate without value.

**Maturity Date** The date (as shown in the Policy Specifications) on which, if this Policy is In Force, the policy changes described in the "Continuation of Coverage After the Maturity Date" provision will take place. Refer to the "Continuation of Coverage After the Maturity Date" provision for details.

**Monthly Anniversary Day** The same day in each month when we deduct the Monthly Deduction.

**Monthly Deduction** The amount deducted on each Monthly Anniversary Day from the Policy Value for certain charges, fees, and the Cost of Insurance for the current Policy Month, as described in the "Monthly Deduction" provision.

**Monthly Segment Balance** is defined in the Policy Specifications.

**Net Amount at Risk (NAAR)** An amount used for the purpose of calculating the Cost of Insurance as described in the "Cost of Insurance" provision.

**Net Premium** The portion of a premium payment, after deduction of an amount not to exceed the Guaranteed Maximum Premium Load as described in the Policy Specifications, allocated to the Policy Value. See the "Net Premium" provision.

**Non-1035 Exchange Premiums** All premiums paid into this Policy excluding 1035 Exchange Premiums.

**Non-Guaranteed Elements (NGEs)** Any element within this Policy that affects the costs or values of the Policy and which may be changed at our discretion after this Policy is issued, subject to the guaranteed maximums ("Guaranteed Maximum Premium Load", "Guaranteed Maximum Monthly Administrative Fee," and "Guaranteed Maximum Policy Value Charge" on Page 3c, and "Guaranteed Maximum Cost of Insurance Rates" on Page 3d) and guaranteed minimums ("Guaranteed Minimum Fixed Account Interest Rate" and "Guaranteed Minimum Account Value Enhancement Rate Credited to Fixed Account, Holding Account, and Dollar Cost Averaging Account" on Page 3 – 1 of 2, and "Guaranteed Minimum Holding Account Interest Rate" and "Guaranteed Minimum Dollar Cost Averaging Account Interest Rate" on page 3f) as shown in the Policy Specifications. NGEs include Policy Value Charge, Cost of Insurance Rate, Premium Load, Monthly Administrative Fee, interest rate credited to the Fixed Account, interest rate credited to the Holding Account, interest rate credited to the Dollar Cost Averaging Account, and Account Value Enhancement Rate.

**Owner** The person(s) or entity(ies) shown in the Policy Specifications who may exercise rights under this Policy, unless later changed as provided for by this Policy. If no Owner is designated, the Insured will be the Owner.

**Policy Anniversary** The same month and day as the Policy Date for each succeeding year this Policy remains In Force.

**Policy Date** The date (as shown in the Policy Specifications) on which life insurance coverage begins if the first premium has been paid. This is also the date from which Monthly Anniversary Days, Policy Anniversaries, Policy Years, Policy Months and premium due dates are determined.

**Policy Duration** The number of full or partial Policy Years that have elapsed since the Policy Date.

**Policy Month** The period from one Monthly Anniversary Day up to, but not including, the next Monthly Anniversary Day.

**Policy Specifications** The pages of this Policy which show your benefits, premiums, costs, and other policy information.

**Policy Value** The sum of the Fixed Account Value, Holding Account Value, Dollar Cost Averaging Account Value, Indexed Account Value, and the Collateral Account Value as described in the "Policy Value Provisions".

**Policy Year(s)** The one year period beginning on the Policy Date and ending one day before the Policy Anniversary and each subsequent one year period beginning on a Policy Anniversary.

> Example: If the Policy Date is August 1, 2019, the first Policy Year ends on July 31, 2020. The first Policy Anniversary falls on August 1, 2020.

**Premium Class** The Insured's underwriting classification under this Policy, determined by our underwriting assignment, as shown in the Policy Specifications. Premium Class is not the same as "Class" or "Redetermination Class."

**Redetermination Class(es)** Group(s) of policies that are considered together for the purpose of adjusting (also known as redetermining) each NGE or each Indexed Account NGE. Redetermination Classes will be determined by us, and may be different than the Class or Classes used when the rates and charges were initially determined for this Policy. Different Redetermination Classes may be used when adjusting each NGE or each Indexed Account NGE or when adjusting an NGE or Indexed Account NGE at different points in time. Redetermination Classes will consist of policies with similar characteristics, which may include one or more characteristics but are not limited to: Specified Amount, Death Benefit Option, Policy Date, Policy Duration, premiums paid, source of premium, Policy ownership structure, underwriting type, sales distribution method, the Insured's Age, Sex, and Premium Class, increases in Specified Amount, issue state, policy form, and the presence and attributes of Policy features and benefits and optional Riders.

**Segment Duration** is defined in the Policy Specifications.

**Segment Maturity Date** is defined in the Policy Specifications.

**Segment Maturity Value** is defined in the Policy Specifications.

**Segment Month** is defined in the Policy Specifications.

**Service Office** Our principal place of business as shown on Page 1.

**Specified Amount** The amount you chose which is used to determine the amount of death benefit and the amount of Rider benefits, if any. The Minimum Specified Amount allowable under this Policy and the Specified Amount at issue ("Initial Specified Amount") are shown in the Policy Specifications. The Specified Amount may be increased or decreased as described in this Policy.

**We, our, us** The Company.

**You, your** The Owner(s) of this Policy.

# The Contract

**Entire Contract** This Policy, the application for this Policy, and any Amendment(s), Endorsement(s), Rider(s), and supplemental application(s) that may be attached are the entire contract between you and us. All statements made in the application will, in the absence of fraud, be deemed representations and not warranties. We will not use any statement to contest this Policy unless it is contained in the application and a copy of the application is attached to this Policy.

**Changes to Contract Terms** Only the Chief Executive Officer, Chief Compliance Officer, President, Senior Vice President, Vice President, Assistant Vice President, or Secretary of the Company may make or modify the terms of this Policy or any of its Amendment(s), Endorsement(s), or Rider(s). Any such changes must be provided in a Notice to be effective. We will notify you of any change.

Upon Notice to you, we may, at any time, modify this Policy to conform with any law or regulation issued by any government agency to which this Policy or we (the Company) are subject.

**Non-participating** This Policy is non-participating; it is not eligible for dividends.

**Misstatement of Age or Sex** If the date of birth or sex of the Insured is misstated, we will adjust the Death Benefit Proceeds to the amount that would have been provided by the most recent Cost of Insurance deduction at the correct Issue Age and sex. The Policy Value will not be affected.

**Incontestability** Except for nonpayment of premium, this Policy will be incontestable after it has been In Force for 2 years from the Date of Issue shown in the Policy Specifications. This means that we will not use any material misstatement in the application to challenge a claim or contest liability after that time.

Any increase in the Specified Amount effective after the Date of Issue will be incontestable only after such increase has been In Force for 2 years. The basis for contesting an increase in Specified Amount will be limited to material misrepresentations made in the supplemental application for the increase.

If this Policy is reinstated, the basis for contesting after reinstatement will be:

a. limited to the remainder of the original contestable period, if any, for material misrepresentations made in the original application; and
b. limited to a period of 2 years from the date of reinstatement for material misrepresentations made in the reinstatement application.

# Ownership

**Rights of Owner** Except as provided below and subject to any applicable state law, you may exercise all rights under this Policy while the Insured is living including, but not limited to, the right to:

a. return this Policy under the “Right to Examine this Policy” provision;
b. surrender this Policy;
c. agree with us to any change in or amendment to this Policy;
d. transfer all your rights to another person or entity;
e. change the Beneficiary (unless you specifically submit a Request not to reserve this right);
f. assign this Policy;
g. effect a loan;
h. provide us with allocation instructions;
i. effect a partial surrender; and
j. effect a reinstatement.

Except for the right to change the Beneficiary, you must have the consent of any assignee recorded with us to exercise all other rights under this Policy. You may exercise your rights subject to the consent of any Irrevocable Beneficiary, subject to any applicable law.

Unless provided otherwise, if you are not the Insured and you die before the Insured, all of your rights under this Policy will transfer and vest in your executors, administrators or assigns.

If there is more than one Owner, ownership shall be shared jointly, unless specifically stated otherwise, and the consent of all joint Owners will be necessary to exercise any right. Upon the death of a joint Owner, the remaining Owner or joint Owners shall succeed to the rights and privileges of the deceased joint Owner. Upon the death of the Owner or all joint Owners, any contingent Owner or Owners designated shall become the Owner or Owners. If no contingent Owner is designated, the estate of the Owner or the estate of the last joint Owner to die will succeed to all the rights and privileges of ownership.

**Transfer of Ownership** You may transfer all of your rights under this Policy by submitting a Request. The Request does not need to be signed by the Beneficiary unless you have designated an Irrevocable Beneficiary. You may revoke any transfer prior to it being recorded by us by submitting a Request to our Service Office. A transfer of ownership, or a revocation of transfer, will not take effect until recorded by us at our Service Office. Once we have recorded the transfer or revocation of transfer, unless a future date is specified by you, it will take effect as of the date of the latest signature on the Request. Any payment made or any action taken or allowed by us before we receive the transfer or revocation of transfer will be without prejudice to us.

On the effective date of transfer, the transferee will become the Owner and will have all the rights and be subject to the limitations of the Owner as described under the "Rights of Owner" provision of this Policy. Unless you direct us otherwise, a transfer will not affect the interest of any Beneficiary designated prior to the effective date of transfer.

**Assignment** Assignment of this Policy must be submitted by Request and, unless a future date is specified by you, will take effect as of the date the assignment is signed. Before we receive your Request at our Service Office, we will not be responsible for any action we take or allow that conflicts with your Request. We will not be responsible for the validity or sufficiency of any assignment. While an assignment is in effect, to the extent provided under the terms of the assignment, an assignment will:

a. transfer the interest of any designated transferor; and
b. transfer the interest of any Beneficiary, if you have reserved the right to change the Beneficiary.

**Some Important Things You Should Do**

a. Provide us with any change in your mailing address in a timely manner.
b. Pay sufficient premiums on time to keep your Policy In Force.
c. Notify us of any change in Beneficiary.

## Beneficiary

**Beneficiary** You may designate one Beneficiary or more than one Beneficiary. If you designate more than one Beneficiary, any Death Benefit Proceeds payable will be paid in equal shares to the survivors in the appropriate Beneficiary designation (primary, contingent, and second contingent), unless you submit a Request otherwise. If no Beneficiary is alive when the Death Benefit Proceeds become payable or in the absence of any Beneficiary designation, Death Benefit Proceeds will transfer and vest in you or in your executors, administrators or assigns.

**Change of Beneficiary** While the Insured is alive, you may change the Beneficiary by submitting a Request. Unless a future date is specified by you, any change will take effect as of the date the Request is signed by you subject to any payments we make or other actions we take before we receive it. The Insured need not be living when the requested change is received at our Service Office, however the requested change must be delivered to us prior to the death of the Insured. The Beneficiary does not have to consent or sign the Request unless you have designated an Irrevocable Beneficiary.

## Insurance Coverage and Death Benefit Provisions

**Dates of Coverage** The dates of coverage under this Policy will be as follows:

a. For all coverages provided in the original application, the effective date of coverage will be the Policy Date provided the first premium has been paid and the Policy has been accepted by you while the Insured is living.
b. For any increase, decrease, or addition to coverage, the effective date of coverage will be the Monthly Anniversary Day on or next following the day we approve the application for the increase, decrease, or addition to coverage, and the first month's Cost of Insurance for the increase, if applicable, is deducted as described in the "Increases in Specified Amount" provision, provided the Insured is living on such day.
c. For any insurance that has been reinstated, the effective date of coverage will be the date as described in the "Reinstatement" provision.

**Termination of Coverage** All coverage under this Policy terminates on the first of the following to occur:

a. a full surrender of this Policy;
b. the Insured's death; or
c. failure to pay the amount of premium necessary to avoid termination before the end of any applicable grace period.

No action by us after this Policy has terminated, including any Monthly Deduction made effective after termination of coverage, will constitute a reinstatement of this Policy or waiver of the termination. Any such deduction will be refunded.

**Death Benefit Proceeds** If the Insured dies while this Policy is In Force and upon Notice of Claim, we will pay Death Benefit Proceeds equal to the greater of:

a. the amount determined under the Death Benefit Option in effect on the date of the Insured's death, less any Debt; or
b. an amount equal to the Policy Value on the date of the Insured's death multiplied by the applicable percentage shown in the Corridor Percentages Table in the Policy Specifications, less any Debt.

**Death Benefit Options** The Death Benefit Option on the Policy Date is shown in the Policy Specifications. This Policy provides the following Death Benefit Options:

- **Death Benefit Option I** The Specified Amount on the Insured's date of death.
- **Death Benefit Option II** The greater of: 1) the Specified Amount on the Insured's date of death plus the Policy Value at the beginning of the Policy Month of the Insured's death, less any partial surrenders requested prior to the date of death but paid after the date of death; or 2) the Specified Amount on the date of the Insured's death multiplied by the Death Benefit Option II Factor, as shown in the Policy Specifications.
- **Death Benefit Option III** The Specified Amount on the Insured's date of death plus the Accumulated Premium on the date of death, less any partial surrenders requested prior to the date of death but paid after the date of death. The Death Benefit Option III Limit shown in the Policy Specifications is the maximum Death Benefit Proceeds payable under this option.

If this Policy is In Force at the Maturity Date, the Death Benefit Option will change automatically as described below.

**Notice of Claim** You or someone on your behalf should provide us with Notice of Due Proof of Death within 30 days or as soon as reasonably possible after the death of the Insured.

**Income Tax on Death Benefits** This Policy is intended to qualify as life insurance under the Internal Revenue Code so that the Death Benefit Proceeds will not be taxable as income to the Beneficiary(ies). To do so, this Policy must qualify under one of two tests, the Cash Value Accumulation Test or the Guideline Premium Test, as defined in the Internal Revenue Code Section 7702. The Death Benefit Qualification Test for this Policy is shown in the Policy Specifications and cannot be changed. Unless you elect otherwise when applying for this Policy, the Death Benefit Qualification Test will be the Guideline Premium Test.

**Suicide** If the Insured commits suicide, whether sane or insane, within 2 years from the Date of Issue, the Death Benefit Proceeds will be limited to an amount equal to the premiums paid less any Debt and any partial surrenders.

If the Insured commits suicide, whether sane or insane, within 2 years from the date of any increase in the Specified Amount, the Death Benefit Proceeds with respect to such increase will be limited to an amount equal to the monthly charges paid for the cost of the increase in the Specified Amount.

**Method of Payment** Upon the Insured's death while this Policy is In Force, Death Benefit Proceeds may be paid in a lump sum or left with us for payment under a settlement option that we make available.

**Interest on Death Benefit** We will pay interest on any Death Benefit Proceeds payable only as required by applicable law.

**Continuation of Coverage After the Maturity Date** Unless otherwise agreed to by you and us, if this Policy is In Force at the Maturity Date (but not in the grace period), no further premium payments will be allowed and we will:

a. Continue to credit interest as described in the "Fixed Account Interest Rate" provision;
b. No longer charge Monthly Deductions under this Policy;
c. Not allow any changes to the Specified Amount;
d. Change the Death Benefit Option to Death Benefit Option I, if applicable, and not allow any more changes;
e. Not allow any new Segments to be opened and any Segment Maturity Value will be transferred to the Fixed Account on its Segment Maturity Date;
f. Transfer any value in the Dollar Cost Averaging Account or Holding Account to the Fixed Account;
g. Allow loans and partial surrenders to be taken. Loan interest rates will apply as shown in the Policy Specifications and loan repayments can continue to be made. You may repay all or part of a loan at any time while this Policy is In Force; and
h. Continue this Policy In Force until it is surrendered or the Death Benefit Proceeds become payable.

This provision will not continue any Rider attached to this Policy beyond the date for such Rider's termination, as provided in the Rider.

If this Policy is in the grace period at the Maturity Date, you will need to pay the minimum amount required to remove this Policy from the grace period in order to guarantee continuation of this Policy beyond the Maturity Date.

**There is some uncertainty whether this Policy would continue to qualify as life insurance in the year this Policy reaches the Maturity Date. There is also some uncertainty whether you would be viewed as constructively receiving the Policy Value at any time when this Policy's Cash Value is equal to the death benefit. You should consult a tax advisor concerning these issues.**

## Changes in Insurance Coverage

Upon your Request while the Insured is living, the insurance coverage may be changed as described in this section.

Changes in insurance coverage will be effective on the Monthly Anniversary Day on or next following the date we approve your Request for the change, unless another date mutually agreed to is requested.

**Increases in Specified Amount** Upon your Request and subject to Evidence of Insurability, the Specified Amount may be increased after the first Policy Year. The Minimum Specified Amount Increase and the Maximum Attained Age for a Specified Amount Increase are shown in the Policy Specifications. You will be notified of any additional Monthly Administrative Fees, Cost of Insurance, and surrender charges applicable to an increase in Specified Amount as explained in the "Surrender Charge" provision. You will also be notified of any additional Threshold Amount, used to determine the Premium Load, applicable to an increase in Specified Amount. If Death Benefit Option III is in effect, an increase in Specified Amount will increase the Death Benefit Option III Limit.

