Brent Dorian Brehm, SBN: 248983
DORIAN LAW P.C.
4500 Park Granada Blvd, Suite 202
Calabasas, CA 91302
(747) 297-7409
brent@dorianlaw.com

Attorney for Defendant-in-Interpleader, Counterclaimant, and Crossclaimant, Maedeh Mirzadeh

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Lincoln National Life Insurance Company,<br>Plaintiff-in Interpleader,<br>vs.<br>Farkhondeh Mirzadeh, Maedeh Mirzadeh, Soheyla Sandoval, Zahra Mirzadeh, Tahereh Mirzadeh, Moshen Mirzadeh, and Does 1 though 10, inclusive,<br>Defendants-in Interpleader.<br>------------------------------------------------<br>Maedeh Mirzadeh,<br>Counterclaimant and Crossclaimant,<br>vs.<br>The Lincoln National Life Insurance Company,<br>Counterclaim Defendant;<br>and<br>Soheyla Sandoval; Zahra Mirzadeh; Farkhondeh Mirzadeh; Tahereh Mirzadeh; and Mohsen Mirzadeh,<br>Crossclaim Defendants. | Case No. 8:26-cv-01113-JVS-JDE<br><br>**Maedeh Mirzadeh's Answer and Defenses; Counterclaims and Crossclaims**<br><br>**Counterclaims Against Lincoln**<br>1. Breach of Contract<br>2. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>3. Negligence<br><br>**Crossclaims**<br>4. Breach of Contract Against Soheyla Sandoval and Zahra Mirzadeh<br>5. Declaratory Relief Against All Crossclaim Defendants<br><br>**DEMAND FOR JURY TRIAL** |

## ANSWER TO COMPLAINT AND DEFENSES

Defendant-in-Interpleader Maedeh Mirzadeh ("Maedeh"), answering for herself alone, responds as follows, and states her defenses and claims, in response to the Complaint-in-Interpleader (ECF No. 1) (the "Complaint") filed by Plaintiff-in-Interpleader The Lincoln National Life Insurance Company ("Lincoln"). Maedeh uses the Complaint's defined terms for convenience only; doing so is not an admission that any defined term is accurate or that any characterization in the Complaint is correct. The Complaint's headings and unnumbered text are not allegations to which a response is required, and to the extent any of them is construed as an allegation, Maedeh denies it. Except as expressly admitted below, Maedeh denies each allegation of the Complaint. Where Maedeh states below that she lacks knowledge or information sufficient to form a belief about the truth of an allegation, that statement has the effect of a denial under Federal Rule of Civil Procedure 8(b)(5).

### Parties

1. Responding to Paragraph 1 of the Complaint, Maedeh admits the allegations.
2. Responding to Paragraph 2 of the Complaint, based on the Answer of Farkhondeh Mirzadeh to the Complaint, Maedeh admits the allegations.
3. Responding to Paragraph 3 of the Complaint, Maedeh admits the allegations.
4. Responding to Paragraph 4 of the Complaint, based on the Answer of Soheyla Sandoval to the Complaint, Maedeh admits the allegations.
5. Responding to Paragraph 5 of the Complaint, based on the Answer of Zahra Mirzadeh to the Complaint, Maedeh admits the allegations.
6. Responding to Paragraph 6 of the Complaint, based on the Answer of Tahereh Mirzadeh to the Complaint, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegations and on that basis denies them. Maedeh admits Tahereh is the sister of Decedent.
7. Responding to Paragraph 7 of the Complaint, based on the Answer of Mohsen

Mirzadeh to the Complaint, Maedeh admits the allegations.

8. Responding to Paragraph 8 of the Complaint, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegations, including the existence and identity of any other claimant to the Policy proceeds, and on that basis denies them. The final sentence of Paragraph 8 describes Lincoln's intended future conduct and requires no response.

**Jurisdiction and Venue**

9. Responding to Paragraph 9 of the Complaint, the allegations state legal conclusions to which no response is required. To the extent a response is required, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

10. Responding to Paragraph 10 of the Complaint, the allegations state legal conclusions to which no response is required. To the extent a response is required, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

11. Responding to Paragraph 11 of the Complaint, the allegations state legal conclusions to which no response is required. Count III is asserted solely against Defendant Soheyla Sandoval, and no response from Maedeh to the allegations directed to that count is required. To the extent a response is required, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegations and on that basis denies them.

12. Responding to Paragraph 12 of the Complaint, the allegations state a legal conclusion to which no response is required. To the extent a response is required, Maedeh does not contest venue in this District. Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegation that a substantial part of the events giving rise to the claims occurred in this District and on that basis denies it.

**Factual Background**

13. Responding to Paragraph 13 of the Complaint, Maedeh admits, on information and belief, that on or about March 30, 2023, Lincoln issued life insurance policy no. IUL1062973 on the life of the Decedent, and that the Policy provides a $5 million death benefit. Maedeh lacks knowledge or information sufficient to form a belief about whether the copy of the Policy attached to the Complaint as Exhibit A is a complete and accurate copy of the Policy as issued, including all amendments and riders, and on that basis denies that allegation.

14. Responding to Paragraph 14 of the Complaint, Maedeh admits that the Policy contains the language quoted in Paragraph 14 and denies any characterization of the Policy that is inconsistent with its terms. Except as admitted, Maedeh denies the allegations of Paragraph 14.

15. Responding to Paragraph 15 of the Complaint, Maedeh admits the allegation except for when Lincoln received the 2023 Beneficiary Designation. Maedeh lacks knowledge or information sufficient to form a belief about when Lincoln received the form and on that basis denies that allegation.

16. Responding to Paragraph 16 of the Complaint, Maedeh admits that Lincoln received a document dated October 6, 2024 purporting to change the beneficiaries. Maedeh denies that the document effected a valid change of beneficiary. Except as expressly admitted, Maedeh denies the allegations.

17. Responding to Paragraph 17 of the Complaint, Maedeh admits that the Policy contains the language quoted in Paragraph 17 and denies any characterization of the Policy that is inconsistent with its terms. Except as admitted, Maedeh denies the allegations of Paragraph 17.

18. Responding to Paragraph 18 of the Complaint, Maedeh admits that the Decedent died on October 11, 2024. Except as admitted, Maedeh denies the allegations of Paragraph 18.