**Decreases in Specified Amount** Upon your Request, the Specified Amount may be decreased any time after the first Policy Year and prior to the Maturity Date. The Minimum Specified Amount Decrease is shown in the Policy Specifications. The Specified Amount may not be decreased below the Minimum Specified Amount shown in the Policy Specifications. At least 12 months must elapse after an increase before a decrease in Specified Amount can be made. Any decrease in Specified Amount will be deducted in the following order: (a) from the most recent Specified Amount increase, if any; (b) successively from the next most recent Specified Amount increase, if any; and (c) from the Initial Specified Amount. The Threshold Amount, used to determine the Premium Load, will be reduced on a pro-rata basis. A surrender charge will be applied as specified in the "Surrender Provisions". Please note that we will not allow a decrease in Specified Amount below the minimum Specified Amount required amount to maintain the qualification of this Policy as life insurance under the Internal Revenue Code. If Death Benefit Option III is in effect, a decrease in Specified Amount will decrease the Death Benefit Option III Limit.

**Death Benefit Option Changes** Upon your Request, you may change from Death Benefit Option II to Death Benefit Option I at any time after the 5th Policy Anniversary and before the Maturity Date. If you do, the Specified Amount will become that amount available as Death Benefit Proceeds immediately prior to the option change.

Upon your Request, you may change from Death Benefit Option III to Death Benefit Option I at any time after the 5th Policy Anniversary and before the Maturity Date. If you do, the Specified Amount will be increased by an amount equal to the Accumulated Premium, up to the Death Benefit Option III Limit.

You cannot change to Death Benefit Option II or to Death Benefit Option III. The Threshold Amount, used to determine the Premium Load, will not be affected by a change in Death Benefit Option.

**Premium Class Changes** Premium Class changes (such as a change in Tobacco User status) may occur upon your Request at any time after the first Policy Year, subject to Evidence of Insurability, and prior to the Maturity Date.

**Rider and/or Benefit Additions** If available, and subject to any underwriting guidelines and Evidence of Insurability requirements, you may submit a Request to add Rider(s) and/or Benefits to this Policy after the Policy Date.

**Policy Split Prohibition** This Policy may not be split to create more than one individual life insurance policy on the life of the Insured.

## Premium Provisions

**Payment of Premiums** The first premium payment is due on the Policy Date and is payable on or before delivery of this Policy. All subsequent premium payments may be paid at any time prior to the Maturity Date and in any amount, subject to the following provisions, unless we agree by Notice. However sufficient premium must be paid to keep this Policy In Force. Upon your Request, we will provide a premium receipt signed by an officer of the Company as required by the laws of the state in which this Policy is delivered. Please see "Planned Premiums" provision below.

Premium payments, after the first, can be made as follows:

a. Through prearranged withdrawals by contacting the Service Office; or
b. Sent to any premium address designated by us.

Sufficient premium payments must be paid in order to keep this Policy In Force. A change in the frequency, timing and amount of any premium payment(s) may decrease or increase the length of time this Policy will remain In Force and additional premium payments may be required.

**Planned Premiums** You choose how much premium you will pay and the frequency of such payments (the Planned Premiums). The Planned Premium you elected is shown in the Policy Specifications. You may change the amount and frequency of premium payments. Any change in the planned premiums may impact the Policy Values and benefits. We will send premium reminder notices for the amounts and frequency of payments you establish.

**Additional Premiums** You may make additional premium payments in an amount no less than the Minimum Additional Premium Payment Amount as shown in the Policy Specifications at any time before the Maturity Date. We reserve the right to limit the amount or frequency of any additional premium payments in accordance with the "Compliance with the Internal Revenue Code" and "Modified Endowment Contract" provisions. We also reserve the right to require Evidence of Insurability for any premium payment that would result in an immediate increase in the difference between the death benefit and the Policy Value. If Evidence of Insurability is not received, the premium, or any portion of the premium, may be returned. Your premiums are payable in United States currency. Any additional payment we receive will be applied as premium and not to repay any outstanding loans, unless you Request otherwise.

**No-Lapse Minimum Premium** During the Coverage Period shown in the Policy Specifications, this Policy will not Lapse according to the "Grace Period" provision if this provision is In Force and the No-Lapse Minimum Monthly Premium Test is met. The No-Lapse Minimum Monthly Premium applicable during the Coverage Period and the No-Lapse Minimum Monthly Premium Test are shown in the Policy Specifications. The No-Lapse Minimum Monthly Premium is due on each Monthly Anniversary Day during the Coverage Period.

This provision will terminate on the earliest of the following:

a. The end of the Coverage Period;
b. The date this Policy terminates, even if later reinstated; or
c. The date that continued payment of the No-Lapse Minimum Monthly Premium would result in this Policy failing to qualify as life insurance under the Internal Revenue Code. This could occur if a decrease in Specified Amount or removal of a Rider results in a decrease in the Guideline Premium.

Increases in Specified Amount for the Policy or any attached Rider, or the addition of Rider(s) may increase the amount of the No-Lapse Minimum Monthly Premium; however, any increase will not extend the length of the No-Lapse Minimum Monthly Premium Test. Decreases in Specified Amount, the removal of Rider(s), or a Death Benefit Option change will have no effect on the amount of the No-Lapse Minimum Monthly Premium.

**Catch Up Provision** If the "No-Lapse Minimum Premium" provision is In Force but the No-Lapse Minimum Monthly Premium Test is not met, you may satisfy the test requirements as shown in the Policy Specifications by paying additional premiums.

**Premium Refund** Any premium paid after the beginning of the Policy Month of the Insured's death will be refunded as part of the Death Benefit Proceeds, unless you submit a Request otherwise prior to our payment.

**Premium Allocation Instructions** You must provide us with Notice of your Premium Allocation instructions. The Premium Allocation, as instructed by you, determines how the Net Premium will be allocated between the Dollar Cost Averaging Account and the Holding Account. The amount of Net Premium allocated to the Dollar Cost Averaging Account must be equal to or greater than the Minimum Dollar Cost Averaging Premium amount as shown in the Policy Specifications.

For any Non-1035 Exchange Premiums, you must use an Available Dollar Cost Averaging Modal Premiums Frequency as shown in the Policy Specifications, and the Premium Allocation, as instructed by you, determines how the Net Premiums will be allocated between the Dollar Cost Averaging Account and the Holding Account. Allocations must be made in whole percentages, and must total one hundred percent.

For any 1035 Exchange Premiums, the Premium Allocation, as instructed by you, determines how the Net Premium will be allocated between the Dollar Cost Averaging Account and the Holding Account. Any allocation to the Dollar Cost Averaging Account will automatically allocate 100% of the Net Premiums to the Dollar Cost Averaging Account.

**Account Allocation Instructions** You must provide us with Notice of your Account Allocation instructions. The Account Allocation, as instructed by you, determines how the Holding Account Value will be allocated between the Fixed Account and/or Indexed Account(s). These allocations must be made in whole percentages, and each set of allocations must total one hundred percent. Your allocations may be changed at any time. Account Allocation instruction changes received one business day prior to, or on, an Allocation Date will be delayed until the next available Allocation Date.

**Maturing Segment Allocation** Except as noted below, the Segment Maturity Value will be transferred to the Holding Account on the Segment Maturity Date and then allocated to the Fixed Account and the Indexed Account(s) as directed by you. These allocations must be made in whole percentages, and each set of allocations must total one hundred percent of the Segment Maturity Value. If a Maturing Segment had a Monthly Segment Balance of zero for any Segment Month, the Segment Maturity Value will be allocated to the Fixed Account.

**Allocation Dates** The Initial Allocation Date is the first date on which transfers from the Holding Account to the Fixed Account and/or Indexed Account(s) may occur. The Initial Allocation Date and subsequent Allocation Date are shown in the Policy Specifications. The Initial Allocation Date and subsequent Allocation Dates are the dates on which transfers from the Holding Account to the Fixed Account and/or the Indexed Account(s) may occur.

## Grace Period, Continuation of Insurance and Reinstatement Provisions

**Grace Period** This Policy will enter the grace period if on any Monthly Anniversary Day:

a. The Cash Surrender Value is less than the Monthly Deduction for the current Policy Month; and
b. The No-Lapse Minimum Monthly Premium Test is not met during the Coverage Period (if the "No-Lapse Minimum Premium" provision is In Force) or the "No-Lapse Minimum Premium" provision has terminated.

If on any Monthly Anniversary Day, the "No-Lapse Minimum Premium" provision is In Force and the No-Lapse Minimum Monthly Premium Test is met, this Policy will not enter the grace period and will not be subject to termination under this provision.

We will allow a grace period of 61 days, beginning on the Monthly Anniversary Day this Policy enters the grace period, for payment of applicable required Net Premium as follows:

1. If the "No-Lapse Minimum Premium" provision is In Force, we will require payment sufficient to satisfy the No-Lapse Minimum Monthly Premium Test on the Monthly Anniversary Day immediately following the end of the grace period; or
2. If the "No-Lapse Minimum Premium" provision has terminated, we will require payment sufficient to maintain coverage for 3 Policy Months from the date this Policy enters the grace period (this would include the cost of Monthly Deductions due and unpaid during the grace period plus an amount sufficient to restore the Cash Surrender Value to cover the cost of the Monthly Deduction due on the Monthly Anniversary Day immediately following the end of the grace period).

If the total amount paid to us during the grace period is not sufficient, all coverage under this Policy will Lapse. However, a greater amount will be accepted, as additional premium will be due after the end of this period to maintain coverage for additional Policy Months.

We will send Notice to your last known address, to any designee as designated by you at the time of application, unless later changed by you, and to the last known address of any assignee of record at least 31 days before the end of the grace period. The Notice will state the amount of premium as noted above. All coverage under this Policy will Lapse if you do not pay this amount on or before 61 days beginning on the date this Policy enters the grace period. If the Insured dies within the grace period, we will deduct any overdue Monthly Deductions from the Death Benefit Proceeds.

As described in the "Loan Provisions", Debt reduces the Cash Surrender Value. Any increase in Debt, including loan interest due but not yet charged, may reduce the Cash Surrender Value, and cause this Policy to enter the grace period.

**Continuation of Insurance** If premiums are discontinued on any date, the Cash Surrender Value on that date will be used to determine if coverage is provided under this provision. This Policy and all Amendments, Endorsements, and Riders will continue In Force according to their terms as long as the Cash Surrender Value is sufficient to cover the Monthly Deduction. If the Cash Surrender Value is insufficient, this Policy will terminate according to the "Grace Period" provision except as provided for by the "No-Lapse Minimum Premium" provision.

**Reinstatement** If this Policy has Lapsed as described in the "Grace Period" provision, you may reinstate this Policy within 5 years from the date of Lapse provided:

a. this Policy has not been surrendered;
b. the Insured's death has not occurred since the date of Lapse;
c. you submit an application for reinstatement while the Insured is living;
d. you submit Evidence of Insurability;
e. you pay Net Premium equal to the Monthly Deductions due and unpaid during the grace period;
f. you pay enough Net Premium to keep this Policy and any reinstated Riders In Force for at least 2 Policy Months after the date of reinstatement; and
g. you pay or reinstate any Debt as of the date of Lapse.

The "No-Lapse Minimum Premium" provision will not be available upon reinstatement.

The Cash Surrender Value on the date of reinstatement will equal:

1. the Policy Value at the time of policy termination;
2. plus any Net Premiums credited at the time of reinstatement including the amounts stated in e. and f. above;
3. minus the surrender charge at the time of reinstatement;
4. minus any Debt at the time of reinstatement.

In addition to the minimum required payment to keep this Policy In Force as stated in e. and f. above, we recommend that you resume your Planned Premium to provide coverage beyond the initial period following the date of reinstatement. Please contact us if you need assistance in determining an updated Planned Premium.

Limitations may apply to the reinstatement of additional Riders and/or benefits that may be attached, as stipulated in the provisions of the additional Riders and/or benefits. The reinstated Policy will be effective as of the Monthly Anniversary Day on or next following the date on which we approve the application for reinstatement. At the time of reinstatement, the surrender charge will be calculated using the Policy Duration as though this Policy had never Lapsed. The period for which benefits are limited due to suicide is described in the "Suicide" provision and reinstatement of this Policy will not cause the period to re-commence.

For the purposes of resuming allocations to the Indexed Account(s) following the effective date of reinstatement, transfers will resume on the first Allocation Date following the effective date of reinstatement.

## Indexed Account Provisions

**Indexed Account(s) and Changes to Indexed Account(s)** This Policy provides for one or more Indexed Accounts. Indexed Account information is also shown in the Policy Specifications. We reserve the right to add one or more Indexed Accounts. We also reserve the right to withdraw an Indexed Account, but no less than one Indexed Account will be available to you. If an Indexed Account is added or withdrawn we will send Notice to you.

**Discontinuation Of or Substantial Change to an Index** If an Index is discontinued, or if an Index calculation changes substantially, we will select an alternative Index and will send Notice to you and any assignee.

**Segment** Each time a transfer is made from the Holding Account to an Indexed Account, a new Segment is created. The new Segment is credited with any Index Credits on the Segment Maturity Date. An open Segment is a Segment that has not yet reached its Segment Maturity Date. You may establish more than one Segment on the same date. Please refer to the Indexed Account Specifications section(s) of the Policy Specifications for detailed information regarding the calculation of Index Credits.

**Segment Date** The date a Segment is created. Each Segment has its own Segment Date. Segment Months, Segment Durations, and Segment Maturity Dates are measured from this date. If a Segment Date, Segment Month, or Segment Maturity Date coincides with a weekend, customary holiday, or a date on which the New York Stock Exchange is closed, the value of the Index associated with that Segment at the close of the next business day will be used.

**Withdrawals from the Indexed Account(s)** Withdrawals for Monthly Deductions, partial surrenders and transfers due to Fixed Loans will only be taken from the Indexed Account(s) if there are insufficient funds in the Fixed Account, Holding Account, and Dollar Cost Averaging Account. Funds will be withdrawn from the most recently opened Segment and will continue in successive order on a last in - first out basis. If multiple Segments were opened on the same Allocation Date, a prorated portion will be taken from each Segment.

## Holding Account Provisions

**Holding Account** Any portion of the Net Premiums allocated to the Holding Account and all funds for transfer to the Fixed Account and/or Indexed Account(s), including all Maturing Segments and funds from the Dollar Cost Averaging Account, if any, will first be deposited into the Holding Account. On each Monthly Allocation Date, the Holding Account Value will be transferred to the Fixed Account and/or Indexed Account(s) according to your Account Allocation instructions or Maturing Segment allocations. The Holding Account Value is determined as described in the "Holding Account Value" provision. We will credit interest daily to the Holding Account.

## Dollar Cost Averaging Account Provisions

You may submit a Request to allocate Net Premiums to the Dollar Cost Averaging Account.

For Non-1035 Exchange Premiums, to allocate a specified percentage of Net Premiums to the Dollar Cost Averaging Account, you must pay Non-1035 Exchange Premiums using an Available Dollar Cost Averaging Modal Premiums Frequency as shown in the Policy Specifications and the resulting Net Premium must be equal to or greater than the Minimum Dollar Cost Averaging Premium as shown in the Policy Specifications. If the resulting Net Premium is less than the minimum, the Net Premium will be allocated to the Holding Account.

For 1035 Exchange Premiums, to allocate 100% of Net Premiums to the Dollar Cost Averaging Account, you must pay 1035 Exchange Premiums and the resulting Net Premium must be equal to or greater than the Minimum Dollar Cost Averaging Premium as shown in the Policy Specifications. If the resulting Net Premium is less than the minimum, the Net Premium will be allocated to the Holding Account.

On each Monthly Allocation Date, the Dollar Cost Averaging Account systematically transfers into the Holding Account, one twelfth (1/12) of Net Premiums allocated to the Dollar Cost Averaging Account over the last 12 month period, as well as any interest credited to the Dollar Cost Averaging Account since the last Monthly Allocation Date. We will credit interest daily to the Dollar Cost Averaging Account.

## Policy Values Provisions

This Policy provides Policy Values which may be available to you for partial surrender, loans or full surrender. They are also used to calculate your Death Benefit Proceeds. The following provisions describe how these values are calculated.