19. Responding to Paragraph 19 of the Complaint, on information and belief, Maedeh denies the allegations of Paragraph 19, which concern when Lincoln first received proof of the Decedent's death.

20. Responding to Paragraph 20 of the Complaint, Maedeh denies the allegation.

21. Responding to Paragraph 21 of the Complaint, on information and belief, Maedeh admits Lincoln sent funds to Soheyla identified as death benefits under the Policy. Except as admitted, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

22. Responding to Paragraph 22 of the Complaint, Maedeh admits, on information and belief, that counsel for Mohsen Mirzadeh notified Lincoln on January 31, 2025 of a dispute concerning the validity of the 2024 Beneficiary Designation. Maedeh lacks knowledge or information sufficient to form a belief about whether this was Lincoln's first notice of any dispute and on that basis denies that allegation. Except as expressly admitted, Maedeh lacks knowledge or information sufficient to form a belief about the remaining allegations and on that basis denies them.

23. Responding to Paragraph 23 of the Complaint, Maedeh admits that Mohsen Mirzadeh commenced an action in the Superior Court of California, County of Orange, challenging the purported 2024 beneficiary changes (the "State Court Action"). Maedeh lacks knowledge or information sufficient to form a belief about when counsel furnished Lincoln the complaint or whether Exhibit B is a complete and accurate copy, and on that basis denies those allegations. Except as expressly admitted, Maedeh denies the allegations.

**Count I — Interpleader Relief**

24. Responding to Paragraph 24 of the Complaint, Maedeh incorporates her responses in paragraphs 1 through 23 of this Answer as though fully set forth here.

25. Responding to Paragraph 25 of the Complaint, Maedeh admits that she claims an interest in the Policy benefits and, on information and belief, that other Defendants assert claims to those benefits. Maedeh lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations and on that basis denies them.

26. Responding to Paragraph 26 of the Complaint, Maedeh denies the allegations.

27. Responding to Paragraph 27 of the Complaint, Maedeh denies the allegations.

28. Responding to Paragraph 28 of the Complaint, Maedeh denies the allegations.

29. Responding to Paragraph 29 of the Complaint, the paragraph describes Lincoln's intended future conduct and requires no response. To the extent a response is required, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegations and on that basis denies them.

**Count II — Declaratory Relief**

30. Responding to Paragraph 30 of the Complaint, Maedeh incorporates her responses in paragraphs 1 through 29 of this Answer as though fully set forth here.

31. Responding to Paragraph 31 of the Complaint, the paragraph purports to quote California Insurance Code section 10172 and states a legal conclusion to which no response is required. To the extent a response is required, Maedeh denies any characterization of the Code Section that is inconsistent with its terms. Except as admitted, Maedeh denies the allegations of Paragraph 31.

32. Responding to Paragraph 32 of the Complaint, Maedeh lacks knowledge or information sufficient to form a belief about the truth of the allegations and on that basis denies them.

33. Responding to Paragraph 33 of the Complaint, Maedeh admits that an actual controversy exists between Lincoln and her concerning whether Lincoln is discharged from liability with respect to its payment to Soheyla Sandoval. Maedeh denies that Lincoln is entitled to the discharge it seeks. Except as

expressly admitted, Maedeh denies the allegations.

34. Responding to Paragraph 34 of the Complaint, the allegations state legal conclusions to which no response is required. To the extent a response is required, Maedeh denies the allegations.

35. Responding to Paragraph 35 of the Complaint, the paragraph states a legal conclusion to which no response is required. To the extent a response is required, Maedeh denies the allegations.

**Count III — Unjust Enrichment or Mistaken Receipt**

36. Responding to Paragraph 36 of the Complaint, Maedeh incorporates her responses in paragraphs 1 through 35 of this Answer as though fully set forth here.

37. Responding to Paragraph 37 of the Complaint, Count III is asserted solely against Soheyla Sandoval, and no response from Maedeh is required.

38. Responding to Paragraph 38 of the Complaint, Count III is asserted solely against Soheyla Sandoval, and no response from Maedeh is required.

39. Responding to Paragraph 39 of the Complaint, Count III is asserted solely against Soheyla Sandoval, and no response from Maedeh is required.

40. Responding to Paragraph 40 of the Complaint, Count III is asserted solely against Soheyla Sandoval, and no response from Maedeh is required.

41. Responding to Paragraph 41 of the Complaint, the paragraph requests relief, states legal conclusions, and is directed solely to Soheyla Sandoval, and no response from Maedeh is required.

**Response to Prayer for Relief**

Responding to Paragraph "Prayer for Relief" of the Complaint, the Prayer for Relief is not an allegation, and no response is required. To the extent a response is required, Maedeh denies that Lincoln is entitled to the relief it requests.

**AFFIRMATIVE AND OTHER DEFENSES**

42. Maedeh alleges the following defenses to the claims and relief that Lincoln

asserts against her, which are Count I, Count II, and Paragraphs 1 through 5 of the Prayer for Relief. She pleads them in the alternative and hypothetically, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit, and without admitting any allegation of the Complaint that she has denied above. By pleading a matter below, Maedeh does not assume a burden of proof that the law places on Lincoln or another party.

## FIRST DEFENSE

### Failure of Condition Precedent: Delivery Before the Insured's Death

43. The Policy makes delivery to Lincoln before the Insured's death a condition of any change of beneficiary. It provides that "[t]he Insured need not be living when the requested change is received at our Service Office, however the requested change must be delivered to us prior to the death of the Insured," and it defines "In Writing" as "a written form of communication received at our Service Office." (ECF No. 26-3, Ex. A at 32, 35.) Lincoln alleges that the Decedent died on October 11, 2024 (Complaint ¶ 18) and that it received the 2024 form "[i]n or around October 2024" (Complaint ¶ 16). Lincoln does not allege when, where, or how it received the form, or that the condition occurred. Under Federal Rule of Civil Procedure 9(c), Maedeh denies with particularity that the condition occurred.

44. The Decedent's death certificate states he died at 7:30 a.m. on October 11, 2024, at his residence in Irvine, California. On information and belief, no Request in the form dated October 6, 2024 was delivered to Lincoln, or received In Writing at its Service Office, before that time. The only transmission to Lincoln of which Maedeh is aware is an email sent at 11:18 a.m. Eastern Time on October 11, 2024, no earlier than 8:18 a.m. Pacific Time, from Michelle Johnson, Office Manager for Ahmad Hashemian, to a Lincoln customer-service email address, which Lincoln's customer-service team forwarded internally at 11:19 a.m. These emails were sent after the

Decedent's death.