**Policy Value** The Policy Value on the Policy Date will be equal to all Net Premiums paid for this Policy as of the Policy Date, minus the Monthly Deduction for the first Policy Month. On any day other than a Monthly Anniversary Day, the Policy Value will be determined as described below, excluding any Monthly Deductions for the current Policy Month. On each Monthly Anniversary Day, the Policy Value will equal the total of (A) plus (B) plus (C) plus (D) plus (E), where:

**(A) the Fixed Account Value will equal**:

a. the Fixed Account Value as of the preceding Monthly Anniversary Day;
b. plus the amount of any transfer from the Holding Account or Collateral Account to the Fixed Account;
c. plus daily interest credited to the Fixed Account Value on each day **as explained in the "Fixed Account Interest Rate" provision**;
d. plus any Account Value Enhancement credited to the Fixed Account Value;
e. plus the amount of any Segment Maturity Value transferred from the Indexed Account for Segments that had a zero Segment Monthly Balance at any time during the Segment Duration;
f. less any portion of a Monthly Deduction deducted for the current Policy Month;
g. less any portion of a partial surrender deducted since the preceding Monthly Anniversary Day;
h. less any surrender charges due to any decrease in Specified Amount;
i. less any amount transferred to the Holding Account or Collateral Account.

**(B)** the **Holding Account Value** will equal:

a. the Holding Account Value as of the preceding Monthly Anniversary Day;
b. plus any Net Premium directed to the Holding Account;
c. plus any amount transferred from the Dollar Cost Averaging Account, any Segment Maturity Value, and any amount transferred from the Fixed Account to the Holding Account;
d. plus daily interest credited to the Holding Account Value on each day as explained in the "Holding Account Interest Rate" provision;
e. plus any Account Value Enhancement credited to the Holding Account Value;
f. less any amount transferred from the Holding Account to the Indexed Account(s), Fixed Account and/or Collateral Account;
g. less any portion of a Monthly Deduction deducted for the current Policy Month;
h. less any portion of a partial surrender deducted since the preceding Monthly Anniversary Day;
i. less any surrender charges due to any decrease in Specified Amount.

**(C)** the **Dollar Cost Averaging Account Value** will equal:

a. the Dollar Cost Averaging Account Value as of the preceding Monthly Anniversary Day;
b. plus any Net Premium directed to the Dollar Cost Averaging Account;
c. plus daily interest credited to the existing balance on each day as explained in the "Dollar Cost Averaging Account Interest Rate" provision;
d. plus any Account Value Enhancement credited to the Dollar Cost Averaging Account Value;
e. less any amount transferred from the Dollar Cost Averaging Account to the Holding Account or Collateral Account;
f. less any portion of a Monthly Deduction deducted for the current Policy Month;
g. less any portion of a partial surrender deducted since the preceding Monthly Anniversary Day;
**h.** less any surrender charges due to any decrease in Specified Amount.

**(D) the Indexed Account Value will equal the sum o**f the value of all open Segments. The value of a Segment will equal:

a. the value of the Segment as of the preceding Monthly Anniversary Day if it was open as of that date – otherwise, the value as of the Segment Date;
b. less any portion of the Monthly Deduction deducted for the current Policy Month;
c. less the amount of any transfer from the Segment to the Collateral Account;
d. plus any interest credited to the reduction in value of the Segment, due to a transfer from the Segment to the Collateral Account for a Fixed Loan or Participating Loan to Fixed Loan conversion, at a prorated portion of the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment;
e. less any portion of a partial surrender deducted since the preceding Monthly Anniversary Day;
f. plus any interest credited to the reduction in value of the Segment, due to a partial surrender deducted from the Segment, at a prorated portion of the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment;
g. less any surrender charges due to any decrease in Specified Amount.

**(E)** the **Collateral Account Value** – When a Fixed Loan is taken, the value of the Collateral Account is as described in the "Fixed Loan" provision. The value of the Collateral Account will equal:

a. the Collateral Account Value as of the preceding Monthly Anniversary Day;
b. plus any Net Premium directed to the Collateral Account due to the Collateral Account Value being less than the Fixed Loan principal;
c. plus any amount transferred from the Fixed Account, Holding Account, Dollar Cost Averaging Account, and Indexed Account(s) to the Collateral Account due to Loan Capitalization or a new Fixed Loan;
d. plus daily interest credited to the Collateral Account Value on each day as explained in the "Collateral Account Credited Interest Rate" provision;
e. less any portion of the Monthly Deduction deducted for the current Policy Month;
f. less any amount transferred from the Collateral Account to the Fixed Account due to loan repayment;
g. less any surrender charges due to any decrease in Specified Amount;
h. less any amount transferred from the Collateral Account to the Fixed Account due to Collateral Account interest crediting.

**Impact of Premium Payments and Loan Repayments on the Collateral Account Value and Fixed Loan Principal**
If the Collateral Account Value is less than the Fixed Loan principal, the Net Premium paid will be credited to the Collateral Account, until the Collateral Account Value is equal to the Fixed Loan principal and any excess will be credited to the Holding Account and/or Dollar Cost Averaging Account, according to your Premium Allocation instructions. If the Collateral Account Value is greater than or equal to the Fixed Loan principal, the Net Premium will be credited to the Holding Account and/or Dollar Cost Averaging Account, according to your Premium Allocation instructions.

Loan repayments will first be credited to the Fixed Loan principal, then loan interest. If the Collateral Account Value is greater than the Fixed Loan principal immediately following repayment, an amount equal to the Collateral Account Value less the Fixed Loan principal immediately following repayment will be transferred from the Collateral Account to the Fixed Account.

**Net Premium** Each Net Premium will be determined by deducting a Premium Load, not to exceed the Premium Load as described in the Policy Specifications, from each premium paid.

**Fixed Account Interest Rate** The interest rate used in the calculation of the Fixed Account will never be less than the Guaranteed Minimum Fixed Account Interest Rate as shown in the Policy Specifications. Interest in excess of the guaranteed rate may be applied. Such interest is referred to in this Policy as excess interest and is not guaranteed. Interest will begin to accumulate as of the date any value is transferred to the Fixed Account from the Holding Account.

**Holding Account Interest Rate** The interest rate used in the calculation of the Holding Account will never be less than the Guaranteed Minimum Holding Account Interest Rate as shown in the Policy Specifications. Interest in excess of the guaranteed rate may be applied. Such interest is referred to in this Policy as excess interest and is not guaranteed. Interest will begin to accumulate as of the date the Net Premium or any value is directed to the Holding Account.

**Dollar Cost Averaging Account Interest Rate** The interest rate used in the calculation of the Dollar Cost Averaging Account will never be less than the Guaranteed Minimum Dollar Cost Averaging Account Interest Rate as shown in the Policy Specifications. Interest in excess of the guaranteed rate may be applied. Such interest is referred to in the Policy as excess interest and is not guaranteed. Interest will begin to accumulate as of the date the Net Premium or any value is directed to the Dollar Cost Averaging Account.

**Collateral Account Credited Interest Rate** The interest rate used in the calculation of the Collateral Account is shown in the Policy Specifications. The interest will be credited to the Collateral Account on each applicable Monthly Anniversary Day. The Collateral Account interest will be credited to the Collateral Account until the Collateral Account Value is equal to the Fixed Loan principal and any excess will be credited to the Fixed Account.

**Account Value Enhancement** Beginning with the Policy Year shown in the Policy Specifications and on each Monthly Anniversary Day thereafter, we will credit an Account Value Enhancement to the Fixed Account Value, Holding Account Value, and Dollar Cost Averaging Account Value. The Account Value Enhancement for a Policy Month for each respective account will be no less than:

a. the Account Value Enhancement Rate as described in the "Account Value Enhancement Rate" provision below;
b. multiplied by the respective value of the Fixed Account, Holding Account, and Dollar Cost Averaging Account.

**Account Value Enhancement Rate** The monthly Account Value Enhancement Rate is determined by us. The Account Value Enhancement Rate will be no less than the monthly Guaranteed Minimum Account Value Enhancement Rate Credited to Fixed Account, Holding Account, and Dollar Cost Averaging Account shown in the Policy Specifications. We may use rates higher than the guaranteed minimum rates.

**Monthly Deduction** Each Policy Month, beginning with the Policy Date and on each Monthly Anniversary Day thereafter, we will subtract the Monthly Deduction from the Policy Value.

The Monthly Deduction for a Policy Month equals:

a. the Policy Value Charge as described in the "Policy Value Charge" provision;
b. plus the Monthly Administrative Fee not to exceed the Guaranteed Maximum Monthly Administrative Fee as described in the Table of Expense Charges and Fees in the Policy Specifications;
c. plus the Cost of Insurance as described in the "Cost of Insurance" provision;
d. plus the monthly cost of any additional Riders and/or benefits.

Monthly Deductions will be withdrawn from the Fixed Account first (see "Withdrawals from Indexed Account(s)" provision). If insufficient value exists in the Fixed Account to cover the cost of the Monthly Deduction, value will be deducted from the Holding Account. If insufficient value exists in the Holding Account, funds will be deducted from the Dollar Cost Averaging Account, if any. If insufficient value exists in the Dollar Cost Averaging Account, funds will be deducted from the most recently opened Segment in the Indexed Account(s) and will continue in successive order on a last in – first out basis until the cost of the Monthly Deduction has been satisfied. If multiple Segments were opened on the same Allocation Date, a prorated portion will be taken from each Segment. If insufficient value exists in the Indexed Account(s), value will then be deducted from the Collateral Account, if any.

**Policy Value Charge** This Policy's monthly Policy Value Charge will be equal to (1) multiplied by (2), where:

(1) is the Policy Value on each Monthly Anniversary Day; and
(2) is the Policy Value Charge not to exceed the applicable Guaranteed Maximum Policy Value Charge shown in the Table of Expense Charges and Fees in the Policy Specifications.

**Cost of Insurance** This Policy's monthly Cost of Insurance will be equal to (1) multiplied by the result of (2) minus (3), where:

(1) is the Cost of Insurance Rate as described in the "Cost of Insurance Rates" provision below;
(2) is the death benefit for the month before reduction for any Debt, discounted to the beginning of the month at the Guaranteed Minimum Fixed Account Interest Rate shown in the Policy Specifications, divided by 1,000; and
(3) is the Policy Value at the beginning of the month after subtracting all parts of the Monthly Deduction other than the Cost of Insurance and the Cost of Insurance of any Disability Waiver of Monthly Deductions Benefit Rider, if attached to this Policy, divided by 1,000.

For the purpose of allocating the Cost of Insurance between different parts of the Specified Amount, the Policy Value will be considered as part of the Initial Specified Amount. If such value exceeds the Initial Specified Amount, any excess will be considered part of the earliest addition to the Specified Amount. This allocation will continue in order of all additions to the Specified Amount until all value is allocated.

**Cost of Insurance Rates** The monthly Cost of Insurance Rates are determined by us by Class and Redetermination Class. The Cost of Insurance Rates will not exceed the amounts described in the Policy Specifications. We may use rates lower than these guaranteed maximum rates.

**Basis of Values** Minimum Policy Values are based on the guaranteed minimum and maximum rates/amounts shown in the Policy Specifications. The values of this Policy are at least equal to the minimum required by law. If required, a detailed statement of the method used to determine Policy Values and reserves has been filed with the state in which this Policy is delivered.

**Changes to Non-Guaranteed Elements (NGEs)** Subject to the guaranteed maximums and guaranteed minimums shown in this Policy, we may change (also known as redetermine) the NGEs that apply to your Policy. We will not make any changes to these NGEs in order to distribute past gains or recoup past losses. We have no obligation to adjust the NGEs although in our discretion we may choose to do so.

If we make a change to the Policy Value Charge, Cost of Insurance Rate, Monthly Administrative Fee, or Premium Load, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more future anticipated or emerging experience factors which may include, but are not limited to: mortality, interest rates, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

If we make a change to the interest rate used to credit the Fixed Account, interest rate used to credit the Holding Account, interest rate used to credit the Dollar Cost Averaging Account or Account Value Enhancement Rate, we will use Redetermination Classes to make those changes. Such changes can be made in consideration of one or more items which may include, but are not limited to: mortality, investment earnings, general market conditions, persistency, expenses (including reinsurance costs and taxes), policy funding, net amount at risk, loan utilization, capital requirements, and reserve requirements. Any change will apply consistently to all policies of the same Redetermination Class.

## Surrender Provisions

**Surrender** Upon your Request, you may surrender this Policy for its Cash Surrender Value while this Policy is In Force and the Insured is living. A surrender Request received by us within 31 days after a Policy Anniversary will be treated as a surrender on the Policy Anniversary, otherwise the surrender Request will be effective on the date we approve your Request. All coverage under this Policy will terminate upon surrender for its Cash Surrender Value. The payment of a full surrender prior to the Segment Maturity Date will result in the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment being applied on a prorated basis to an open Segment on the date of surrender.

The Cash Surrender Value will be paid in a lump sum unless you choose a settlement option we make available. Any deferment of payments will be subject to the "Deferment of Payments" provision.

**Surrender Charges** If you submit a Request for either a full surrender of this Policy or a decrease in Specified Amount, a charge will be assessed using the Table of Surrender Charges shown in the Policy Specifications, subject to the conditions described in the provisions below.

A new schedule of surrender charges will apply to each increase in Specified Amount. For purposes of calculating charges for full surrenders of, or decreases in, such increased Specified Amounts, the amount of the increase will be considered a new Initial Specified Amount.

**Surrender Charge for Full Surrender** Upon full surrender of this Policy, the surrender charge equals:

a. the entire amount shown in the Table of Surrender Charges in the Policy Specifications;
b. multiplied by one minus the percentage of Initial Specified Amount for which a surrender charge was previously assessed, if any.

In no event will the charge assessed upon a full surrender exceed the current Policy Value less Debt.

**Index Growth Cap Trigger for Waiver of Surrender Charges** If at any time, we declare the Index Growth Cap of an Indexed Account (with an Index Growth Cap Trigger for Waiver of Surrender Charges as shown in the Policy Specifications) equal to or less than the Index Growth Cap Trigger for Waiver of Surrender Charges as shown in the Policy Specifications, surrender charges will be waived upon full surrender of this Policy in all Policy Years following our declaration. We will notify you when this provision waives surrender charges upon full surrender of this Policy. This Policy will always offer an Indexed Account with an Index Growth Cap Trigger for Waiver of Surrender Charges.

**Charge for Decrease in Specified Amount** For decreases in Specified Amount, excluding full surrender of this Policy, the surrender charge, if any, will be calculated as (1) divided by (2), then multiplied by (3), where:

(1) is the amount of the decrease;
(2) is the Initial Specified Amount; and
(3) is the then applicable surrender charge shown in the Policy Specifications.

The amount of any surrender charge for a decrease in Specified Amount will be deducted from the Policy Value. We may limit your Requests for decreases in Specified Amount to the extent there is insufficient Cash Surrender Value to cover the necessary charges.

**Partial Surrender (Withdrawal)** Upon your Request, you may make a partial surrender from this Policy at any time while this Policy is In Force. The amount of the partial surrender must be equal to or greater than the Partial Surrender Minimum Amount shown in the Policy Specifications, not to exceed the Partial Surrender Maximum Amount shown in the Policy Specifications. Any deferment of payment of a partial surrender will be subject to the "Deferment of Payments" provision.

The Specified Amount remaining after the partial surrender must be equal to or greater than the Minimum Specified Amount shown in the Policy Specifications. The amount of the partial surrender will be withdrawn from the Policy Value as explained below.

For the purposes of satisfying the requirements to meet the No-Lapse Minimum Monthly Premium Test, the term "partial surrender" will include the amount of any partial surrender and partial surrender charge.

If you submit a Request for a partial surrender that results in a reduction in the value of an open Segment, the amount of interest that will be applied to the reduction in value of the Segment will be a prorated portion of the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Effect of Partial Surrenders on Policy Value and Specified Amount** When a partial surrender is made:

1. The Policy Value will be reduced by the amount of the partial surrender, plus any Partial Surrender Fee shown in the Policy Specifications, plus any applicable surrender charge for a decrease in Specified Amount (as explained in the "Charge for Decrease in Specified Amount" provision above). Partial surrenders will be withdrawn from the Fixed Account first. If insufficient value exists in the Fixed Account to cover the partial surrender, value will be withdrawn from the Holding Account. If insufficient value exists in the Holding Account, value will be withdrawn from the Dollar Cost Averaging Account, if any. If insufficient value exists in the Dollar Cost Averaging Account, value will be withdrawn from the most recently opened Segment and will continue in successive order on a last in – first out basis. If multiple Segments were opened on the same Allocation Date, a prorated portion will be taken from each Segment; and

2. The Death Benefit Proceeds will be reduced by an amount at least equal to the reduction in Policy Value. We will reduce the Specified Amount so that the reduction in Death Benefit Proceeds is equal to the reduction in Policy Value, which may then include a partial surrender charge, as explained in the "Charge for Decrease in Specified Amount" provision above. A partial surrender will not be allowed if it would reduce the Specified Amount below the Minimum Specified Amount shown in the Policy Specifications. A reduction in Specified Amount will be treated the same as a decrease in Specified Amount as explained in the "Decreases in Specified Amount" provision. If Death Benefit Option II is in effect, the Specified Amount will not be reduced, only the Policy Value will be reduced as noted in 1. above. If Death Benefit Option III is in effect, the Death Benefit Option III Limit and Accumulated Premium will be reduced by the amount equal to the reduction in Policy Value. If the total of the partial surrenders exceeds the Accumulated Premium, the Specified Amount will be reduced by the excess amount.