45. To the extent the form was in the hands of the insurance agent who witnessed it on October 6, 2024, that was not delivery to Lincoln: the Policy application provides that "[n]o agent, broker or medical examiner has the authority to make or modify any Company contract or to waive any of the Company's requirements." (ECF No. 26-3, Ex. A at 65.) When the Policy allows for delivery to an agent to be effective, it states that to be the case. The Policy does not state that delivery of a beneficiary designation can be made to an agent. Because the condition failed, the 2024 form did not change the 2023 Beneficiary Designation, which remained the operative designation.

**SECOND DEFENSE**

**No Discharge Under Section 10172: Payment Not in Accordance with the Policy**

46. Section 10172 does not discharge Lincoln from liability for its January 2025 payment to Ms. Sandoval because that payment was not made "in accordance with the terms of the policy." The Policy provides that, when more than one beneficiary is designated, proceeds "will be paid in equal shares to the survivors in the appropriate Beneficiary designation (primary, contingent, and second contingent), unless you submit a Request otherwise." (ECF No. 26-3, Ex. A at 35.) On information and belief, when Lincoln paid Ms. Sandoval 32.64% of the death benefit, it had the form, the time of death, and the date and manner of its receipt of the 2024 Beneficiary designation. This information was sufficient to determine payment under the 2024 Beneficiary designation was not in accordance with the terms of the Policy. Complaint ¶ 31 quotes section 10172 as discharging an insurer that "makes payment thereof in accordance with the terms of the policy." Payment on this form was not made in accordance with those terms.

**THIRD DEFENSE**

**Formal Defects in the 2024 Form**

47. The 2024 form states that "[n]otarization is required if the signer must sign with an 'X' and stamped signatures will not be accepted." (ECF No. 26-3, Ex. C at 91.) On information and belief, the signature on the 2024 form is preceded by the mark "X," and no notarization appears on the form. The form is completed in typed text, whereas the 2023 form is handwritten, and it names as witness Ahmad Hashemian, whose office submitted it. On information and belief, the signature on the 2024 form was not the Decedent's own unaided act but rather was done only via the physical manipulation of Decedent's body by his siblings. On information and belief, the 2024 form did not satisfy the requirements that Lincoln's own form states and is not a valid Request under the Policy.

**FOURTH DEFENSE**

**Undue Influence**

48. In the alternative, and even if the 2024 form was delivered before the Decedent's death and is otherwise effective on its face, it is invalid because, on information and belief, it was procured by undue influence exerted on the Decedent by one or more persons who stood to benefit from it. Compared with the 2023 Beneficiary Designation, the 2024 form increased Soheyla Sandoval's designated share from 15% to 32.64%, increased Zahra Mirzadeh's from 10% to 17.36%, reduced Farkhondeh Mirzadeh's from 35% to 30%, reduced Maedeh's from 20% to 10%, and removed Mohsen Mirzadeh. On information and belief, the Decedent was terminally ill when he is purported to have signed the form, the signature was made with the physical assistance of another person, and the Decedent died five days later, on October 11, 2024, of pancreatic cancer, at his residence. Counsel for Mohsen Mirzadeh has alleged to Lincoln that the 2024 Beneficiary Designation was "the result of

undue influence and abusive practices." (Complaint ¶ 22.)

**FIFTH DEFENSE**

**Lack of Capacity**

49. In the alternative, on information and belief, the Decedent, who was terminally ill with pancreatic cancer and died five days later, lacked the capacity to execute the 2024 form on October 6, 2024, and it is therefore invalid. On information and belief, the Decedent also required another person's physical assistance to make the signature on the form.

**SIXTH DEFENSE**

**Unclean Hands: Lincoln Created the Controversy and May Not Obtain Discharge or an Injunction**

50. Lincoln is not entitled to the equitable relief it requests, including discharge from liability and an injunction, because the controversy it asks the Court to resolve arose from its own conduct. Lincoln accepted and recorded as "the beneficiary designation of record" (Complaint ¶ 20) a form that, on its face, bore an "X" signature mark without the notarization that Lincoln's own form requires, and that Lincoln had not received before the Decedent died. It paid Ms. Sandoval $1,636,856.83 on that form on or about January 24, 2025, about three and one-half months after the Decedent's death (Complaint ¶¶ 18, 21) and knowing that it had not received the form prior to Decedent's death as required by the Policy.

51. It received notice of a dispute on January 31, 2025, learned of the State Court Action by August 2025, and did not file this action until May 7, 2026 (Complaint ¶¶ 22, 23). It now seeks both to keep the remaining benefits out of the claimants' hands, subject to fees, and to recover part of its own payment from Ms. Sandoval (Complaint ¶¶ 36–41, Prayer ¶ 6). On information and belief, Lincoln's acceptance of the 2024 form, its failure to identify the defects described above before it paid, and its payment caused the claimants to litigate

among themselves.

52. Interpleader of the remaining benefits does not discharge Lincoln from liability to Maedeh for damages caused by Lincoln's own conduct, including damages beyond the amount of the stake, and it does not warrant an order enjoining Maedeh from asserting claims against Lincoln about its payment to Ms. Sandoval. If the 2023 Beneficiary Designation governs, the remaining $3,368,000 is less than the amount payable to the beneficiaries other than Ms. Sandoval, and Maedeh is entitled to preserve her claims for the resulting shortfall.

## SEVENTH DEFENSE

### Lincoln Is Not a Disinterested Stakeholder and Is Not Entitled to Fees and Costs from the Policy Benefits

53. Lincoln is not a disinterested stakeholder, and it should not recover its attorney's fees and costs from the Policy benefits, or its recovery should be reduced, because it asserts its own claim to recover a portion of the death benefit through Count III and Paragraph 6 of its Prayer for Relief, and because the controversy arises in material part from its own conduct as alleged in paragraphs 50 through 52 of this Answer.