## Loan Provisions

**Loans** If this Policy has Cash Surrender Value available, we will grant a loan against the Policy provided:

a. a loan agreement is properly executed; and
b. you make an assignment of this Policy to us.

The Minimum Loan Amount is shown in the Policy Specifications.

**Amount Available** The loan value at any time is equal to:

a. the then current Policy Value;
b. minus any surrender charge on the date of determination;
c. minus any existing loan;
d. minus accrued interest on any existing loan; and
e. minus interest on the total outstanding loan to the end of the Policy Year.

There are two options available for a loan; either a Participating Loan or a Fixed Loan. When you submit a Request for a loan, you must select either a Participating Loan or a Fixed Loan option. If there is an existing loan on your Policy and you submit a Request an additional loan, the new loan will be the same option as the existing loan unless you submit a Request to switch options. If you choose to switch loan options, the existing and new loans will be the new option selected.

**Participating Loan** A loan where the Debt remains in the Fixed Account and Indexed Account(s) as allocated at the time the loan is taken, and not transferred to a Collateral Account.

**Fixed Loan** When a Fixed Loan is taken, an amount equal to the loan will be transferred from the Fixed Account and, if necessary, from the Holding Account, from the Dollar Cost Averaging Account, and from the Indexed Account(s), to the Collateral Account. Any amount transferred from the Indexed Account(s) will be from the most recently opened Segment(s) and will continue in successive order on a last in – first out basis. If multiple Segments were opened on the same Allocation Date, a prorated portion will be taken from each Segment. Any reduction in the value of a Segment will be credited with interest at a prorated portion of the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

If an amount is transferred out of the Indexed Account for a Fixed Loan and within a 12-month period from the date of that transaction, either a premium payment or loan repayment is made, we reserve the right to:

a. Allocate the Net Premium and/or loan repayment to the Fixed Account; and
b. Restrict transfers from the Fixed Account to the Holding Account for allocation to the Indexed Account(s).

**Participating Loan Interest Rate Charged** Interest charged on Participating Loans will be at an annual rate as shown in the Policy Specifications, payable in arrears. Interest charged on a loan accrues daily and is payable annually on each Policy Anniversary or as otherwise agreed to by you and us. If you do not pay the interest when it is due, we will add the amount of interest to the loan ("Loan Capitalization").

**Fixed Loan Interest Rate Charged** Interest charged on Fixed Loans will be at an annual rate as shown in the Policy Specifications, payable in arrears. Interest charged on a loan accrues daily and is payable annually on each Policy Anniversary or as otherwise agreed to by you and us. If you do not pay the interest when it is due, we will add the amount of interest to the Fixed Loan principal ("Loan Capitalization"). If available, up to an equal amount will be transferred from the Fixed Account; and, if necessary, from the Holding Account, from the Dollar Cost Averaging Account, and from the Indexed Account(s), in successive order, to the Collateral Account.

**Loan Repayments** Debt may be repaid at any time while this Policy is In Force. Any loan repayment must be equal to or greater than the lesser of (a) the Minimum Loan Repayment Amount shown in the Policy Specifications; or (b) the amount of the outstanding Debt.

Every payment to us on this Policy will be considered a premium payment unless clearly marked for loan repayment or for payment of loan interest. Loan repayments are not subject to the Premium Load as shown in the Policy Specifications.

**Debt** A loan against this Policy, unless repaid, will have an effect on the Cash Surrender Value. A loan reduces the Cash Surrender Value while repayment of a loan increases the Cash Surrender Value. Any Debt at time of settlement will reduce the Death Benefit Proceeds payable under this Policy.

If at any time the total Debt against this Policy, including interest accrued but not due, equals or exceeds the current Policy Value less any applicable surrender charge (Cash Value), this Policy will enter the grace period as described in the "Grace Period" provision.

**Converting from One Loan Option to the Other** A conversion from one loan option to the other can be done only once in a twelve-month period and the entire loan must be converted. When a loan is converted, interest will be charged at the interest rate in effect for the current loan option until the date of the conversion. From the date of conversion, interest is charged at the interest rate in effect under the new loan option.

**Participating Loan to Fixed Loan Conversion** On the day the Participating Loan is converted to a Fixed Loan, an amount equal to the loan principal will be transferred from the Fixed Account, and if necessary from the Holding Account, from the Dollar Cost Averaging Account, and from the Indexed Account(s), to the Collateral Account. Any amount transferred from the Indexed Account(s) will be from the most recently opened Segment and will continue in successive order on a last in – first out basis. If multiple Segments were opened on the same Allocation Date, a prorated portion will be taken from each Segment. Any reduction in the value of a Segment will be credited with interest at a prorated portion of the Guaranteed Minimum Annual Interest Rate Credited to a Maturing Segment.

**Fixed Loan to Participating Loan Conversion** Unless otherwise agreed to by you and us, when a Fixed Loan is converted to a Participating Loan, the Collateral Account Value, including any Collateral Account interest accrued until the day of the conversion, will be transferred to the Holding Account.

## General Provisions

**Payment of Proceeds** "Proceeds" mean the amount payable:

a. Upon the surrender of this Policy; or
b. Upon the Insured's death.

Upon the Insured's death, while this Policy is still In Force, the Proceeds payable will be the Death Benefit Proceeds. Such Death Benefit Proceeds are payable subject to our receipt of Due Proof of Death of the Insured. If the Insured's death occurs within the grace period, we will deduct any overdue Monthly Deductions from the Death Benefit Proceeds.

If this Policy is surrendered before the Insured's Death, the Proceeds payable upon full surrender will be the Cash Surrender Value.

The Proceeds payable under this Policy are subject to the adjustments described in the following provisions:

a. "Misstatement of Age or Sex";
b. "Incontestability";
c. "Suicide";
d. "Effect of Partial Surrenders on Policy Value and Specified Amount";
e. "Grace Period";
f. "Debt"; and
g. "Premium Refund" at the death of the Insured.

We may require return of this Policy when Death Benefit Proceeds are paid. Proceeds will be paid in a lump sum unless you choose a settlement option we make available.

**Deferment of Payments** We may defer making a partial surrender, full surrender or loan up to 6 months after we receive your Request, however a partial surrender or loan for payment of premiums to us will not be deferred.

**Annual Report** We will provide you with a report (Statement of Account) at least once a year without charge showing the activity of this Policy for the past Policy Year. This report will show:

a. the current Death Benefit;
b. the current Policy Values;
c. premiums paid, Index Credits, and interest credited since the last report;
d. any Premium Load, Administrative Fees, Monthly Deductions, Cost of Insurance, and partial surrenders deducted since the last report; and
e. outstanding Debt.

This report will also include any other information required under the laws and regulations of the state in which this Policy is delivered.

**Illustration of Benefits and Values** Upon your Request, we will provide an illustration of future death benefits and Policy Values once a year without charge. Additional illustrations are available at any time upon your Request. If you submit a Request for more than one illustration in a year, we reserve the right to charge a reasonable fee for each additional illustration.

**Modified Endowment** Only with your Election, provided at the time of application or a later date, will this Policy be allowed to become a modified endowment contract under the Internal Revenue Code. Otherwise, if at any time the premiums paid under this Policy exceed the limit for avoiding modified endowment contract status, the excess premium will be held in a separate deposit fund, credited with interest, and will be used to pay future premium payments. The funds held in the separate deposit fund are not considered part of your Policy Value, any interest may be taxable and you should consult a tax advisor if you have questions regarding this. If you instead elect to have the excess premium refunded to you, we will refund the excess premium to you with interest within sixty days after the end of the Policy Year in which the premium was received. The interest rate used on any refund or credited to the separate deposit fund created by this provision will be a rate of interest that we declare from time to time. Any interest may be taxable to you.

**Compliance with the Internal Revenue Code** This Policy is intended to qualify as life insurance under the Internal Revenue Code. The Death Benefit Proceeds provided by this Policy are intended to qualify for the tax treatment accorded to life insurance under Federal law. If at any time the premium paid under this Policy exceeds the amount allowable for such qualification, we will refund the premium to you with interest within 60 days after the end of the Policy Year in which the premium was received. The interest rate used on any refund will be the excess premium's pro rata rate of return on the contract until the date we send Notice to you that the excess premium and the earnings on such excess premium have been removed from this Policy. Any interest may be taxable to you.

We reserve the right to increase the death benefit (which may result in larger charges under a Policy) or to take any other action deemed necessary to maintain this Policy's compliance with the federal tax definition of life insurance. We also reserve the right to refuse to make any change in the Specified Amount or any other change if such change would cause this Policy to fail to qualify as life insurance under the Internal Revenue Code.

## Effect of Policy on Rider Provisions

**Effect of Policy on Riders** If any of the following Riders or Endorsements are attached to this Policy, the Riders and Endorsements will be amended as follows:

Disability Waiver of Monthly Deduction Benefit Rider: The "Benefit" provision is revised as follows: The Death Benefit Option will not change on the date total disability begins.

Accelerated Benefits Rider for Chronic Illness and Terminal Illness: References to "Rate Class" will mean Premium Class as defined in this Policy. References to "Death Benefit" will mean Death Benefit Proceeds as defined in this Policy. References to "10 Year No-Lapse Minimum Premium" provision will mean "No-Lapse Minimum Premium" provision. References to "Overloan Protection Endorsement" will mean Overloan Protection Rider.

Accelerated Benefits Rider with a "Right to Exercise Rider Benefit" provision: The Cash Surrender Values required to satisfy the "Right to Exercise Rider Benefit" provision of the Rider will be calculated using the Policy Value on the date of your Request and on current interest rates and charges applied to the Fixed Account Value.

Change of Insured Rider: References to "Page 3" and "Page 4" will mean Policy Specifications as defined in this Policy. References to "Rate Class" will mean Premium Class as defined in this Policy.

## Effect of Riders on Policy Provisions

**Effect of Riders on Policy Provisions** If any Riders are attached to and made part of this Policy, policy provisions and definitions may be impacted, including those concerning premiums and Policy Values. READ YOUR POLICY AND RIDERS CAREFULLY.

## Settlement Options

**Payment** When the Insured dies while this Policy is In Force, Death Benefit Proceeds may be paid in a lump sum or left with us for payment under a settlement option that we make available.

You may make, change or revoke an Election at any time prior to the Insured's death. Following the Insured's death, a Beneficiary may elect an option if you have not elected one or if Death Benefit Proceeds are payable in one sum. A Beneficiary will always have the option to elect to receive a lump sum payment, but otherwise may make a change in payment under a settlement option you elect only if you provided for it in your Election.

A change of Beneficiary automatically cancels a previous Election of a settlement option.

If this Policy is assigned, the assignee's portion of Death Benefit Proceeds will be paid in one sum. Any balance of Death Benefit Proceeds may be applied under a settlement option.

The amount applied under an option for the benefit of any Beneficiary must be at least $2,500. The amount of each payment under an option must be at least $25.00.

If Death Benefit Proceeds are payable to an executor, administrator, trustee, corporation, partnership or association, payment will be in one sum unless we agree to payment under a settlement option.

**Claims of Creditors** The Death Benefit Proceeds and any income payments under this Policy will be exempt from the claims of creditors to the extent permitted by law.

**(This Page Left Blank Intentionally)**

# The Lincoln National Life Insurance Company

**Service Office:** 100 North Greene Street, P.O. Box 21008, Greensboro, NC 27420-1008

## Accelerated Benefits for Terminal Illness Rider

**Benefits paid under this rider may be taxable. If so, you or your beneficiary may incur a tax obligation. As with all tax matters, you should consult your personal tax advisor to assess the impact of this benefit.**

This Rider is attached to and made a part of the Policy to which it is attached (the "Policy"). The effective date of this rider is the Policy Date unless a later date is shown on the policy specifications page. In this Rider, "we", "our", or "us" means The Lincoln National Life Insurance Company; "you" and "your" means the Owner of the Policy; and "Insured" means the person named in the Policy Specifications whose life is insured under the Policy.

### Benefit

We will pay you a portion of the death benefit of the policy upon occurrence of the Qualifying Event as shown below while the policy and this rider are in force.

The portion of the death benefit available under this rider for the Qualifying Event will be the applicable benefit percentage for that event applied to the death benefit of the base policy only, not including the Rider Specified Amount of any in force Additional Specified Amount Rider attached to the policy.

In no event, however, will the rider benefit paid be greater than $250,000 in total for the Qualifying Event.

An administrative charge, not to exceed $300, will be deducted from any benefit payable under this rider.

The maximum amount available on all policies with an Accelerated Benefits Rider in force with us is $250,000 per Insured.

### Qualifying Event

Terminal Illness is the required Qualifying Event for eligibility for the benefit offered by this rider. Terminal Illness means an illness or physical condition:

1. expected to result in the Insured's death within 12 months or less; and
2. for which there is no reasonable prospect for recovery.

### Benefit Percentages

The benefit percentage is 50% for the Qualifying Event.

### Qualifying Event Certification

Before any benefit can be paid under this rider, you must furnish evidence of a Terminal Illness. Such evidence must be in the form of a certification of the Insured's medical condition from a licensed physician. The certification must state that in the physician's opinion:

1. the Insured's life expectancy has been reduced to 12 months or less; and
2. there is no reasonable prospect for recovery.

### Right to Exercise Rider Benefit

Your right to exercise the options of and receive payments under this rider are conditioned on the following:

1. The policy must be in force other than under an extended term nonforfeiture option on the date your request for benefits is received in the Service Office;
2. Your request must be made in writing; and
3. The policy must not be assigned except as security for a policy loan.

Accelerated death benefits provided through the use of this rider are made available to you on a voluntary basis. The use of this rider is not meant to cause you to involuntarily access proceeds. Therefore, you are not eligible for benefits under this rider if:

1. You are required by law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or
2. You are required by a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

**Payment of Rider Benefit**
The conditions for payment of the rider benefit are as follows:

1. Any rider benefit paid will be first used to repay a portion of any outstanding indebtedness. The portion to be repaid will be determined by applying the applicable benefit percentage to the indebtedness as of the date the benefit is paid.
2. The remaining rider benefit will be paid to you in a lump sum. Payments other than as a lump sum may be made at your request in a manner mutually agreed upon.
3. If a benefit less than the maximum is paid, the balance of the maximum benefit can be applied for at a later date.
4. The maximum benefit at any time will be (a) minus (b) where:
    a. is the lesser of the death benefit of the policy at the time of the claim times the applicable benefit percentage, or $250,000; and
    b. is any rider benefit that has already been paid.

**Effect on Your Policy**
The accelerated benefit paid plus accrued interest will be treated as a lien against your policy. Access to the cash value of your policy through policy loans, partial surrenders or a full surrender will be limited. The amount available for such usage will be the amount of cash value in excess of an amount determined by applying the applicable benefit percentage to the cash value of your policy.

Following payment of the accelerated death benefit, a policy loan or partial surrender that would reduce the cash surrender value to an amount which is insufficient to cover the monthly deductions for the policy from the date of the loan or partial surrender to the end of the accelerated benefit continuation period will not be allowed.

Death proceeds as defined in the policy will be reduced by the amount of the accelerated benefit paid plus accrued interest.

If this policy contains an Interest Rate provision, interest credited on any value held as security for a lien under this rider may be at a different rate than that used for other value. Any benefits payable under other riders attached to your policy will not be affected by any benefit paid under this rider.

**Repayment**
You may repay all or part of the accelerated benefit at any time while this rider is in force. Each partial repayment must be at least $25 and clearly marked for repayment of the accelerated benefit.

**Interest**
We will charge interest on the amount of the accelerated benefit. The interest accrues daily at the interest rate described below. On the policy anniversary, the accrued interest will be added to the accelerated benefit and bear interest at the rate then in effect. Additional interest will not accrue if the accelerated benefit plus accrued interest equals the death benefit.

**Interest Rate**
The interest rate on any lien will be determined by us. The rate which applies to a policy year will be determined at least 30 days before the beginning of that policy year. The rate will not change during that year.

The interest rate on the portion of the lien which is equal to the policy value at the time you request the accelerated benefit less any indebtedness will be the policy loan interest rate.

The interest rate on the remaining portion of the lien will not exceed the maximum rate permitted by law for policy loans. This maximum rate is determined as follows:

The rate for a policy year will not be more than the higher of the following:

1. The published monthly average (defined below) for the calendar month ending 2 months before the date on which the rate is determined; or
2. The rate used to compute the cash surrender values under the policy for that year plus 1 percent.