## EIGHTH DEFENSE

### Failure to Deposit or Post Bond: 28 U.S.C. § 1335

54. Complaint ¶ 29 alleges only that Lincoln "will deposit" the remaining Policy benefits into the Registry of the Court. On information and belief, as of the date of this pleading Lincoln has neither deposited the remaining benefits nor posted a bond, and it therefore has not satisfied the deposit requirement on which jurisdiction under 28 U.S.C. § 1335 depends.

## PRAYER ON THE ANSWER AND DEFENSES

Maedeh requests that the Court:

1. Deny Lincoln's request for a declaration of discharge under California

Insurance Code section 10172 and for discharge from liability with respect to its payment to Soheyla Sandoval or the Policy;

2. Deny Lincoln's request to enjoin Maedeh from asserting claims against Lincoln concerning that payment or Lincoln's independent liability;

3. Deny Lincoln's request for attorney's fees and costs from the Policy benefits, or reduce any award as appropriate;

4. Determine that the 2023 Beneficiary Designation governs and that interpleader does not discharge Lincoln from liability for damages caused by its own conduct or cap that liability at the amount of the stake;

5. Order distribution of the Policy proceeds, with interest, to Maedeh in accordance with that determination; and

6. Award such other relief as the Court deems just and proper.

## COUNTERCLAIMS AND CROSSCLAIMS

## DEMAND FOR JURY TRIAL

55. Defendant-in-Interpleader Maedeh Mirzadeh ("Maedeh") asserts counterclaims against Plaintiff-in-Interpleader The Lincoln National Life Insurance Company ("Lincoln") under Federal Rule of Civil Procedure 13(a), and crossclaims under Rules 13(g) and 18(a) against Defendants-in-Interpleader Soheyla Sandoval ("Soheyla"), Zahra Mirzadeh ("Zahra"), Farkhondeh Mirzadeh ("Farkhondeh"), Tahereh Mirzadeh ("Tahereh"), and Mohsen Mirzadeh ("Mohsen"). The Fourth Claim is asserted against Soheyla and Zahra only. The Fifth Claim is asserted against all five crossclaim defendants. Maedeh pleads in the alternative as permitted by Rule 8(d)(2) and (3), preserves the denials and defenses in her Answer, and demands a jury trial on all issues so triable.

## PRELIMINARY ALLEGATIONS

### Parties

56. Maedeh is a citizen and resident of the Federal Republic of Germany and a

sister of the decedent, Ghasem Mirzadeh (the "Decedent").

57. Maedeh is informed and believes that Lincoln is a corporation incorporated in the State of Indiana, and with its principal place of business in Pennsylvania, authorized to transact and transacting business in California.

58. Soheyla is a sister of the Decedent, a signatory to the November 2, 2024 Agreement described below, and, according to her answer to Lincoln's Complaint, a citizen and resident of California residing in Orange County.

59. Zahra is a sister of the Decedent, a signatory to the November 2, 2024 Agreement described below, and, according to her answer to Lincoln's Complaint, on information and belief, a citizen and resident of the Federal Republic of Germany.

60. Farkhondeh is a sister of the Decedent, a signatory to the November 2, 2024 Agreement described below, and a Defendant-in-Interpleader who has appeared in this action. On information and belief, Farkhondeh is a citizen and resident of California.

61. Tahereh is a sister of the Decedent, a signatory to the November 2, 2024 Agreement described below, and a Defendant-in-Interpleader who has appeared through counsel in this action. On information and belief, Tahereh is a citizen of the Federal Republic of Germany.

62. Mohsen is a brother of the Decedent, a signatory to the November 2, 2024 Agreement described below, and a Defendant-in-Interpleader who has appeared in this action. On information and belief, based on his answer to the Complaint, Mohsen is a citizen and resident of California.

63. Farkhondeh, Tahereh, and Mohsen are named as crossclaim defendants in the Fifth Claim for declaratory relief only. Maedeh seeks a declaration binding all signatories concerning their respective rights and obligations under the Agreement, and does not seek damages against Farkhondeh, Tahereh, or Mohsen.

**Jurisdiction and Venue**

64. The Court has original jurisdiction over Maedeh's counterclaims against Lincoln under 28 U.S.C. § 1332(a)(2). Maedeh is a citizen and resident of Germany, Lincoln is incorporated in Indiana and has its principal place of business in Pennsylvania, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The counterclaims also arise from the same Policy, beneficiary designations, claim handling, payment, and withholding of proceeds at issue in Lincoln's Complaint and fall within 28 U.S.C. § 1367(a).

65. The Court has supplemental jurisdiction over the crossclaims against Soheyla, Zahra, Farkhondeh, Tahereh, and Mohsen under 28 U.S.C. § 1367(a). The crossclaims concern the same competing claims to the Lincoln proceeds at issue in the original action and the signatories' subsequent Agreement resolving uncertainty or disagreement over the October 6, 2024 changes. They form part of the same case or controversy as the claims within the Court's original jurisdiction.

66. The claims concerning other Covered Assets arise from the formation, scope, performance, and breach of that same Agreement, which also governs the signatories' allocation of the Lincoln proceeds. Those claims share common facts and evidence with the claims concerning the Lincoln proceeds and fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). The crossclaims concerning the Lincoln proceeds are authorized by Rule 13(g), and additional claims against the opposing crossclaim defendants are joined under Rule 18(a). Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202; those provisions supply a remedy rather than an independent basis of subject-matter jurisdiction.

67. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here, including the purported execution of the 2024 Form in Irvine and the Decedent's death

there. The counterclaims and crossclaims arise in the pending action concerning those events and the resulting rights to the Policy proceeds.

## STATEMENT OF FACTS CONCERNING LINCOLN

### The Policy

68. Lincoln issued life insurance policy no. IUL1062973 on the Decedent's life on or about March 30, 2023, with a $5,000,000 death benefit (the "Policy"). The Policy's Owner was initially Sina Corporation and ownership of the Policy was later transferred to the Decedent. At all times relevant, Decedent was the owner of the Policy.

69. All premiums due to keep the Policy in force through the Decedent's death were paid, and the Policy was in force when the Decedent died.

70. The Policy states that Lincoln agrees to pay the Death Benefit Proceeds to the Beneficiary. The Policy was issued for the benefit of the persons the Owner designated as Beneficiaries, and a person so designated, including Maedeh, is an intended beneficiary of Lincoln's promise to pay.