The published monthly average referred to above is defined as:

1. Moody's Corporate Bond Yield Average--Monthly Average Corporates as published by Moody's Investors Service, Inc., or any successor thereto; or
2. In the event that Moody's Corporate Bond Yield Average--Monthly Average Corporates is no longer published, a substantially similar average, established by regulation, or other method, issued by the Insurance Department of the state or other jurisdiction where this policy is issued.

A change from the rate being used for a policy year to a new rate to be used for the next policy year will be made as follows:

1. The rate will be decreased to be equal to or less than the maximum rate if such maximum rate is at least ½% lower than the rate being used.
2. The rate may be increased to be equal to or less than the maximum rate if such maximum rate is at least ½% higher than the rate being used.

If there is a lien in effect, we will notify you and any assignee of record 30 days before each policy anniversary of any increase in the rate for the next policy year. If a new lien is requested, we will notify you and any assignee of the rate in effect when the lien is made.

**Notice of Claim**
We accept written notice of claim at any time. Notice given by or on behalf of the insured or the beneficiary, as applicable, to us at the service office address or to any of our authorized agents, with information sufficient to identify the insured, shall be deemed notice to us.

**Claim Forms**
Upon receipt of a notice of claim, we shall furnish to the claimant the claim form. If the form is not received within 15 days after giving notice, the claimant will be deemed to have complied with the requirements of this rider as to proof of loss upon submitting, within the time fixed in this rider for filing proof of loss, written proof covering the character and the extent of the loss.

**Proof of Loss**
The Insured shall provide written proof of occurrence or proof of loss no less than 90 days after the termination of the period for which we are liable, and, in the case of claim for any other occurrence or loss, that the Insured shall provide written proof of occurrence or proof of loss within 90 days after the date of the occurrence or loss. Failure to furnish proof within the time required shall not invalidate or reduce the claim if it was not reasonably possible to give proof within the time, provided proof is furnished as soon as reasonably possible and, except in the absence of legal capacity, no later than one year from the time proof is otherwise required.

**Entire Contract**
The entire contract consists of the policy, any riders, amendments or endorsements, application and supplemental application if attached. No agent has the authority to change the contract or to waive any of its provisions.

**Reinstatement**
The reinstatement of this rider will be on the same terms as reinstatement of the policy to which it is attached. Following reinstatement, the Insured and we will have the same rights under reinstatement as the Insured and we had under the rider immediately before the due date of the defaulted premium, subject to any provisions endorsed in the rider or endorsement or attached to the rider or endorsement in connection with the reinstatement.

**Incontestability**
We will not contest this rider after it has been in force during the lifetime of the Insured for two years from its Issue Date, and this rider may only be contested based on a statement made in the application for this rider, if the statement is attached to the contract and if the statement was material to the risk accepted or the hazard assumed by us.

**Physical Examinations**

We, at our own expense, have the right and opportunity to examine the person of the Insured when and as often as we may reasonably require during the pendency of a claim and to make an autopsy in case of death where it is not forbidden by law.

**Termination**

This rider will terminate:

1. Upon written request and return of the policy or endorsement;
2. On surrender or other termination of the policy; or
3. Upon continuation of this policy under an extended term nonforfeiture option.

President

# The Lincoln National Life Insurance Company

## Overloan Protection Rider

This rider (also referred to as an "endorsement") is made part of the Policy to which it is attached (the "Policy"). Except as provided below, this rider is subject to all the terms and conditions of the Policy. This rider becomes effective as of the Policy Date shown in the Policy Specifications.

**You should consult a tax advisor before requesting the exercise of this rider, as there may be tax consequences. In addition to other possible tax consequences, exercise of the rider could lead to some or all of the Debt being treated as a taxable distribution.**

**Summary of Rider Benefit**

This rider provides a benefit (the Overloan Protection Feature) that, if exercised, both protects the Policy from Lapse and provides a Minimum Death Benefit.

The effective date of the Overloan Protection Feature ("Election Effective Date") will be the date we receive written notification from you in good order that you wish to exercise the feature. This step will permanently and irrevocably alter your Policy.

Notwithstanding any provision to the contrary contained in the Policy, if this rider's Conditions are met as of the Election Effective Date, the Overloan Protection Feature can be exercised.

**Overloan Protection Feature**

When the Overloan Protection Feature is exercised, no further Monthly Deductions will be taken, the Policy will not Lapse due to insufficient value, and the Policy will automatically become paid-up life insurance in the amount described in this rider's "Minimum Death Benefit" provision. Once the Overloan Protection Feature is exercised, we will notify you of the changes to your Policy.

**Minimum Death Benefit** After the Election Effective Date, the amount of the Death Benefit will be determined as provided by the Policy but will be no less than the greater of the following amounts minus Debt (also referred to as Indebtedness) for the then current Policy Year:

1. Debt plus $10,000; or
2. An amount determined by us equal to the amount required to qualify the Policy as life insurance under the Internal Revenue Code.

**To improve your opportunity to meet the Conditions described below, you should carefully monitor the performance of your Policy. We recommend you do so annually by reviewing a projection of benefits and values (illustration). Please be aware that a projection of benefits and values does not guarantee that all the Conditions will be met at the time of exercise.**

**Conditions**

We will notify you In Writing the first time you meet all of the following conditions:

1. Any Insured identified in the Policy Specifications has reached the Minimum Attained Age shown in the Policy Specifications;
2. The Policy has been In Force for at least the Minimum Policy Years In Force shown in the Policy Specifications;
3. A level Death Benefit Option, if provided under the Policy, must be in effect;
4. Debt is larger than the Specified Amount;
5. Accumulation Value minus Debt or Policy Value minus Debt, as applicable, is sufficient to pay the Election Charge;
6. The ratio of Debt to the Accumulation Value or the Policy Value, as applicable, is between the Minimum Value Threshold percentage and the Maximum Value Threshold percentage as shown in the Policy Specifications;
7. The Death Benefit Qualification Test is the Guideline Premium Test;
8. The Policy must not be a Modified Endowment Contract; and
9. Both the guideline single premium and guideline level premium as defined in Internal Revenue Code Section 7702 must be greater than zero. These amounts are available upon request. This condition does not apply if the youngest Insured identified in the Policy Specifications has attained or would have attained at least age 100 or older, whether living or deceased.

**Be aware that any attempt you make to change your Policy to meet these Conditions will affect the guideline single premium and guideline level premium under your Policy. Consequently, it is possible that such changes may prevent you from satisfying condition 9.**

**Election Charge** There is no charge for adding this rider to the Policy. However, if you exercise the feature, a one-time Election Charge shown in the Policy Specifications, will be deducted from the Accumulation Value minus Debt or the Policy Value minus Debt, as applicable, as of the Election Effective Date. The Election Charge is based on a percentage of the Accumulation Value or the Policy Value as of the date the election is exercised. There is no Election Charge if the Overloan Protection Feature is never exercised. The Election Charge will not be waived by any Disability Waiver of Monthly Deduction Benefit Rider attached to the Policy.

**Impact to Policy after the Election Effective Date**

After the Election Effective Date, the following changes will be made to your Policy:

1. We will no longer allow premium payments, partial surrenders (withdrawals), or changes to Specified Amount or Death Benefit Option;
2. All riders, except the Supplemental Term Insurance Rider, if any, will be terminated;
3. Participating loan, if any, will be changed to a fixed loan;
4. No additional Monthly Deductions will be taken;
5. Any Variable Account Value, Indexed Account Value, Holding Account Value, or Dollar Cost Averaging Account Value will be transferred to the Fixed Account as of the Election Effective Date. For Policies with variable sub-accounts, no transfer charge will be assessed for such transfer, nor will it count against, or be subject to, any transfer limitations that may otherwise be in effect. No further transfers will be allowed and automatic rebalancing will end. For Policies with an Indexed Account, if the transfer date does not coincide with a Segment Anniversary, no interest will be credited to the Segment on the date of transfer; and
6. The Policy will automatically become paid-up insurance as noted in the "Minimum Death Benefit" provision.

**Loans** Loans, if eligible, and loan repayments can continue to be made at any time, and interest charged on the loan will continue to accrue.

**Nonforfeiture Values** This rider does not provide any cash value or loan value.

**Reinstatement** This rider will be reinstated if the Policy is reinstated.

**Termination** This rider and all rights provided under it will terminate automatically upon whichever of the following occurs first:

1. The date the Owner requests In Writing to terminate the rider prior to exercising the feature; or
2. Termination of the Policy.

**Effect of Additional Benefits on Rider Provisions** Your Policy may include additional benefits that were added by rider, endorsement, or amendment. The exercise of certain benefits of other riders may result in the termination of this rider. **Please read your Policy carefully.**

**The Lincoln National Life Insurance Company**

Ellen Cooper

President

## Amendment to Application for Life Insurance

**Please check appropriate underwriting company:**

☒ **The Lincoln National Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
☐ **Lincoln Life & Annuity Company of New York:** PO Box 21008, Greensboro, NC 27420-1008
☐ **First Penn-Pacific Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as the "Company")

Policy Number: IUL1062973

The undersigned hereby amends the application for insurance dated *(mm/dd/yyyy)*: 02 / 24 / 2023 ; or the telephonic or electronic application completed by interview on *(mm/dd/yyyy)*: ____/____/____ ; on the life(s) of

Ghasem / ____ / Mirzadeh / ____
Legal Name Proposed Insured: *(First)* *(Middle)* *(Last)* *(Suffix)*

____ / ____ / ____ / ____
Legal Name Proposed Insured B: *(First)* *(Middle)* *(Last)* *(Suffix)*

I/We authorize the Company to make the following alterations in or additions to the application and to issue a Policy as may be necessary to conform to said application as modified herein. All statements and answers in this amendment are correctly recorded, are representations and not warranties, are full, complete and true to the best of my knowledge and belief. I/We hereby accept the Policy as issued.

Question 5: My place of birth is FC, IRAN;
Question 21: This policy is issued with Level Face Death Benefit Option;
Question 33: Business Income;
Question 34: No, the premiums for this policy are not being paid, advanced, financed or otherwise funded by another person or entity who is not the Proposed Insured, the Owner, or the Proposed Insured's spouse, domestic partner or employer;

Medical Supplement (Part II Application), Insured A dated November 10, 2022;
Question 3b: Yes (Anxiety, Depression) ;
Question 3d: Yes (Pre-Diabetes) ;
Question 14: Last saw Dr. Alan Nili (Primary Care Physician) in 9/2022 for a physical exam.
Question 16 (details to Question 3b): History of anxiety and depression with no psychiatric medication used since March of 2021.
Question 16 (details to Question 3d): Pre-diabetes currently managed with diet only.

Signed in: CA (State) 04/04/2023 Date (mm/dd/yyyy)

X G Mirzadeh [signature]
Signature of Proposed Insured
(Parent or Guardian if under 16 years of age)

Ghasem Mirzadeh
Printed Name of Proposed Insured

Signature of Proposed Insured B
(Parent or Guardian if under 16 years of age)

Printed Name of Proposed Insured B

X [signature] Pres
Signature of Applicant/Owner/Trustee
(If other than Proposed Insured(s))
(Provide Title if owned by a Trust or a Corporation)

Shahin Sharifi President
Printed Name of Applicant/Owner/Trustee

[signature]
Signature of Licensed Agent, Broker or Registered Representative

Ahmad Hashemian
Printed Name of Licensed Agent, Broker or Registered Representative

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Lincoln Financial Group

# Good Health Statement and Insurability Supplement

**Please check appropriate underwriting company:**

☒ **The Lincoln National Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
☐ **Lincoln Life & Annuity Company of New York:** PO Box 21008, Greensboro, NC 27420-1008
☐ **First Penn-Pacific Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as the "Company")

Proposed Insured Name: Ghasem *(First)* / ____ *(Middle)* / Mirzadeh *(Last)* / ____ *(Suffix)*

Date of Birth *(mm/dd/yyyy)*: [redacted]

**If any question below is answered "Yes," you must provide details in Number 4, and no representative of the Company is authorized to deliver the Policy or collect any premium without prior approval from the underwriter at the Company.**

| **1. Since the date of your signed application and/or completed telephonic or electronic application that is made a part of the Policy:** | **Proposed Insured** |
|---|---|
| a. Has an application for life, long-term care, health or disability insurance been taken on your life with any other insurance company or has any life, long-term care, health or disability insurance on your life been reinstated, declined, postponed or modified? | ☐ Y ☒ N |
| b. Have you participated in any previously un-admitted activities including; aviation; underwater diving; mountain climbing; aerial sports; auto, motorcycle or boat racing; heli-skiing; rodeo sports; equine sports; BASE jumping or wingsuit flying; canyoning; highlining/tricklining; Parkour or Rooftopping; Speedflying; boxing, kickboxing, Muay Thai or MMA/Cage Fighting? | ☐ Y ☒ N |
| c. Have you been convicted of a motor vehicle violation or a criminal offense? | ☐ Y ☒ N |
| **2. Within the past five years, have you** received any treatment for any illness or injury, been examined by or consulted with a licensed medical professional, been advised by a licensed medical professional to seek treatment, or made any appointment for a visit with a licensed medical professional for any reason **not previously stated** in the application? | ☐ Y ☒ N |
| **3. Since the date of your most recent medical evidence submitted to the Company,** have you had any change that would cause any answers and statements in the Application for Individual Life Insurance – Part I, Medical Supplement (Part II) and any additional supplements to be different from those given when you completed those forms? | ☐ Y ☒ N |
| **4.** Question # Details *(If more space is needed, use the Continuation of Details Supplement.)* | |

**The Undersigned declares that:**

I agree that this Good Health Statement and Insurability Supplement will be considered an amendment and/or supplement to my application. I have read, or have had read to me, the completed Good Health Statement and Insurability Supplement before signing below. All statements and answers in this Good Health Statement and Insurability Supplement are correctly recorded, and are full, complete and true to the best of my knowledge and belief. **Caution: If your answers on this application are misstated or untrue, the Company may have the right to deny benefits or rescind coverage under the Policy and any riders attached to it.**

Signed in: CA (State) 04/04/2023 Date (mm/dd/yyyy)

X G. Mirzadeh
**Signature of Proposed Insured**
(Parent or Guardian if under 16 years of age)

X [signature]
**Signature of Licensed Agent, Broker or Registered Representative**

Ahmad Hashemian
**Printed Name of Licensed Agent, Broker or Registered Representative**

Lincoln Financial Group

# Application for Individual Life Insurance–Part I

**The Lincoln National Life Insurance Company**
PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as the "Company")

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

## Proposed Insured

1. Ghasem / ______ / Mirzadeh / ______
Legal Name: *(First)* *(Middle)* *(Last)* *(Suffix)*
2. Sex: ☒ Male ☐ Female
3. Date of Birth *(mm/dd/yyyy)*: [redacted] *(If age 70 or over, complete the Defined Age Supplement.)*
4. Social Security Number (SSN): [redacted]
5. Place of Birth *(State/Country)*: ______ / Iran
6. Citizenship *(check one)*: ☒ I am a citizen of the United States.
☐ I am a valid green card holder and my country of citizenship is ______ *(Attach a copy of your valid green card.)*
☐ Neither, and my country of citizenship is ______ *(Attach a copy of your passport.)*
7. Driver's License Number *(provide even if suspended/revoked)*: [redacted] State: CA
If no current license, check here ☐ and advise reason: ______
8. Physical Home Address *(Street)*: 23 Mandrake Apt. or Suite: ______
*(City/State/ZIP)*: Irvine / CA / 92612
**Check here** ☒ if Mailing Address is same as Physical Home Address.
9. Mailing Address *(If different)*: ______ Apt. or Suite: ______
*(City/State/ZIP)*: ______ / ______ / ______
10. Primary Phone: 949-466-4066 *(Check one)* ☒ Cell ☐ Landline
11. Secondary Phone *(If applicable)*: ____-____-____ *(Check one)* ☐ Cell ☐ Landline
12. Email: ______
13. Employer: Sina Corporation 14. Occupation: CFO
15. Business Address *(Street)*: 4229 Birch St. Suite: 100
*(City/State/ZIP)*: Newport Beach / CA / 92660
16. Individual Annual Earned Income: $ 50,000
17. a. Total Assets *(Retirement Accounts, Properties, etc.)*: $ 9,516,500
b. Total Liabilities *(Mortgages, Loans/Debts, etc.)*: $ 500,000
18. Do you have any other sources of recurring income? ☒ Y ☐ N
If "Yes," a. Source(s) of Income: Business Dividends *(If the source is "disability," provide details in Number 53.)*
b. Annual amount(s) received: $ 500,000

## Policy Information

19. Product Applied For *(if Term, include duration)*: Wealth Accumulate 2 IUL

20. Amount of Insurance/Specified Amount: $ 5,000,000

21. Death Benefit Option: *(Complete for Universal Life and Variable Universal Life Product only–not required for Term)*
☐ Level ☒ Increase by Cash Value ☐ Increase by Premium ☐ Increase by Premium Less Policy Factor