71. The Policy provides that, "[w]hile the Insured is alive, you may change the Beneficiary by submitting a Request," and that "[t]he Insured need not be living when the requested change is received at our Service Office, however the requested change must be delivered to us prior to the death of the Insured." "We," "our," and "us" mean "The Company." "In Writing" means "a written form of communication received at our Service Office."

72. The Policy application, which is attached to and is part of the Policy, states that "[n]o agent, broker or medical examiner has the authority to make or modify any Company contract or to waive any of the Company's requirements."

### The Beneficiary Designations

73. On December 19, 2023, the Decedent signed a Lincoln beneficiary-change form designating as beneficiaries Farkhondeh Mirzadeh, 35%; Maedeh, 20%;

Soheyla, 15%; Zahra, 10%; Tahereh Mirzadeh, 10%; and Mohsen Mirzadeh, 10%, totaling 100% (the "2023 Designation"). Lincoln accepted it.

74. Lincoln alleges that it received a subsequent change of beneficiary form dated October 6, 2024 (the "2024 Form"). As Lincoln alleges, the 2024 Form lists Farkhondeh Mirzadeh at 30%, Maedeh at 10%, Soheyla at 32.64%, Zahra at 17.36%, and Tahereh Mirzadeh at 10%, and does not list Mohsen Mirzadeh.

75. The 2024 Form states that "[n]otarization is required if the signer must sign with an 'X' and stamped signatures will not be accepted." On information and belief, the signature on the 2024 Form is preceded by an "X," the form is not notarized, and it names as witness Ahmad Hashemian, the person whose office submitted it.

76. On information and belief, the signature on the 2024 Form was made with the physical assistance of another person and was not the Decedent's own unaided act. The signature of the owner on the 2024 Form does not match Decedent's signature on the 2023 Designation.

**The Decedent's Death and Lincoln's Receipt of the 2024 Form**

77. According to his death certificate, the Decedent died at 7:30 a.m. on October 11, 2024, at his residence in Irvine, California.

78. The first transmission to Lincoln of the 2024 Form is an email sent at 11:18 a.m. Eastern Time on October 11, 2024, no earlier than 8:18 a.m. Pacific Time, from Michelle Johnson, Office Manager for Ahmad Hashemian, to a Lincoln customer-service email address, which Lincoln's customer-service team forwarded internally at 11:19 a.m. These emails were sent after the Decedent's death.

79. The 2024 Form was not delivered to Lincoln, or received at its Service Office, before the Decedent's death.

**Lincoln's Handling of the Claims**

80. On information and belief, Lincoln received proof of the Decedent's death via

his death certificate on or before December 16, 2024, over a month before it made any payment on the Policy.

81. No later than October 21, 2024, Maedeh contacted Lincoln to claim her share of the death benefit. She submitted a claim and provided all information she was required to provide in support of her claim. Lincoln has not made a determination regarding her claim and has not paid her any benefits under the Policy, including benefits Lincoln asserts are indisputably owed to her (i.e. 10% of the Policy benefit).

82. On information and belief, on or about January 24, 2025, Lincoln paid Soheyla $1,636,856.83, consisting of 32.64% of the death benefit ($1,632,000.00) and $4,856.83 in interest, on the 2024 Form. (Complaint ¶ 21.)

83. When Lincoln made that payment, it had the 2024 Form, the Decedent's date and time of death, and the date, time, and manner of its receipt of the form. Lincoln thus knew the form had not been delivered before the Decedent's death or satisfied Lincoln's own requirements, did not require the notarization its form calls for, and did not inquire into the circumstances in which a signature preceded by an "X" was made; did not hold the proceeds pending resolution of those questions; and did not explain to Maedeh the basis on which it treated the 2024 Form as effective or why it was not paying her claim.

84. Lincoln learned of a dispute over the 2024 Form on January 31, 2025, and of the action brought by Mohsen in the Superior Court of California, County of Orange, challenging the purported 2024 beneficiary changes (the "State Court Action") by August 2025, and it filed this action on May 7, 2026. Lincoln has not deposited any Policy benefits with the Court.

85. Lincoln's acceptance, recording, and implementation of the 2024 Form, and its payment to Soheyla on that form, created or materially aggravated the controversy over entitlement to the Policy proceeds. Lincoln's payment left

the remaining proceeds insufficient to satisfy the shares of the beneficiaries other than Soheyla under the 2023 Designation. As a direct and proximate result, Maedeh has been required to litigate against Soheyla, Zahra, and other adverse claimants to establish and protect her entitlement to the Policy proceeds, and has incurred and will incur reasonable attorney's fees and litigation expenses in doing so.

86. Maedeh seeks those reasonable attorney's fees and litigation expenses as damages under the tort-of-another doctrine, to the extent proximately caused by Lincoln's tortious conduct. Separately, as a result of Lincoln's breach of the implied covenant of good faith and fair dealing, Maedeh has incurred and will incur reasonable attorney's fees necessary to recover the benefits due under the Policy. These damages do not include fees incurred solely to establish Lincoln's tort liability or to recover emotional-distress or punitive damages, and Maedeh does not seek duplicate recovery of any fee or expense.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### Against Lincoln

87. Maedeh incorporates by reference paragraphs 55 through 86 as if set forth fully herein.

88. The Policy is a valid contract between Lincoln and its Owner, made for the benefit of the Beneficiary designated under it. Maedeh is an intended third-party beneficiary of the Policy and may enforce Lincoln's promise to pay. Under the 2023 Designation, which is the last valid beneficiary designation, Maedeh is entitled to 20% of the death benefit.

89. The Policy was in force at the Decedent's death; the Decedent died; Lincoln received due proof of death; and Maedeh submitted a claim. All conditions to Lincoln's obligation to pay Maedeh occurred or were excused.

90. Lincoln breached the Policy by, among other things: (a) paying 32.64% of the

death benefit to Soheyla on a change-of-beneficiary Request that was not delivered to Lincoln before the Insured's death; (b) acting on a purported Request signed with an "X" and not notarized, contrary to Lincoln's own stated requirement; and (c) failing to pay Maedeh her share of the death benefit after due proof of death and her claim.