22. Guaranteed Death Benefit Duration Options: *(Select only one option where applicable, options vary by product)*
☐ Lifetime ☐ Lifetime with 50% drop at age 90; **OR** Custom to: *(choose one)* ☐ age ______ ☐ contract year ______

23. Death Benefit Qualification Test (DBQT) – For IRS purposes, premiums will be tested using the Guideline Premium Test unless
☐ Cash Value Accumulation Test is checked *(not available on all products or with all riders)*. **The DBQT cannot be changed after issue unless the terms of the Policy require a change.**

24. Additional Benefits and Riders: *(If applicable, options vary by product)*
☒ Accelerated Benefits Rider without Chronic Illness (ABR)
☐ Accelerated Benefits Rider with Chronic Illness ______________ *(Complete applicable supplement)*
☐ Children's Term Rider (*Complete Children's Term Rider Supplement)*
☐ Other Insured Term Rider $ ______________ *(Complete Proposed Insured B Supplement)*
☐ Bonus Rider
☐ Disability Waiver Rider
☐ Enhanced Surrender Value Rider ______________
☐ Other Benefits and Riders not listed above *(Provide details: coverage amount, percentages, etc.; and if applicable complete supplement):*

______________________________________________

## Owner Information *(If left blank, Proposed Insured(s) will be the Owner.)* Select Owner Type:

25. a. ☐ Individual Owner: ______________ / ____ / ______________ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

☒ Trust/Entity *(legal name)*: Sina Corporation

Trustee/Officer: Shahin / ____ / Sharifi / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

Check here ☐ if address is same as Proposed Insured's, otherwise complete 25b.

b. Address *(Street)*: 4229 Birch St. Apt. or Suite: 100

*(City/State/ZIP)*: Newport Beach / CA / 92660

c. Date of Birth/Trust Date *(mm/dd/yyyy)*: ____/____/______ d. SSN/TIN: 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

e. Primary Phone: 949 - 724 - 4009 *(Check one)* ☐ Cell ☒ Landline

f. Secondary Phone *(If applicable)*: ______ - ______ - ______ *(Check one)* ☐ Cell ☐ Landline

g. Country of citizenship: USA h. Relationship to Proposed Insured(s): Business

i. Owner's Email: ______________________

26. Is this Policy being purchased as part of an employer-owned life insurance program where the employer is the direct or indirect beneficiary of the Policy? ☒ Y ☐ N

**Beneficiary Information** *(Unless otherwise stated in Number 30 "Special Instructions," if multiple beneficiaries are named in a class (Primary, Contingent), the proceeds are to be paid equally to the survivor or survivors, in the class, if any.)*

Select Primary (P) or Contingent (C) and Type for each line completed. **Check here ☒ if Primary Beneficiary same as Owner.**

27. a. ☐ P ☐ C ☐ Individual: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

☐ Trust/Entity *(legal name)*: ______

Trustee/Officer: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

Check here ☐ if address is same as Proposed Insured's, otherwise complete 27b.

b. Address *(Street)*: ______ Apt. or Suite: ______

*(City/State/ZIP)*: ______ / ______ / ______

c. Relationship to Proposed Insured(s): ______ d. Date of Birth/Trust Date *(mm/dd/yyyy)*: ____/____/______

e. SSN/TIN: ______ f. Phone Number: ______ - ______ - ______

g. Beneficiary's Email: ______

28. a. ☐ P ☐ C ☐ Individual: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

☐ Trust/Entity *(legal name)*: ______

Trustee/Officer: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

Check here ☐ if address is same as Proposed Insured's, otherwise complete 28b.

b. Address *(Street)*: ______ Apt. or Suite: ______

*(City/State/ZIP)*: ______ / ______ / ______

c. Relationship to Proposed Insured(s): ______ d. Date of Birth/Trust Date *(mm/dd/yyyy)*: ____/____/______

e. SSN/TIN: ______ f. Phone Number: ______ - ______ - ______

g. Beneficiary's Email: ______

29. a. ☐ P ☐ C ☐ Individual: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

☐ Trust/Entity *(legal name)*: ______

Trustee/Officer: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

Check here ☐ if address is same as Proposed Insured's, otherwise complete 29b.

b. Address *(Street)*: ______ Apt. or Suite: ______

*(City/State/ZIP)*: ______ / ______ / ______

c. Relationship to Proposed Insured(s): ______ d. Date of Birth/Trust Date *(mm/dd/yyyy)*: ____/____/______

e. SSN/TIN: ______ f. Phone Number: ______ - ______ - ______

g. Beneficiary's Email: ______

30. Special Instructions *(Indicate here if proceeds are not to be paid equally. Dollar amounts are not accepted; percentages must be whole numbers and total 100%)*:

______

**Premium and Payor Information** ***(We cannot bill to your agent, and not all payment methods/modes are available with all products.)***

31. Modal Planned Premium: $ 438,278

32. a. Payment Method: ☐ Electronic Funds Transfer (EFT) ☐ Direct Bill *(Quarterly and Monthly restrictions apply)*
☐ Other *(Include List Bill Number if applicable.)*: ______

b. Premium Mode: ☒ Annual ☐ Semi-Annual ☐ Quarterly (Term–EFT only) ☐ Monthly (All products–EFT only) ☐ Lump Sum

33. Source of Premium *(Income, savings, replacement, inheritance, etc.)*: Premium Finance

34. Will the premiums for this Policy be paid, advanced, financed or otherwise funded by any person or entity other than you (Proposed Insured), the Owner, your spouse, domestic partner or your employer? *(If "Yes," complete the Premium Financing requirements.)* ☒ Y ☐ N

35. a. Select Premium Payor: *(Check one only. If "Other" is checked, complete Questions 35b through 35e.)*
☐ Proposed Insured(s) at mailing address ☒ Owner ☐ Beneficiary in Question: ☐ 27 ☐ 28 ☐ 29 ☐ Other

b. Payor Name *(Select One)*:

☐ Individual: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

☐ Entity *(legal name)*: ______

Check here ☐ if address is same as Proposed Insured's, otherwise complete 35c.

c. Payor Address *(Street)*: ______ Apt. or Suite: ______

*(City/State/ZIP)*: ______ / ______ / ______

d. SSN/TIN: ______ e. Relationship to Proposed Insured(s): ______

**Protection Against Unintended Lapse** ***(For additional protection against unintended lapse, you have the right to designate one person who will receive lapse and non-payment of premium notices. The designated person should be an individual other than your Agent/Financial Professional who will receive these notices automatically.)***

36. I, the Applicant/Owner, understand that I have the right to designate at least one person other than myself to receive notice of lapse or termination of this insurance Policy for non-payment of premium. I also understand that I will be given the opportunity to change this written designation at any time.

Complete name/address below if you choose to designate an additional person to receive lapse and non-payment of premium notices.

Name: ______ / ______ / ______ / ______
*(First)* *(M.I.)* *(Last)* *(Suffix)*

Mailing Address *(Street)*: ______ Apt. or Suite: ______

*(City/State/ZIP)*: ______ / ______ / ______

Phone Number: ______ - ______ - ______

## Existing and Pending Insurance Information

37. Do you have any existing annuity contracts with this Company or any other company? ☒ Y ☐ N

38. Are you considering replacing, lapsing, stopping premium payments, surrendering, assigning to the insurer or reducing your benefits under an existing life insurance policy or annuity? *(If "Yes," complete all required replacement forms.)* ☐ Y ☒ N

39. Are you considering using or borrowing funds from your existing life insurance policies or annuities to pay premiums due on the new or applied for Policy? *(If "Yes," complete all required replacement forms.)* ☐ Y ☒ N

40. If "Yes" to Question 38 and/or 39 with regard to an annuity contract, provide company, contract number and issue date:

41. Do you have any existing life insurance on your life, including any policies that have been sold? ☒ Y ☐ N *(If "Yes," provide details in box below.)*

Indicate the Type of coverage: Personal **(P)**; Business: Buy-Sell (B), Keyperson (K) or Loan (L); or Group **(G)**.

| Company | Face Amount | Policy Number | Issue Date *(mm/dd/yy)* | Replacement or Change of Policy? | 1035 Exchange? | Type | Sold? |
|---|---|---|---|---|---|---|---|
| Allianz | $1,000,000 | 6018437V | 10/11/21 | ☐ Y ☒ N | ☐ Y ☒ N | P | ☐ Y ☒ N |
| John Hancock | $250,000 | 46245430 | 12/27/21 | ☐ Y ☒ N | ☐ Y ☒ N | B | ☐ Y ☒ N |
| | $ | | | ☐ Y ☐ N | ☐ Y ☐ N | | ☐ Y ☐ N |
| | $ | | | ☐ Y ☐ N | ☐ Y ☐ N | | ☐ Y ☐ N |

42. Regardless of the status of the application, do you have any applications currently pending, do you plan to apply for, or did you apply for additional life insurance coverage with this or any other company within the past 12 months? *(If "Yes," provide details in box below. Do not include existing coverage listed in Question 41.)* ☒ Y ☐ N

| Company | Face Amount | Status *(Pending, Withdrawn, etc.)* | Type *(P,B,K,L)* |
|---|---|---|---|
| AIG | $5,000,000 | Withdrawn | B |
| LSW | $5,000,000 | Withdrawn | P |
| | $ | | |

43. What is the total amount of **new** life insurance coverage that will be placed in force with **all companies including this application?** *(Do not include existing coverage listed in Question 41.)* $ 5,000,000

44. Have you ever applied for life, long-term care, health or disability insurance and been rated, declined or postponed? *(If "Yes," provide the reason(s) for the outcome and details in the box below.)* ☐ Y ☒ N

Details

## General Information—Proposed Insured

45. Other than as a remote pilot, or as a flight attendant on a regularly scheduled airline, within the past two years have you flown as a pilot, student pilot or crew member or do you plan to do so within the next two years? *(If "Yes," complete the Aviation Supplement.)* ☐ Y ☒ N

46. Within the past 12 months have you participated in underwater diving; mountain climbing; aerial sports that do not require a pilot's certificate; or auto, motorcycle, or boat racing, or do you plan to do so within the next 12 months? *(If "Yes," complete the applicable Avocation Supplement.)* ☐ Y ☒ N

47. Within the past 12 months have you participated in: heli-skiing; rodeo sports; equine sports; BASE jumping or wingsuit flying; canyoning; highlining/tricklining; Parkour or Rooftopping; Speedflying; boxing, kickboxing, Muay Thai or MMA/Cage Fighting; or do you plan to do so within the next 12 months? *(If "Yes," provide details in Number 53 below.)* ☐ Y ☒ N

48. Do you now, or do you plan to within the next year, reside or travel outside of the United States or Canada? *(If "Yes," provide the purpose, total number of days, cities and countries where travel or residence is planned in Number 53 below.)* ☐ Y ☒ N

49. Are you a member of the Military Armed Forces, Military Reserves or National Guard? *(If "Yes," provide details in Number 53 below. Indicate if retired or active; list branch of service, pay grade, duties, Special Forces status, mobilization category, and current duty station; and if a notice of deployment has been received, to where and when.)* ☐ Y ☒ N

50. In the past five years, have you been convicted of three or more moving violations, driving under the influence of alcohol or other drugs, distracted driving, or had your driver's license suspended, restricted, or revoked? *(If "Yes," provide dates and details in Number 53 below.)* ☐ Y ☒ N

51. Have you ever been convicted of a felony? *(If "Yes," provide details in Number 53 below including offense and date of conviction and date of release of probation or parole.)* ☐ Y ☒ N

52. a. In the last five years have you filed for bankruptcy? ☐ Y ☒ N

    b. If "Yes," have all bankruptcies been discharged? *(If all have not been discharged, for each bankruptcy provide chapter, type (personal/business), reason, and if applicable, what is your payment plan and date of expected discharge in Number 53 below.)* ☐ Y ☒ N

53. Details to Questions: *(If more space is needed, use the Continuation of Details Supplement.)*

    Question #    Details

## Service Office Endorsements *(For Company Use Only. We will attach additional documentation as needed.)*

## Agreement and Acknowledgement

I, the Owner, certify that the tax identification or social security number as provided by me is correct. I also certify that I am not subject to backup withholding.

Each of the Undersigned declares that:

1. This Application consists of: a) Application for Individual Life Insurance — Part I; b) Medical Supplement — Part II; c) any amendments to the application(s) attached thereto; and d) any supplements, all of which are required by the Company for the plan, amount and benefits applied for. The Application, as defined above, and the recorded answers contained therein, will be bound with the Policy at issue. I/We understand that if this Policy is owned by someone other than the Proposed Insured, the Owner/Applicant will have access to those recorded answers.

2. I/We further agree that (except as provided in the Temporary Life Insurance Agreement if advance payment has been made and acknowledged below and such Agreement issued), insurance will take effect under the Policy only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application at the time conditions 1) and 2) are met.

   I/We have paid premium to the agent/representative in exchange for the Temporary Life Insurance Agreement, and I/we acknowledge that I/we fully understand and accept its terms. *(Complete Temporary Life Insurance Agreement and submit with application.)*

3. No agent, broker or medical examiner has the authority to make or modify any Company contract or to waive any of the Company's requirements.

4. For employer-owned life insurance policies, the owner hereby acknowledges its sole responsibility for ensuring that it complies with all legal and regulatory requirements related to life insurance it purchases on its employees, including appropriate disclosure to each employee whose life is insured under such a life insurance policy.

5. For policies held in trust by one or more trustees, the undersigned certify and acknowledge the following. The trust arrangement is identified by name and date, the trust is in effect, and the trustees named in this application are the trustees for the named trust. The trustees signing this application have the power and authority to act and exercise all ownership rights under the Policy, and the Company may rely solely upon the signatures of the trustees regarding any Policy options, privileges or benefits. Any amounts paid to the trustees by the Company according to the Policy shall fully discharge the Company with respect to those amounts. The Company shall have no obligation to inquire into the terms of the trust or to see to the use or application of any amounts paid to the trustees. The Company shall not be held liable for any party's non-compliance with the terms of the trust.

6. Corrections, additions or changes to this Application may be made by the Company. Any such changes will be shown under "Service Office Endorsements". Acceptance of a Policy issued with such changes will constitute acceptance of the changes. No change will be made in classification (including age at issue), plan, amount, or benefits unless agreed to in writing by the Applicant.

7. I have been advised to consult with my own tax advisors regarding the tax effects inherent in the plan of insurance for which I am applying.

8. I/WE HAVE READ, or have had read to me/us, the completed Application for Individual Life Insurance–Part I before signing below. All statements and answers in this Application for Individual Life Insurance–Part I are correctly recorded, and are full, complete and true to the best of my/our knowledge and belief. I/We confirm that upon receipt of the Policy, I/we will review the answers recorded on the Application, as defined in number 1 above. I/We will notify the Company immediately if any information in the Application is incorrect. Caution: I/We understand that if any answers on this Application are incorrect or untrue, the Company may have the right to deny benefits or rescind coverage under the Policy and any riders attached to it.

## State Disclosure

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

## Authorization

I, the Proposed Insured authorize any licensed physician, medical professional, hospital, clinic or any other medical institution, Pharmacy Benefit Manager, insurance support organizations, insurance company, Medical Information Bureau (MIB, Inc.), state motor vehicle division, consumer reporting agency, Social Security Administration, or employer that has any records or knowledge of my physical or mental health history, diagnosis, treatment, and prognosis, information regarding alcohol or drug abuse and including but not limited to transaction records, employment records, financial records, and complete medical records (including information regarding insurance, demographics, referral documents and records from other facilities), or motor vehicle information to give all such information to The Lincoln National Life Insurance Company, their licensed representatives and/or their reinsurers, Parameds.com, Express Imaging Services (EIS), Sterling File Gateway (SFG), or any other party acting on the Company's behalf. I authorize the Company or its reinsurer to make a brief report of my protected health information to MIB, Inc. I authorize the Company to disclose information related to my insurability to other insurers to whom I may apply for coverage. I acknowledge receipt of the Privacy Notice and the Important Notice containing the Investigative Consumer Report and MIB, Inc. information.

This authorization shall be valid for 24 months after it is signed. A photographic copy of this authorization shall be as valid as the original. I understand that I may revoke this authorization at any time by written notification to the Company; however, any action taken prior to notification will not be affected I or my authorized representative may have a copy of this authorization upon request.

The purpose of this authorization is to allow the Company to determine eligibility for life coverage or a claim for benefits under a life policy.

☐ I elect to be interviewed if an Investigative Consumer Report is prepared.

Each of the undersigned declares that:

I/We acknowledge receipt of the Buyer's Guide, Privacy Notice and the Important Notice containing the Investigative Consumer Report and MIB, Inc information and if applicable the Life Insurance Buyer's Guide.