91. As a direct and proximate result of Lincoln's breach, Maedeh has suffered contractual damages under the Policy, plus interest and other incidental damages and out-of-pocket expenses, in an amount to be determined at trial and not less than the unpaid portion of her $1,000,000 share. Lincoln's obligation to pay Maedeh is not contingent on her first recovering funds from Soheyla or any other person. Maedeh pleads her recovery theories concurrently and in the alternative, with credit for amounts actually recovered from the interpleaded funds or another party as compensation for the same loss, so that she does not receive a duplicate recovery.

## SECOND CLAIM FOR RELIEF

### Breach of the Implied Covenant of Good Faith and Fair Dealing Against Lincoln

92. Maedeh incorporates by reference paragraphs 55 through 91 as if set forth fully herein.

93. Lincoln owed Maedeh, as a person designated to receive the Policy proceeds, the duty of good faith and fair dealing implied in every insurance contract.

94. Lincoln breached that duty in the following respects:

(a) Unreasonably withholding and diverting benefits from Maedeh, at a time when Lincoln had in its possession the date of death and the date and manner of its receipt of the 2024 Form and knew or should have known that the 2023 Designation was the operative designation;

(b) Paying a 32.64% share to Soheyla on a form bearing an "X" signature mark without the notarization Lincoln requires, which Lincoln had received

after the Insured's death, without determining whether it was a valid and timely Request;

(c) Unreasonably failing to investigate, before paying, whether the 2024 Form was delivered before the Insured's death and satisfied Lincoln's own requirements;

(d) Unreasonably failing to provide Maedeh a prompt and reasonable explanation of the basis, under the Policy and the facts, on which it treated the 2024 Form as effective and withheld her share;

(e) Unreasonably delaying payment, including by holding the remaining benefits from at least January 31, 2025 until it filed this action on May 7, 2026, and by not depositing them with the Court;

(f) Applying the Policy's provisions selectively and accepting a form that did not satisfy the Policy's delivery requirement or Lincoln's own notarization requirement; and

(g) Compelling Maedeh to litigate against Lincoln and the other claimants to recover the benefits due to her.

95. As a proximate result of Lincoln's conduct, Maedeh has suffered, and will continue to suffer, damages under the Policy, plus interest, in an amount to be shown at trial.

96. As a further proximate result, Maedeh has suffered anxiety, worry, and mental and emotional distress, in an amount to be determined at trial.

97. As a further proximate result, Maedeh was compelled to retain counsel to obtain the Policy benefits due to her. Lincoln is liable under Brandt v. Superior Court for the reasonable attorney's fees necessary and incurred to recover those benefits, in an amount to be determined at trial, excluding fees incurred solely to prosecute the bad-faith claim or to recover emotional-distress or punitive damages.

98. As a further proximate result of Lincoln's tortious conduct, Maedeh has

incurred and will incur reasonable attorney's fees and litigation expenses in litigating against Soheyla, Zahra, and other adverse claimants to establish and protect her entitlement to the Policy proceeds. Those fees and expenses are sought as damages under the tort-of-another doctrine, to the extent proximately caused by Lincoln's conduct, with no duplicate recovery of any fee or expense.

99. Lincoln's conduct was despicable, was carried on with a willful and conscious disregard of Maedeh's rights, and constitutes malice, oppression, or fraud under California Civil Code § 3294, entitling Maedeh to punitive damages.

**THIRD CLAIM FOR RELIEF**

**Negligence**

**Against Lincoln**

100. Maedeh incorporates by reference paragraphs 55 through 99 as if set forth fully herein.

101. Lincoln undertook to administer the Policy and to process, accept, record, and implement beneficiary designations, and it accepted the 2023 Designation naming Maedeh as a 20% Beneficiary. Its administration of the beneficiary-change process directly determined who would receive the Policy proceeds and was intended to affect the designated Beneficiaries, including Maedeh. It was foreseeable that negligently accepting, recording, or implementing an ineffective beneficiary change, and paying proceeds on it, would impair the intended Beneficiaries' ability to recover their shares and cause or materially aggravate a dispute among claimants.

102. In administering the beneficiary-change process, Lincoln owed Maedeh a duty to use reasonable care in processing, accepting, recording, and implementing the 2024 Form, including by determining whether it was a valid Request delivered to Lincoln before the Insured's death and whether it satisfied Lincoln's own requirements. Lincoln breached that duty by accepting,

recording, and implementing the 2024 Form and paying Soheyla on it as alleged above. This claim concerns Lincoln's negligent administration and implementation of the purported beneficiary change and resulting mispayment, in addition to its subsequent withholding of benefits.

103. Lincoln's negligence directly and proximately deprived Maedeh of the use of benefits due under the 2023 Designation, impaired her ability to recover her 20% share, and caused or materially aggravated the controversy over entitlement to the Policy proceeds. By implementing the 2024 Form and paying Soheyla $1,632,000 in principal, Lincoln left the remaining proceeds insufficient to satisfy the shares of the other Beneficiaries under the 2023 Designation and required Maedeh to litigate her entitlement against adverse claimants. Maedeh has suffered damages in an amount to be proved at trial, including loss of use of the unpaid benefits, impairment of recovery, and reasonable attorney's fees and litigation expenses proximately caused by Lincoln's negligence.

104. Specifically, Maedeh has incurred and will incur reasonable attorney's fees and litigation expenses in litigating against Soheyla, Zahra, and other adverse claimants to establish and protect her entitlement to the Lincoln Policy proceeds. Those fees and expenses are recoverable as damages under the tort-of-another doctrine to the extent proximately caused by Lincoln's negligence. This request does not include fees incurred solely to prosecute Maedeh's negligence claim against Lincoln or to enforce the Agreement as to assets unrelated to the Lincoln Policy.

105. Interpleader does not discharge Lincoln from liability for damages independently caused by its negligence or limit that liability to the amount of the stake. Maedeh seeks recovery under this claim concurrently with, or in the alternative to, her other recovery theories, with appropriate credits for amounts actually recovered as compensation for the same loss and without duplicate

recovery of benefits, fees, expenses, or other damages.

## STATEMENT OF FACTS CONCERNING THE NOVEMBER 2, 2024 AGREEMENT FOR THE FOURTH AND FIFTH CLAIMS FOR RELIEF

### The Agreement

106. Maedeh incorporates by reference paragraphs 55 through 84 as if set forth fully herein.

107. The Decedent died on October 11, 2024. By a document dated November 2, 2024, his six surviving siblings, Farkhondeh Mirzadeh, Maedeh (signing as "Maedeh Mirzadeh-Kruse"), Soheyla Sandoval, Zahra Mirzadeh, Tahereh Mirzadeh, and Mohsen Mirzadeh, each signed a written "Agreement as to the distribution of assets of Ghasem Mirzadeh by his surviving siblings" (the "Agreement").