## Signatory Section

Signed in: CA (State) 02/24/2023 Date (mm/dd/yyyy)

A. Mirzadeh

**Signature of Proposed Insured**
(Parent or Guardian if under 16 years of age)

[signature] President

**Signature of Applicant/Owner/Trustee**
(If other than Proposed Insured)
**Provide Title if owned by a Trust or a Corporation**

**Signature of Applicant/Owner/Trustee**
(If other than Proposed Insured)
**Provide Title if owned by a Trust or a Corporation**

## To Be Completed By Agent Only *(All questions are required to be answered.)*

(i) Does the applicant have any existing life insurance policies or annuities? ☒ Y ☐ N

(ii) Do you know or have you any reason to believe that replacement of insurance is involved? ☐ Y ☒ N
If a replacement is involved, I certify that only company approved sales materials were used in this sale and that copies of all sales materials were left with the applicant.

I declare that I have accurately answered all questions contained in this section.

I declare that I have provided each Proposed Insured and Owner(s) with the Important Notice, Privacy Practices Notice and, if applicable, the Life Insurance Buyer's Guide.

X [signature]

**Signature of Licensed Agent, Broker or Registered Representative**

Ahmad Hashemian

**Printed Name of Licensed Agent, Broker or Registered Representative**

Lincoln Financial Group®

Please check appropriate underwriting company:
☒ The Lincoln National Life Insurance Company, Service Office: PO Box 21008, Greensboro, NC 27420-1008
☐ Lincoln Life & Annuity Company of New York, Service Office: PO Box 21008, Greensboro, NC 27420-1008
☐ First Penn-Pacific Life Insurance Company, Service Office: PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as the "Company")

# Financial Supplement for Business Insurance

Proposed Insured Name: (First) Ghasem / (Middle) / (Last) Mirzadeh / (Suffix)

Date of Birth (mm/dd/yyyy): [redacted]

## 1. Business Financial Information

| Assets: | | Liabilities: | |
|---|---|---|---|
| Cash and Cash Equivalents | $219,373 | Accounts Payable | $472,074 |
| Accounts Receivables | $ 0 | Current Income Tax Liabilities | $ 0 |
| Inventories | $ 8,673 | Bank Loans | $ 0 |
| Prepaid Expense | $ 0 | Other Tax Liabilities | $ 0 |
| Investments Held for Trading | $1,200,000 | Issued Debt Securities | $ 0 |
| Property, Plant and Equipment | $322,076 | Deferred Tax Liabilities | $ 0 |
| Goodwill | $ 75,000 | Minority Interest and Equity | $ 0 |
| Other Intangible Fixed Assets | $ 0 | Other Liabilities | $ 0 |
| Deferred Tax Assets | $ 0 | **TOTAL LIABILITIES** | $472,074 |
| **TOTAL ASSETS** | $1,825,122 | **NET WORTH** | $1,353,048 |
| Net Income for Last Tax Fiscal Year | $3,844,114.96 | Retained Earnings/Stockholders Equity | $669,267.17 |
| Net Income after Tax Current Fiscal Year | $509,878.53 | Estimated Market Value of Business | $15,000,000 |

## 2. Additional Business Financial Information

Formal/Legal Name of Business: Sina Corporation

Doing Business As (if applicable): Best Choice Pharmacy

Type of Business: ☐ C Corp ☒ S Corp ☐ Partnership ☐ Sole Proprietorship ☐ LLC ☐ LLP

Number of Employees: 10 Year Firm Established: 2011 Description of Business (mfg, retail, etc.): Pharmacy

Purpose of Insurance: ☒ Key Person ☐ Buy/Sell ☐ Stock Redemption ☐ Loan ☐ Deferred Comp
☐ Other: ______

If "Buy/Sell" coverage, complete the following:

List names of all partners, % of business owned and amount of buy-sell insurance inforce and applied for:

______ ____% $______ ______ ____% $______
______ ____% $______ ______ ____% $______

If "Key Person," are all other key persons covered by or applying for comparable amounts of insurance? ☒ Yes ☐ No

(If "No," explain.): ______

If "Loan," provide loan amount: $______ and purpose of loan: ______

Any Bankruptcy? (Include dates of discharge, type and details.) N/A

Is the firm involved in any judgements, lawsuits or pending court proceedings? ☐ Yes ☒ No (If "Yes," provide details.):

Explain the basis for the requested face amount in your application for insurance: Needs analysis.

## Signatory Section

The Undersigned declares that:

I have read or have had read to me the completed Financial Supplement for Business Insurance before signing below. All statements and answers in this Financial Supplement for Business Insurance are correctly recorded and are full, complete and true to the best of my knowledge and belief. I agree that this Financial Supplement for Business Insurance constitutes a part of my application for insurance. The financial disclosures listed above are for the purpose of establishing financial insurability in connection with my application for insurance.

**Caution: If your answers on this application are misstated or untrue, the Company may have the right to deny benefits or rescind coverage under the policy and any riders attached to it.**

Signed in: CA (State) 02/24/2023 Date (MM/DD/YYYY)

S. Mirzadeh

**Signature of Proposed Insured**
(Signature of Parent or Guardian if under 16 years of age)

X [signature]

**Signature of Licensed Agent, Broker or Registered Representative**

Ahmad Hashemian

**Printed Name of Licensed Agent, Broker or Registered Representative**

**Signature of CPA / Attorney and Title**

**Printed Name of CPA / Attorney**

**CPA / Attorney Address**

**CPA / Attorney Phone Number**

Lincoln Financial Group®

# Medical Supplement (Part II of Application)

**Please check appropriate underwriting company:**

☐ **The Lincoln National Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
☐ **Lincoln Life & Annuity Company of New York:** PO Box 21008, Greensboro, NC 27420-1008
☐ **First Penn-Pacific Life Insurance Company:** PO Box 21008, Greensboro, NC 27420-1008
(hereinafter referred to as the "Company")

Proposed Insured: Ghasem (*First*) / NIA (*Middle*) / Mirzadeh (*Last*) / ____ (*Suffix*)

Date of Birth (*mm/dd/yyyy*): [redacted]

1. What is your Height? 5 ft. / 10 in.
2. What is your Weight? 141 lbs.
   a. Has your current weight changed by more than 10 pounds within the past 12 months? ☐ Y ☒ N
   b. If "Yes," by how many pounds?: ______ lbs. ☐ Gain ☐ Loss
   c. If "Yes," reason for weight change? ☐ intentional ☐ unintentional ☐ due to pregnancy
   d. If weight change was due to pregnancy, are you currently pregnant? ☐ Y ☐ N

## Personal Medical History

*If you answer "Yes" to any question below, indicate which medical condition(s) apply and provide details in Number 16.*

3. In the past 10 years have you been diagnosed by, or been treated by a licensed medical professional for:

a. **Medical Conditions of the Heart or Cardiovascular System:** ☐ Y ☒ N

☐ Aneurysm ☐ Heart Attack ☐ High Cholesterol
☐ Arrhythmia/Irregular Heartbeat ☐ Heart Murmur ☐ Peripheral Vascular Disease
☐ Atrial Fibrillation ☐ Heart Valve Disorder ☐ Stent or Bypass
☐ Carotid Artery Disease ☐ High Blood Pressure ☐ Any Other Heart or Cardiovascular Condition
☐ Coronary Artery Disease

b. **Mental Health Conditions:** ☐ Y ☒ N

☐ Anxiety/Stress/Panic Attacks ☐ Bipolar ☐ Post-Traumatic Stress Disorder (PTSD)
☐ Attention Deficit Hyperactivity Disorder (ADHD) ☐ Depression ☐ Any Other Mental Health Condition

c. **Cancer and Precancerous Conditions:** ☐ Y ☒ N

☐ Abnormal PAP Smear ☐ Colon Cancer ☐ Prostate Cancer
☐ Barrett's Esophagus ☐ Colon Polyps ☐ Renal/Kidney Cancer
☐ Basal Cell/Squamous Cell Cancer of the Skin ☐ Leukemia ☐ Thyroid Cancer
☐ Lung Cancer ☐ Uterine Cancer
☐ Bladder Cancer ☐ Lymphoma ☐ Any Other Cancer or Precancerous Condition
☐ Breast Cancer ☐ Melanoma

d. **Metabolic or Endocrine Medical Conditions:** ☐ Y ☒ N

☐ Diabetes Mellitus ☐ Hypothyroidism (Low) ☐ Pituitary Adenoma/Tumor
☐ Hyperthyroidism/Graves' Disease ☐ Pre-diabetes/Impaired Glucose Tolerance ☐ Any Other Metabolic or Endocrine Condition

| | | |
|---|---|---|
| **e. Medical Conditions of the Lungs and Respiratory System:** | | ☐ Y ☒ N |
| ☐ Asthma | ☐ Pulmonary Fibrosis | ☐ Sleep apnea |
| ☐ Emphysema/Chronic Obstructive Pulmonary Disease (COPD) | ☐ Sarcoidosis | ☐ Any Other Lung or Respiratory Condition |
| **f. Medical Conditions of the Gastrointestinal System:** | | ☐ Y ☒ N |
| ☐ Cirrhosis | ☐ Gastroesophageal Reflux Disease (GERD) | ☐ Pancreatitis |
| ☐ Crohn's Disease | | ☐ Ulcer(s) |
| ☐ Diverticulitis | ☐ Hepatitis | ☐ Ulcerative Colitis |
| ☐ Esophagitis | ☐ Irritable Bowel Syndrome (IBS) | ☐ Any Other Gastrointestinal Condition |
| ☐ Fatty Liver | | |
| **g. Blood Disorders:** | | ☐ Y ☒ N |
| ☐ Anemia | ☐ Hemochromatosis | ☐ Pulmonary Embolism |
| ☐ Clotting Disorder | ☐ Hemophilia | ☐ Thrombocytopenia/ITP |
| ☐ Deep Vein Thrombosis | ☐ Monoclonal Gammopathy of Uncertain Significance | ☐ Any Other Blood Disorder |
| **h. Medical Conditions of the Brain and Nervous System:** | | ☐ Y ☒ N |
| ☐ Concussion | ☐ Restless Leg Syndrome | ☐ Transient Global Amnesia |
| ☐ Falls | ☐ Seizures/Epilepsy | ☐ Traumatic Brain Injury |
| ☐ Headaches/Migraines | ☐ Stroke/Transient Ischemic Attack | ☐ Vertigo |
| ☐ Multiple Sclerosis | | ☐ Any Other Brain or Nervous System Condition |
| ☐ Parkinson's Disease | ☐ Syncope/Fainting | |
| **i. Medical Conditions of the Bones, Joints and Muscles:** | | ☐ Y ☒ N |
| ☐ Arthritis | ☐ Connective Tissue Disease | ☐ Spine/Disc Disorder |
| ☐ Autoimmune Disorder | ☐ Joint Replacement | ☐ Systemic Lupus Erythematosus (SLE) |
| ☐ Chronic Pain | ☐ Osteoporosis/Osteopenia | ☐ Any Other Bone, Joint or Muscle Condition |
| **j. Any disorder of the eyes, ears, nose or throat?** | | ☐ Y ☒ N |
| **k. Any non-cancer related disorder of the testicles, prostate, breasts, ovaries, uterus or cervix?** | | ☐ Y ☒ N |
| **l. Alzheimer's disease, dementia, or any cognitive impairment?** | | ☐ Y ☒ N |

*If you answer "Yes" to any question below, provide details in Number 16.*

4. Have you been diagnosed by or received treatment from a licensed medical professional for Acquired Immunodeficiency Syndrome (AIDS), or has any Human Immunodeficiency Virus (HIV) test done in connection with a previous insurance application indicated a positive result? ☐ Y ☒ N

5. Have you ever been diagnosed by, or been treated by a licensed medical professional for any immune system disorder (excluding HIV or AIDS)? ☐ Y ☒ N

6. Other than previously disclosed, in the past five years:

a. Have you been a patient in a hospital or medical facility? ☐ Y ☒ N

b. Excluding tests for HIV (AIDS virus), have you had an EKG, x-ray, blood or urine test, or any other diagnostic test? ☐ Y ☒ N

c. Have you been advised by a licensed medical professional to have any hospitalization, surgery, EKG, x-ray, blood or urine test, or any other diagnostic test which has not been completed? ☐ Y ☒ N

7. Do you drink alcoholic beverages? ☐ Y ☒ N

a. If "Yes": I have ________ (#) drinks per ☐ day ☐ week ☐ month ☐ year ☐ Other *(Provide details in Number 16)*

8. In the past five years have you used marijuana or cannabis-based products (not including CBD)? *(If "Yes" complete 8a-b)* ☐ Y ☒ N

a. How frequently do you use marijuana or cannabis-based products?

I use ________ (#) times per ☐ day ☐ week ☐ month ☐ year ☐ Other *(Provide details in Number 16)*

b. Was this prescribed to you by a licensed medical professional? *(If "Yes," provide the condition for which this was prescribed in Number 16.)* ☐ Y ☐ N

9. Have you ever used tobacco or products containing nicotine (including, but not limited to: cigarettes, cigars, electronic cigarettes, vapers, chewing tobacco, snuff, nicotine gum and/or patches)? ☐ Y ☒ N

a. If "Yes," list below:

| Type: | Last Used: |
|---|---|
| | |
| | |

b. If type includes "Cigars," how many cigars did you smoke in the past year? ________

10. Have you received medical treatment or counseling for drug or alcohol abuse, or has a licensed medical professional advised you to limit or stop your use of alcohol or any prescription or non-prescription medication? ☐ Y ☒ N

11. In the past five years have you used or experimented with cocaine or non-prescription stimulants, depressants, hallucinogens, narcotics, inhalants, or other illegal, restricted or controlled substances? ☐ Y ☒ N

12. Have you taken, or have you been advised to take, any prescription medication(s) within the past 30 days (excluding over the counter drugs and/or supplements) for any reason(s) not previously disclosed? ☐ Y ☒ N

13. Please answer the following questions about your **biological parents or siblings**:

a.

| | Age if Living | Age at Death | If this person died prior to age 65, was cause of death due to coronary artery disease, heart attack, or stroke? | History Unknown |
|---|---|---|---|---|
| Father | 93 | | | ☐ |
| Mother | 84 | | | ☐ |

b. If you have biological siblings, have any died prior to age 65 due to coronary artery disease, heart attack or stroke?

☐ Yes, age(s) at death: ________ ☒ No ☐ Unknown ☐ No siblings

14. Provide the following information for your primary care or personal physician:

Physician Name: Dr. Alan Nili

Street Address: 18 Endeavor ste 307 Irvine CA 92618

City/State/ZIP: Irvine / CA / 92618

Phone 949 - 260 - 0106 Date of last visit: (mm/yyyy) 05 / 2022

Reason for last visit: Yearly check up

15. In the past five years have you consulted with, been examined by or been treated by a licensed medical professional for any reason not previously disclosed? ☐ Y ☒ N

16. **Details: For any questions answered "Yes," include details about the name of the condition, medications, treating licensed medial professional's name and contact information, date of diagnosis and treatment prescribed.** *(If more space is needed use the Continuation of Details Supplement.)*

Question # Details

## Signatory Section

The Undersigned declares that:

I have read or have had read to me the completed Medical Supplement before signing below. All statements and answers in this Medical Supplement are correctly recorded and are full, complete and true to the best of my knowledge and belief. I agree that this Medical Supplement constitutes a part of the application for insurance and as such this application and its answers will be bound with the Policy at issue. I understand that if this Policy is owned by someone other than myself that the Owner/Applicant will have access to my responses in this Medical Supplement. **Caution: If your answers on this application are misstated or untrue, the Company may have the right to deny benefits or rescind coverage under the Policy and any riders attached to it.**

Signed in: CA (State) 11 / 10 / 2022 Date (mm/dd/yyyy)

G. Mirzadeh
**Signature of Proposed Insured**
(Parent or Guardian if under 16 years of age)

Ghasem Mirzadeh
**Printed Name of Proposed Insured**

Alun
**Signature of Examiner or Licensed Agent**

ALONA
**Printed Name of Examiner or Licensed Agent**

# **EXHIBIT B**

Lincoln Financial Group®

# Beneficiary Change

**Mail:** Lincoln Financial Group, Life Customer Service and Claims – G10-00
P.O. Box 21008, Greensboro, NC 27420-1008

**Overnight Address:** Lincoln Financial Group, Life Customer Service – G10-00
100 N. Greene St., Greensboro, NC 27401
**Phone:** 800-487-1485 **Fax:** 800-819-1987
Email: CustServSupportTeam@LFG.com
LincolnFinancial.com

**The Lincoln National Life Insurance Company ("Lincoln")**
**Lincoln Life & Annuity Company of New York ("Lincoln")**
**First Penn-Pacific Life Insurance Company ("Lincoln")**

This form should be used to change the beneficiary on a policy or certificate. Complete a separate request for change of beneficiary for each policy to be changed, unless the owner and all information is the same on all policies.