108. In the Agreement the siblings "agree that the changes to his will or any change to the surviving dependents' inheritance supposed to take effect on October 6, 2024 (5 days before his death), are not valid, and accept the Trust from November 14. 2023, as confirmed by a lawyer." They further state: "We accept that all the money in his bank accounts, any life insurances, other insurances and other investments, will be distributed in his Trust according to the percentages listed as follows," and list Farkhondeh Mirzadeh, 35%; Maedeh, 20%; Soheyla, 15%; Zahra, 10%; Tahereh Mirzadeh, 10%; and Mohsen Mirzadeh, 10%.

109. The percentages in the Agreement are the percentages in the Decedent's December 19, 2023 Lincoln beneficiary designation. The Agreement reaches "any life insurances," which includes the Lincoln Policy, policy no. IUL1062973, on the Decedent's life. In this section, the "2024 Form" refers to the purported Lincoln beneficiary-change form dated October 6, 2024.

110. When the siblings entered into the Agreement, they faced uncertainty or disagreement concerning the purported October 6, 2024 changes and the

resulting allocation of the Decedent's assets. Among other reasons for entering into the Agreement, they agreed to resolve that uncertainty or disagreement by accepting the stated allocation as binding among themselves. Each signatory made the promises in the Agreement in exchange for the promises of the other signatories that the October 6, 2024 changes would not be treated as valid and that the assets covered by the Agreement would be distributed according to the stated percentages. As among the signatories, those allocation obligations apply regardless of whether a purported October 6, 2024 beneficiary designation would otherwise be enforceable against an insurer.

111. Maedeh has honored the agreed allocation and has not claimed a share of the assets covered by the Agreement greater than her agreed 20%. She has performed her obligations under the Agreement, except to the extent performance has been excused or prevented by Soheyla's or Zahra's conduct, and remains ready, willing, and able to perform any outstanding concurrent obligations.

**The Lincoln Proceeds**

112. Lincoln paid Soheyla $1,636,856.83 of the Policy proceeds on or about January 24, 2025, consisting of $1,632,000 in principal and $4,856.83 in interest. (Complaint ¶ 21.) Her 15% share of the $5,000,000 principal under the Agreement is $750,000. She therefore received $882,000 in excess principal, together with any interest attributable to that excess. Lincoln holds the remaining $3,368,000 in principal. (Complaint ¶ 25.) The signatories other than Soheyla are collectively entitled under the Agreement to $4,250,000 in principal, leaving a collective principal shortfall of $882,000. Maedeh's individual 20% share of the Lincoln principal is $1,000,000, none of which Lincoln has paid her. The collective shortfall is distinct from Maedeh's individual unpaid share and damages.

113. Soheyla has refused to redistribute the excess Lincoln proceeds she received in

accordance with the Agreement. Her refusal is also reflected in her position in this action that the 2024 Form "was valid and effective," that she "was properly paid in accordance with that designation," and that Lincoln's payment to her "was not mistaken, improper, or erroneous." (ECF No. 24, Twelfth and Thirteenth Affirmative Defenses.) Zahra has likewise refused to honor the Agreement's allocation of the Lincoln proceeds and has asserted that, "pursuant to the beneficiary designation," she "is entitled to a distribution [of] 17.36% of the life insurance policy." (ECF No. 31 ¶ 6.) Those positions evidence the controversy over their contractual obligations and their refusal to honor the agreed allocation; Maedeh's breach claim is based on their failure and refusal to perform those obligations.

**Other Insurance, Annuities, Retirement Accounts, and Investments**

114. On information and belief, in addition to the Lincoln Policy, the Decedent arranged for or maintained the following life insurance policies, annuities, retirement accounts, and other investments, as identified in Mohsen Mirzadeh's First Amended Complaint filed in the Superior Court of California, County of Orange. The listed values are approximate asset values, not allegations that the listed amounts were actually paid to any particular recipient:

(a) Allianz Life Insurance Company of North America: approximately $1,085,000;

(b) John Hancock Life Insurance Company: approximately $250,000;

(c) Athene Annuity and Life Company: approximately $575,800;

(d) Jackson National Life Insurance Company IRA: approximately $80,300;

(e) Jackson National Life Insurance Company SEP: approximately $226,400;

(f) Jackson National Life Insurance Company IND: approximately

$346,400;

(g) Life of the Southwest SEP: approximately $69,000;

(h) Life of the Southwest IND: approximately $57,100;

(i) Vinebrook Homes Trust, Inc. A Share: approximately $206,294.29; and

(j) Strategic Storage Growth Trust III: approximately $54,592.

115. The Lincoln Policy and the other policies, annuities, accounts, and investments described above, together with other life insurance policies and annuities on or relating to the Decedent that are subject to the Agreement, are referred to herein as the "Covered Assets." The Agreement's references to "any life insurances, other insurances and other investments" encompass the Covered Assets and their proceeds, including annuity death benefits and other annuity proceeds.

116. On information and belief, Soheyla has received proceeds from one or more Covered Assets other than the Lincoln Policy in amounts greater than her agreed 15% share and has failed and refused to redistribute those proceeds in accordance with the Agreement. On information and belief, Zahra has separately received proceeds from one or more Covered Assets other than the Lincoln Policy in amounts greater than her agreed 10% share and has failed and refused to redistribute those proceeds in accordance with the Agreement. Their failures and refusals have deprived Maedeh of all or part of her agreed 20% share of those proceeds. The precise sources, payment dates, amounts received by each recipient, and resulting amounts owed to Maedeh are presently unknown to Maedeh and are within the knowledge and possession of the recipients and the issuing or administering entities.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

### Against Soheyla Sandoval and Zahra Mirzadeh

117. Maedeh incorporates by reference paragraphs 55 through 84 and 106 through

116 as if set forth fully herein.