### Step 1 - Guidance

Enter the policy or certificate number.

Enter any other relevant policy numbers separated by commas. The owner must be the same on all policies or a separate form is required.

Enter the full legal name of the person designated as the Insured on the policy and their date of birth, social security number, and contact information.

## Step 1 - Insured Information

**Policy Number:** IUL1062973

**First Name:** Ghasem

**Middle Name:**

**Last Name:** mirzadeh

**Date of Birth:** [redacted] **SSN:** [redacted]

**Address:** 23 Mandrake

**City:** Irvine **State:** CA **Zip Code:** 92610

**Phone Number:** ___ - ___ - ___ **Mobile Number:** 949 - 466 - 4066

**Email Address:**

### Step 2 - Guidance

If the insured and the owner are the same person, proceed to step 3.

If this policy is trust owned proceed to page 2.

## Step 2 - Individual Owner Information

**Are the Insured and Owner the same person?** ☐ Yes ☐ No

**First Name:**

**Middle Name:**

**Last Name:**

**Date of Birth:** ___ / ___ / ___ **SSN:** ___ - ___ - ___

**Address:**

**City:** **State:** **Zip Code:**

**Phone Number:** ___ - ___ - ___ **Mobile Number:** ___ - ___ - ___

**Email Address:**

**Step 2 - Guidance**

**If this policy is trust owned and has more than one trustee, make copies of this page, prior to completion, or attach on separate page and submit the information pertaining to each trustee.**

Enter the full legal name of the trust, tax ID number, date the trust was established, and contact information.

**Trust owned policies must be signed by all trustees with the title of each and attach the Certification of Trustee Powers form.**

The submission of a completed IRS Form W-9 may be required. Tax ID Number is required for Trusts.

Enter the full legal name of the **corporation, bank, financial institution, pension plan, Limited Liability Company (LLC) or other entity,** tax ID number, and contact information.

Indicate the officer name and contact information.

**Attach supporting documentation (i.e. corporate resolution, plan documents, operating agreement, etc.). See step 9 for additional details and signature requirements.**

Tax ID Number for Corporation/ Entities is required.

## Trust Owner information

Trust Name: ____

Tax ID Number: ____ Trust Date: __ / __ / __

Address: ____

City: ____ State: ____ Zip Code: ____

Trustee First Name: ____

Trustee Last Name: ____

Phone Number: __ - __ - __ Mobile Number: __ - __ - __

Email Address: ____

## Corporation/Entity Owner information

Corporation/Entity Name: ____

Tax ID Number: ____

Address: ____

City: ____ State: ____ Zip Code: ____

Officer First Name: ____

Officer Last Name: ____

Phone Number: __ - __ - __ Mobile Number: __ - __ - __

Email Address: ____

**Step 3 - Guidance**

This form replaces all prior beneficiary designations. If you are wanting to add beneficiaries, you must restate all existing beneficiaries.

If you do not select an option in this step, we will automatically change the beneficiaries on the base policy and the primary insured rider (if applicable).

If you select Other Insured Rider (OIR), indicate the first and last name of the Insured.

## Step 3 - Beneficiary Designation

**Change beneficiaries on (select all that apply):**

- ☒ Base policy
- ☐ Primary Insured rider
- ☐ Spouse rider
- ☐ Other Insured rider (OIR)
- ☐ Children Term rider(s)
- ☐ First to die rider
- ☐ Last to die rider

OIR Insured First Name: ____

OIR Insured Last Name: ____

### Step 4 - Guidance

If you are designating a trust or entity as beneficiary, proceed to step 6 or 7.

**If you are designating more than two individual primary beneficiaries, print as many copies of this page as needed prior to completing, and include the information for each beneficiary.**

Enter the primary beneficiary's name, date of birth, social security number, and contact information.

**Use numbers to indicate the percentage payable for each beneficiary. Lincoln will not accept dollar amounts or fractions.**

**All primary beneficiary designations on this form must total 100%.**

**Note: Beneficiary information is required to ensure we can identify and contact your beneficiary(ies) in the event of a claim. State regulations may require benefits to be paid to the State if Lincoln is unable to locate the beneficiary(ies) in a timely manner.**

Primary Individual Beneficiary(ies): The first person(s) in line to receive the death proceeds after the insured is deceased.

The submission of a completed IRS Form W-9 may be required.

## Step 4 - Primary Individual Beneficiary(ies)

First Name: Farkhondeh

Middle Name:

Last Name: mirzadeh

Date of Birth: [redacted] SSN: - -

Address: 23 Mandrake Way

City: Irvine State: CA Zip Code: 92612

Phone Number: - - Mobile Number: 949 - 903 - 8000

Email Address:

Relationship to Insured: Sister

Indicate the percentage of the proceeds payable to this beneficiary: 35 %

---

First Name: maedeh

Middle Name:

Last Name: Mirzadeh

Date of Birth: [redacted] SSN: - -

Address: 23 Mandrake Way

City: Irvine State: CA Zip Code: 92612

Phone Number: - - Mobile Number: 949 - 903 - 8000

Email Address:

Relationship to Insured: Sister

Indicate the percentage of the proceeds payable to this beneficiary: 20 %

Continued

**Step 4 - Guidance**

If you are designating a trust or entity as beneficiary, proceed to step 6 or 7.

**If you are designating more than two individual primary beneficiaries, print as many copies of this page as needed prior to completing, and include the information for each beneficiary.**

Enter the primary beneficiary's name, date of birth, social security number, and contact information.

**Use numbers to indicate the percentage payable for each beneficiary. Lincoln will not accept dollar amounts or fractions.**

**All primary beneficiary designations on this form must total 100%.**

**Note: Beneficiary information is required to ensure we can identify and contact your beneficiary(ies) in the event of a claim. State regulations may require benefits to be paid to the State if Lincoln is unable to locate the beneficiary(ies) in a timely manner.**

Primary Individual Beneficiary(ies): The first person(s) in line to receive the death proceeds after the insured is deceased.

The submission of a completed IRS Form W-9 may be required.

## Step 4 - Primary Individual Beneficiary(ies)

**First Name:** Soheyla

**Middle Name:**

**Last Name:** Mirzadeh

**Date of Birth:** [redacted] **SSN:** - -

**Address:** 400 N Acacia Ave Unit A31

**City:** Fullerton **State:** CA **Zip Code:** 92831

**Phone Number:** - - **Mobile Number:** 949 - 903 - 8524

**Email Address:**

**Relationship to Insured:** Sister

**Indicate the percentage of the proceeds payable to this beneficiary:** 15 %

---

**First Name:** Zahra

**Middle Name:**

**Last Name:** Mirzadeh

**Date of Birth:** [redacted] **SSN:** - -

**Address:** 23 Mandrake

**City:** Irvine **State:** CA **Zip Code:** 92620

**Phone Number:** - - **Mobile Number:** 949 - 903 - 8000

**Email Address:**

**Relationship to Insured:** Sister

**Indicate the percentage of the proceeds payable to this beneficiary:** 10 %

CONTINUED

### Step 4 - Guidance

If you are designating a trust or entity as beneficiary, proceed to step 6 or 7.

**If you are designating more than two individual primary beneficiaries, print as many copies of this page as needed prior to completing, and include the information for each beneficiary.**

Enter the primary beneficiary's name, date of birth, social security number, and contact information.

**Use numbers to indicate the percentage payable for each beneficiary. Lincoln will not accept dollar amounts or fractions.**

**All primary beneficiary designations on this form must total 100%.**

**Note: Beneficiary information is required to ensure we can identify and contact your beneficiary(ies) in the event of a claim. State regulations may require benefits to be paid to the State if Lincoln is unable to locate the beneficiary(ies) in a timely manner.**

Primary Individual Beneficiary(ies): The first person(s) in line to receive the death proceeds after the insured is deceased.

The submission of a completed IRS Form W-9 may be required.

## Step 4 - Primary Individual Beneficiary(ies)

**First Name:** Tahereh

**Middle Name:**

**Last Name:** Mirzadeh

**Date of Birth:** [redacted] **SSN:** ___ - ___ - ___

**Address:** 23 Mandrake

**City:** Irvine **State:** CA **Zip Code:** 92612

**Phone Number:** ___ - ___ - ___ **Mobile Number:** 949 - 903 - 8000

**Email Address:**

**Relationship to Insured:** Sister

**Indicate the percentage of the proceeds payable to this beneficiary:** 10 %

---

**First Name:** Mohsen

**Middle Name:**

**Last Name:** Mirzadeh

**Date of Birth:** [redacted] **SSN:** ___ - ___ - ___

**Address:** 23 Mandrake

**City:** Irvine **State:** CA **Zip Code:** 92612

**Phone Number:** ___ - ___ - ___ **Mobile Number:** 949 - 903 - 8000

**Email Address:**

**Relationship to Insured:** Brother

**Indicate the percentage of the proceeds payable to this beneficiary:** 10 %

### Step 5 - Guidance

If you are designating a trust or entity as a contingent beneficiary, proceed to step 6 or 7.

**If you are designating more than two individual contingent beneficiaries, print as many copies of this page as needed prior to completing.**

Enter the individual contingent beneficiary's name, date of birth, social security number, and contact information.

**Use numbers to indicate the percentage payable for each beneficiary. Lincoln will not accept dollar amounts or fractions.**

**All contingent beneficiary designations on this form must total 100%.**

Individual Contingent Beneficiary(ies): The second person(s)/entity(ies) in line to receive the death proceeds after the insured is deceased and no surviving primary beneficiary(ies).

The submission of a completed IRS Form W-9 may be required.

## Step 5 - Individual Contingent Beneficiary(ies)

**First Name:** ____

**Middle Name:** ____

**Last Name:** ____

**Date of Birth:** ___ / ___ / ___ **SSN:** ___ - ___ - ___

**Address:** ____

**City:** ____ **State:** ___ **Zip Code:** ___

**Phone Number:** ___ - ___ - ___ **Mobile Number:** ___ - ___ - ___

**Email Address:** ____

**Relationship to Insured:** ____

**Indicate the percentage of the proceeds payable to this beneficiary:** ___ %

---

**First Name:** ____

**Middle Name:** ____

**Last Name:** ____

**Date of Birth:** ___ / ___ / ___ **SSN:** ___ - ___ - ___

**Address:** ____

**City:** ____ **State:** ___ **Zip Code:** ___

**Phone Number:** ___ - ___ - ___ **Mobile Number:** ___ - ___ - ___

**Email Address:** ____

**Relationship to Insured:** ____

**Indicate the percentage of the proceeds payable to this beneficiary:** ___ %

## Step 6 - Guidance

Use this section to designate a trust as a beneficiary.

**If you are designating more than one trust or more than two trustees, print as many copies of this page as needed prior to completing.**

Indicate if this trust designation is for primary beneficiary or contingent beneficiary.

Enter the trust name, tax ID number, date the trust was established, and address.

**Use numbers to indicate the percentage payable to this trust.**

**All primary beneficiary designations on this form must total 100%.**

**All contingent beneficiary designations on this form must total 100%.**

Indicate all trustee names and contact information.

**Note: Trustee information is required to ensure we can identify and contact your beneficiary(ies) in the event of a claim. State regulations may require benefits to be paid to the State if Lincoln is unable to locate the beneficiary(ies) in a timely manner.**

Primary Beneficiary(ies): The first person(s)/entity(ies) in line to receive the death proceeds after the insured is deceased.

Contingent Beneficiary(ies): The second person(s)/entity(ies) in line to receive the death proceeds after the insured is deceased and no surviving primary beneficiary(ies).

Trust Tax ID Number is required.

## Step 6 - Trust Beneficiary Designation

☐ Primary Beneficiary ☐ Contingent Beneficiary

**Trust Name:** ______

**Tax ID Number:** ______ **Trust Date:** ___ / ___ / ___

**Address:** ______

**City:** ______ **State:** ___ **Zip Code:** ___

**Indicate the percentage of the proceeds payable to this beneficiary:** ___ %

---

**Trustee First Name:** ______

**Trustee Last Name:** ______

**Address:** ______

**City:** ______ **State:** ___ **Zip Code:** ___

**Phone Number:** ___ - ___ - ___

**Email Address:** ______

---

**Trustee First Name:** ______

**Trustee Last Name:** ______

**Address:** ______

**City:** ______ **State:** ___ **Zip Code:** ___

**Phone Number:** ___ - ___ - ___

**Email Address:** ______

**Step 7 - Guidance**

Use this section to designate a corporation/entity as a primary or irrevocable beneficiary.

**If you are designating more than one corporation/entity, print as many copies of this page as needed prior to completing.**

Enter the corporation/entity full legal name, tax ID number, officer name and contact information.

Use numbers to indicate the percentage payable to the Corporation/Entity.

**All primary beneficiary designations on this form must total 100%.**

**All contingent beneficiary designations on this form must total 100%.**

Corporation/Entity Tax ID Number is required.

## Step 7 - Corporation/Entity Beneficiary Designation

☐ Primary Beneficiary ☐ Contingent Beneficiary

Corporation/Entity Name: ______

Tax ID Number: ______

Address: ______

City: ______ State: ______ Zip Code: ______

Phone Number: ______ - ______ - ______

Email Address: ______

Indicate the percentage of the proceeds payable to this beneficiary: ______ %

**Step 8 - Guidance**

If you designated a beneficiary who is a minor, indicate the Guardian/ Conservator's name and contact information.

The minor's name and contact information should have already been listed as a beneficiary in a prior section.

**Any payment due to a minor beneficiary shall be made to the legally appointed guardian of the minor, unless otherwise permitted by law. If you are designating a minor beneficiary, we suggest you contact your legal advisor to consider doing so under the UNIFORM GIFTS TO MINOR ACT (UGMA), or UNIFORM TRANSFERS TO MINORS ACT (UTMA), whichever may be in effect in your state.**

## Step 8 - Guardian/Conservator Beneficiary Designation

Guardian/Conservator First Name: ______

Guardian/Conservator Last Name: ______

Address: ______

City: ______ State: ______ Zip Code: ______

Phone Number: ______ - ______ - ______ Mobile Number: ______ - ______ - ______

Email Address: ______

### Minor Beneficiary Information

Minor First Name: ______

Minor Last Name: ______

**Step 9 - Guidance**

Completion of this section certifies that the Policy Owner and all engaged parties are aware of and approve the beneficiary(ies) designation update.

**If you need additional signature lines, make a copy of this form prior to completion.**

Owner Signature Requirements:
Individual Policy Owner(s) - Sign, print name, and date. The title is not required.

Owner Signature Requirements:
Power of Attorney (POA) - Sign, print name, title (ex. Attorney-in-Fact for Jane Doe) and attach a copy of POA. If the POA is 3+ years old, also attach an affidavit that the POA is still current.

Conservator or Guardian - Sign, print name, title and attach Letter(s) of Conservatorship or Letter(s) of Guardianship of the estate.

Custodian of Minor - Sign, print name, title, date and attach a court order, or other documentation evidencing an appointment as Custodian under a state Uniform Transfers [Gifts] to Minors Act.

Corporation, Bank or Financial Institution - One officer signature, print name, title, date, and attach Corporate Resolution which names all officers authorized to sign on behalf of the corporation; or two officer signatures, print name, title, date and the Corporate Resolution is not required.

Pension Plan Administrator - Sign, print name, date and attach the Plan documents naming the Administrator.

Trust - Trustee(s) sign, print name, title, date, and attach the completed Certification of Trustee Powers form.

Partnership or LLC - One general/managing partner signature, print name, title, date and attach a copy of the Partnership Agreement for Partnerships or one managing member's signature, print name, title and attach a copy of the Operating Agreement for LLCs.

**Note: Notarization is required if the signor must sign with an "X" and stamped signatures will not be accepted.**

## Step 9 - Authorizations and Signatures

As ***Policy Owner***, I certify that the information provided on this form is complete and correct. I hereby revoke any previous beneficiary designation and request that upon the death of the insured named on this policy and/or rider(s) that the proceeds be made payable to the beneficiary(ies) designated herein.

**Owner's Signature:** G. Mirzadeh

**Print Name:** Ghasem Mirzadeh

**Title:**

**Date:** 12 / 19 / 2023

**Owner's Signature:**

**Print Name:**

**Title:**

**Date:** / /

This signature section should only be completed by an existing irrevocable beneficiary to provide consent for this policy change to occur.

As ***Irrevocable Beneficiary***, I hereby consent to revoke any previous beneficiary designation and request that upon the death of the Insured named on this policy and/or rider(s) that the proceeds be made payable to the beneficiary(ies) designated herein.

**Irrevocable Beneficiary's Signature:**

**Print Name:**

**Title:**

**Date:** / /

Residents of Massachusetts must have a witness sign this form.

As ***Witness***, I observed the owner sign this form.

**Witness's Signature:**

**Print Name:**

**Date:** / /