118. The Agreement is a valid written contract among the Decedent's six surviving siblings, supported by consideration consisting of each signatory's promises to the others and their agreement to resolve uncertainty or disagreement about the October 6, 2024 changes by accepting the stated allocation. The allocation is binding among the signatories regardless of whether a purported October 6, 2024 beneficiary designation would otherwise be enforceable against an insurer. Maedeh performed her obligations, except to the extent performance was excused or prevented by Soheyla's or Zahra's conduct, and remains ready, willing, and able to perform any outstanding concurrent obligations.

119. Soheyla breached the Agreement by accepting and retaining Lincoln Policy proceeds in excess of her agreed 15% share and failing and refusing to redistribute that excess in accordance with the Agreement. On information and belief, she also breached the Agreement by accepting and retaining proceeds of other Covered Assets in excess of her agreed share and failing and refusing to redistribute them in accordance with the Agreement.

120. Zahra breached the Agreement by failing and refusing to honor the agreed 10% allocation of the Lincoln Policy proceeds and repudiating her obligation to accept that allocation. On information and belief, she also breached the Agreement by accepting and retaining proceeds of other Covered Assets in excess of her agreed 10% share and failing and refusing to redistribute them in accordance with the Agreement. Maedeh does not allege that Zahra has already received Lincoln Policy proceeds.

121. As a direct and proximate result of each sister's respective breaches, Maedeh has been deprived of all or part of her agreed 20% share of the Covered Assets and their proceeds and has suffered damages in an amount to be proved at trial, together with interest attributable to the amounts owed to her and prejudgment interest as permitted by law. Maedeh seeks damages for her own

unpaid contractual entitlement; she does not seek the other signatories' individual damages as her own. As an alternative or additional remedy, she seeks specific performance requiring redistribution in accordance with the Agreement and a constructive trust over identifiable excess proceeds and their traceable proceeds, to protect her contractual interest and effect the agreed distribution. Amounts actually recovered from Lincoln, the interpleaded funds, or another party as compensation for the same loss will be credited to prevent duplicate recovery.

**FIFTH CLAIM FOR RELIEF**

**Declaratory Relief Under 28 U.S.C. §§ 2201 and 2202**

**Against Soheyla Sandoval, Zahra Mirzadeh, Farkhondeh Mirzadeh, Tahereh Mirzadeh, and Mohsen Mirzadeh**

122. Maedeh incorporates by reference paragraphs 55 through 84 and 106 through 116 as if set forth fully herein.

123. An actual controversy exists among the signatories of the Agreement over whether it binds them and what it requires. Soheyla and Zahra claim or retain proceeds of Covered Assets inconsistent with the Agreement and have refused to honor its allocation, and Maedeh contends that the Agreement controls as among its signatories. The signatories' percentage allocations are interdependent, and the requested declaration will determine the rights and obligations of every signatory under the Agreement.

124. Maedeh seeks a declaration that: (a) the Agreement is valid and binding on its signatories; (b) as among its signatories, the proceeds of the Covered Assets, including the $5,000,000 Lincoln death benefit, the funds Lincoln holds, and proceeds of the other life insurance policies, annuities, retirement accounts, and investments described above, are to be allocated, or distributed through the Trust, in the percentages stated in the Agreement, regardless of the validity of the 2024 Form or any other purported October 6, 2024 beneficiary change;

and (c) Soheyla and Zahra may not retain proceeds of Covered Assets in excess of their agreed percentages and must redistribute excess proceeds in accordance with the Agreement.

## PRAYER FOR RELIEF

### Against Lincoln

On the First, Second, and Third Claims, as applicable, Maedeh requests:

1. Damages for unpaid Policy benefits and other contractual losses under the First Claim, in an amount to be proved at trial, together with interest, including prejudgment interest;

2. General damages for mental and emotional distress under the Second Claim, and other incidental damages as permitted by law;

3. Punitive and exemplary damages under the Second Claim;

4. As damages on the Second Claim, reasonable attorney's fees necessary and incurred to recover Policy benefits, excluding fees incurred solely to prosecute the bad-faith claim or to recover emotional-distress or punitive damages;

5. As damages on the Second and Third Claims under the tort-of-another doctrine, reasonable attorney's fees and litigation expenses incurred and to be incurred in litigating with Soheyla, Zahra, and other adverse claimants to establish and protect Maedeh's entitlement to the Lincoln Policy proceeds, to the extent proximately caused by Lincoln's tortious conduct;

6. A determination that interpleader does not discharge Lincoln from liability for independently caused damages or limit that liability to the amount of the stake;

7. Costs of suit; and

8. Such other relief as the Court deems just and proper.

### Against the Crossclaim Defendants

On the Fourth and Fifth Claims, Maedeh requests:

1. Damages against Soheyla and Zahra for their respective breaches under the Fourth Claim, in an amount to be proved at trial and limited to Maedeh's own unpaid contractual entitlement;

2. Alternatively or additionally as permitted by law, specific performance against Soheyla and Zahra requiring redistribution of Covered Assets and their proceeds in accordance with the Agreement;

3. The declarations requested in the Fifth Claim, binding Soheyla, Zahra, Farkhondeh, Tahereh, and Mohsen as signatories to the Agreement;

4. A constructive trust over identifiable excess proceeds of Covered Assets retained by Soheyla or Zahra and their traceable proceeds, and an order requiring payment or transfer in accordance with the Agreement to protect Maedeh's contractual interest and effect the agreed distribution;

5. Interest attributable to amounts owed to Maedeh and prejudgment interest as permitted by law;

6. Costs of suit; and

7. Such other relief as the Court deems just and proper.

Amounts actually recovered from Lincoln, the interpleaded funds, or another party as compensation for the same loss shall be credited to prevent duplicate recovery of benefits, fees, expenses, or other damages.

## DEMAND FOR JURY TRIAL

Maedeh demands a jury trial on all claims brought by Lincoln against her. Maedeh demands a jury trial on all issues so triable on her counterclaims against Lincoln and her crossclaims against Soheyla Sandoval, Zahra Mirzadeh, Farkhondeh Mirzadeh, Tahereh Mirzadeh, and Mohsen Mirzadeh.

DATED: October 27, 2026

Dorian Law P.C.

By: *<u>/s/ Brent Dorian Brehm</u>*
Brent Dorian Brehm
Attorney for Defendant-in-Interpleader, Counterclaimant, and Crossclaimant,
Maedeh Mirzadeh